CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendants,
RP Logistics Pvt Ltd. and R. Piyarelall
International Pvt. Ltd.
366 Main Street
Port Washington, New York 110050
Telephone:   516-767-3600
Telefax:   516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITHAI MARITIME, LTD.                              :
                                                    :
              Plaintiff,                            :        07 CV 5730 (BSJ)
                                                    :
       - against -                                  :
                                                    :
RP LOGISTICS PVT LTD. and                           :
R.PIYARELALL INTERNATIONAL                          :
PVT. LTD.                                           :
                                                    :
              Defendants.                           :
                                                    :
-------------------------------------------------------------x

**ATTORNEY'S AFFIDAVIT IN SUPPORT OF**
**MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT**

State of New York     :
                      : ss.
County of Nassau      :

Owen F. Duffy, being duly sworn, states under penalty of perjury as follows:

1. I am a member of the Bar of the State of New York, and I am admitted to practice before this Court.

2. I am a member of the firm of Chalos, O'Connor & Duffy, LLP, attorneys for the Defendants, RP LOGISTICS PVT LTD. (hereinafter "RPL") and R.PIYARELALL INTERNATIONAL PVT. LTD. (hereinafter "RPI"), in this action.

3. I am fully familiar with the matters set forth in this affidavit, and my knowledge of the matters set forth in this affidavit is based on information provided to me by Defendants RPL and RPI, their agents and attorneys and my own independent research.

4. I submit this affidavit for the purpose of setting forth the facts and introducing evidence of the facts to support Defendants' Motion to Vacate the Process of Maritime Attachment and Garnishment that was issued by this Honorable Court on June 18, 2007.

### THE PARTIES

UNITHAI MARITIME LIMITED

5. The Plaintiff, Unithai Maritime Limited (hereinafter "Unithai Maritime"), is a foreign company organized and operating under foreign law. *See,* Exhibit 1, Verified Complaint at ¶ 2.

6. Plaintiff Unithai Maritime is listed on the Civil Cover sheet with an address of 12-01 Suntec City, Tower 5, Temasek Boulevard, Singapore 038985. *See*, Exhibit 2, Civil Cover sheet, page 2.

7. In the Verified Complaint, the Plaintiff alleges that it was the demise owner of the vessel M/V UTHAI NAVEE, a vessel registered under the laws of Thailand. *See*, Exhibit 1, Verified Complaint at ¶ 4.

8. The registered owner of the M/V UTHAI NAVEE is Unithai Line Public Co. Ltd. *See*, Exhibit 3, Equasis Report dated July 12, 2007.

9. Unithai Maritime and Unithai Line Public Co. Ltd. are both part of The Unithai Group, which maintains its principal place of business Bangkok, Thailand. *See*, Exhibit 4, pages from The Unithai Group website.

10. As noted on the website for The Unithai Group, it maintains an office in Singapore at 5 Temasek Boulevard #12-01 Suntec Tower 5, Singapore 038985, which is the same address from which Plaintiff Unithai Maritime conducts its business. *Compare*, Exhibits 2 & 4.

11. In previously initiated legal proceedings, which are still pending before the High Court of Calcutta in India, Unithai Line Public Co. Ltd. represented to the Court that it, Unithai Line Public Co. Ltd., had chartered the M/V UTHAI NAVEE to third party OGI Oceangate of Hong Kong. *See*, Exhibit 5, Declaration of C.R. Addy at ¶ 25 at Ex. F at ¶s 1 & 3.

12. In the instant case, the Plaintiff, Unithai Maritime, represents that it had chartered the M/V UTHAI NAVEE to third party OGI Oceangate of Hong Kong. *See*, Exhibit 1, Verified Complaint at ¶ 5.

13. In the previously initiated legal proceedings, which are still pending before the High Court of Calcutta in India, Unithai Line Public Co. Ltd. represented to the

3

Court that Unithai Maritime, in its capacity of manager, entered into the charter party with third party OGI Oceangate on behalf of Unithai Line Public Co. Ltd. *See*, Exhibit 5, Declaration of C.R. Addy at Ex. G at ¶ 6.

14. Since Unithai Maritime and Unithai Line Public Co. Ltd are both part of the same group and Unithai Maritime acts on behalf of Unithai Line Public Co. Ltd. in respect of the M/V UTHAI NAVEE, the two entities are, in fact, one and the same for the purposes of this action.

### RP LOGISTICS PVT LTD.

15. The Defendant, RPL, is an independent company that was developed by the R. Piyarelall Group to provide logistical and transportation support to shippers of cargo. *See*, Exhibit 6, Web site information for the R. Piyarelall Group and Exhibit 7, Web site information for R.P. Logistics Pvt. Ltd.

16. RPL's principal place of business and registered address is 12, Govt. Place (East) Kolkata (also known as "Calcutta") – 700 069, India.

17. RPL was incorporated as a separate and independent limited company in India on September 9, 2003. *See*, Exhibit 8, Certificate of Incorporation.

18. The directors of RPL are Shri Siddharth Agarwal, Shri Varun Agarwal, and Shri Karan Agarwal. *See,* Exhibit 9, RP Logistics Pvt. Ltd. – List of Directors.

19. RPL does not file consolidated tax returns with any other member company of the R. Piyarelall Group, but, instead, files its own tax returns and pays its own taxes to the Indian government. *See,* Exhibit 10, Return of Income Form No. 1 dated 25th October 2005.

20. RPL maintains its own bank accounts and an operating account with HDFC Bank in Kolkata, India. *See*, Exhibit 11, Statement of Accounts for September, 2006.

21.  Contrary to the allegations contained in the Verified Complaint herein, RPL is not a shell-corporation, it maintains its own separate corporate identity, it is not dominated by Defendant RPI and it is not the alter-ego of RPI.

### R. PIYARELALL INTERNATIONAL PVT. LTD.

22.  The Defendant RPI is an independent company that was developed by the R. Piyarelall Group for the purpose of exporting of agro-products, industrial and mineral products to the U.S.A., Europe, Africa, The Middle East, The Far East, South East Asia and all neighboring countries. *See*, Exhibit 6, Web site information for the R. Piyarelall Group and Exhibit 12, Web site information for RPI.

23.  RPI's principal place of business and registered address is 3 B & C , Everest House, 46-C, Lawahar Lal Nehru Road, Kolkata – 700 071, India.

24.  RPI is a private company that was incorporated as a separate and independent limited company incorporated in India on November 10, 1988. *See*, Exhibit 13, Certificate of Incorporation dated 10th November 1988.

25.  The directors of RPI are Mr. Ramesh Kumar Agarwal, Mr. Suresh Kumar Agarwal, Mr. Varun Agarwal, and Mr. Rishi Agarwal. *See,* Exhibit 14, RPI – List of Directors.

26.  Only one of the directors of RPI is also a director of RPL, namely Mr. Varun Agarwal. *Compare*, Exhibit 9, RP Logistics Pvt. Ltd. – List of Directors *and* Exhibit 14, RPI – List of Directors.

27.  RPI does not file consolidated tax returns with any other member company of the R. Piyarelall Group, but, instead, files its own tax returns and pays its own taxes to the Indian government. *See,* Exhibit 15, Return of Income Form No. 1 dated 27th October 2005.

28. RPI maintains its own bank accounts and an operating account with HDFC Bank in Kolkata, India. *See*, Exhibit 16, Statement of Accounts for August, 2006.

29. Contrary to the allegations contained in the Verified Complaint herein, RPI is a separate economic unit that maintains all corporate formalities, it is not the alter-ego, prime mover or controller of RPL and it does not dominate Defendant RPL.

## THE BACKGROUND TO THE INSTANT LITIGATION

*THE UNDERLYING DISPUTE BETWEEN THE PARTIES INVOLVES THE ARREST OF THE M/V UTHAI NAVEE, PURUSUANT TO AN ORDER OF THE HIGH COURT OF CALCUTTA, INDIA, WHILE THE VESSEL WAS WITHIN THE JURISDICTION OF THE HIGH COURT OF CALCUTTA*

30. On or about October 13, 2006, Defendants RPL and RPI initiated proceedings in the High Court of Calcutta against 1) the owners and parties interested in the vessel M/V UTHAI NAVEE; 2) the owners and parties interested in the Bunkers on board the M/V UTHAI NAVEE; and 3) OGI Oceangate Transportation Co. Ltd. *See*, Exhibit 5, Declaration of C.R. Addy at ¶ 12.

31. RPL and RPI asserted therein a claim for a breach of a charter party in respect of another vessel known as the M/V IKAL, and RPL and RPI sought damages in that forum for the the amount of $267,869.00. *See id.* at ¶ 13.

32. In the Calcutta action, the Plaintiffs prayed for, *inter alia*, the arrest of the vessel M/V UTHAI NAVEE and its bunkers. *See id.* at ¶ 16.

33. The High Court of Calcutta found that an arrest of the M/V UTHAI NAVEE was proper under Indian substantive and procedural law and, consequently, the High Court of Calcutta issued an Order for the arrest of the M/V UTHAI NAVEE. *See id.* at ¶ 17.

6

34. The Order of Arrest was served on the Master of the M/V UTHAI NAVEE on September 26, 2006 while the vessel was in the Port of Haldia, which is on the Hooghly River south of Calcutta. *See id.* at ¶ 18.

35. Following the arrest of the M/V UTHAI NAVEE, the charterer of the vessel, OGI Oceangate, appeared in the action pending before the High Court of Calcutta. *See id.* at ¶ 19.

36. At the time of the arrest of the M/V UTHAI NAVEE, the vessel was still under charter to third party OGI Oceangate but third party OGI Oceangate had sub-chartered the vessel to Rockwell International Holding, Ltd. *See id.* at ¶ 20.

37. OGI Oceangate disputed the validity and legality of the arrest of the M/V UTHAI NAVEE in India. *See id.* at ¶ 21.

38. Attorneys representing OGI Oceangate had originally appeared in the proceedings in the High Court at Calcutta on October 13, 2006 and represented to the Court that OGI Oceangate wanted to furnish security to obtain the release of the M/V UTHAI NAVEE. *See id.* at ¶ 22.

39. On October 30, 2006, the attorneys for OGI Oceangate submitted to the Court that OGI Oceangate had not furnished any security to obtain the release of the vessel and, also, that they were without further instructions to participate in the case. *See id.* at ¶ 23.

40. On the day before, i.e. October 29, 2006, attorneys for the registered Owner of the M/V UTHAI NAVEE appeared in the proceedings in the High Court at Calcutta to obtain the release of the vessel and, at the hearing before Justice Dutt, they submitted to the Court that they had filed an application for vacating the order of arrest and for dismissal of the lawsuit. *See id.* at ¶ 24; *and see, id.* at Ex. G at ¶ 6.

41. In its petition to vacate the arrest, Unithai Line Public Co. Ltd. represented to the High Court of Calcutta that it was the Owner of the M/V UTHAI NAVEE, and that Unithai Maritime, in its capacity of manager, entered into the charter party with third party OGI Oceangate on behalf of Unithai Line Public Co. Ltd. *See id.* at ¶ 25.

42. In its petition to Vacate the Arrest, Unithai Line Public Co. Ltd. alleged that the arrest of the M/V UTHAI NAVEE by RPL and RPI was wrongful and contrary to law, and Unithai Line Public Co., Ltd. requested an order directing RPL and RPI to provide security for all costs, charges and expenses which were being incurred or would be incurred by the petitioner by reason of the aforesaid wrongful arrest. *See id.* at ¶ 26.

43. In the Petition to Vacate the Arrest, the defendant Unithai Line Public Co. Ltd. sought specific relief from the Honorable Vikas Shirdhar Sirpurkar, Chief Justice of the High Court of Calcutta when it prayed for the following orders: a) dismissal of the lawsuit; b) dismissal of the arrest order; c) release of the M/V UTHAI NAVEE from arrest; d) the Order dated 26th September 2006 be vacated; e) an order directing the plaintiffs to deposit a sum of $337,454.00 with the Court; f) an order directing the plaintiffs to make payment of $4,000 per day for every day from 27th October 2006 until the M/V UTHAI NAVEE was released from arrest; g) ad interim orders in terms of prayers above; h) costs of and incidental of the application; and i) such further order or orders and/or direction as the Court found to be fit and proper. *See id.* at ¶ 27.

44. On November 1, 2006, Unithai Line Public Co. Ltd., as Owner of the M/V UTHAI NAVEE, filed an application in connection with an appeal of the Order dated October 30, 2006 passed by the Honorable Justice Tapan Kumar Dutt. *See id.* at ¶ 29.

45. On November 2, 2006, the case came to be heard before the Honorable Justice Girish Clandra Gupta and the Honorable Justice Manik Mohan Sarkar, who deferred any decision on the merits of the case back to the trial court, but directed the

8

Plaintiffs RPL and RPI to present a bank guarantee in the amount of Rs 50,00,000/- and the Order of 26th September 2006 be continued pending the posting of the bank guarantee and an ultimate determination on the merits of the claim by the trial courts and, furthermore, the Justices passed no order as regards the bunkers on board the M/V UTHAI NAVEE. *See id.* at ¶ 30.

46. As it were, the Plaintiffs RPL and RPI chose not to present a bank guarantee, and the Order for the Arrest of the M/V UTHAI NAVEE was vacated. *See id.* at ¶ 31.

47. The M/V UTHAI NAVEE has since sailed from Indian waters. *See id.* at ¶ 32.

48. Whereas the High Court of Calcutta has vacated the arrest of the M/V UTHAI NAVEE and RPL and RPI are now without security for their claims, the lawsuit initiated by RPL and RPI against 1) The Owners and Parties interested in the vessel M/V UTHAI NAVEE; 2) The Owners and Parties interested in the Bunkers on board the M/V UTHAI NAVEE; and, 3) OGI Oceangate Transportation Co. Ltd. is still pending before the High Court of Calcutta. *See id.* at ¶ 33.

49. Steps can still be taken by RPL and RPI for adjudication of their claims in the High Court of Calcutta. Writ of Summons issued in the Admiralty Suit have to be served upon the defendants whereupon the defendants have to file their respective defense and, thereafter, there will disclosure of documents by the respective parties. After discovery of documents and inspection thereof by the parties the suit may be placed in the list of the Court for hearing. *See id.* at ¶ 34.

50. In accordance with the substantive law of India, and the practices and procedures of the admiralty jurisdiction of the High Court of Calcutta, Unithai Line Public Co. Ltd., Unithai Maritime and OGI Oceangate could have asserted an affirmative

claim for the wrongful arrest of the M/V UTHAI NAVEE as a counter-claim against the Plaintiffs RPL and RPI. *See id.* at ¶ 35.

51. It is important to note that while Unithai Line Public Co. Ltd. asserted "wrongful arrest" as a defense, Unithai Line Public Co. Ltd. did not assert the claim affirmatively as a counter-claim against the Plaintiffs RPL and RPI. *See id.* at ¶ 36.

52. Had Unithai Line Public Co. Ltd., or OGI Oceangate or Unithai Maritime, affirmatively asserted a counter-claim for wrongful arrest against the Plaintiffs, any one of those parties could have petitioned the High Court of Calcutta to enter an order directing the Plaintiffs, RPL and RPI, to post security for their respecticve claims of wrongful arrest. *See id.* at ¶ 37.

53. Unithai Line Public Co. Ltd. never petitioned the High Court of Calcutta to enter an order directing the Plaintiffs, RPL and RPI, to post security for Unithai Line's claim of wrongful arrest. *See id.* at ¶ 38.

54. In any event, simply because the High Court of Calcutta vacated the arrest of the M/V UTHAI NAVEE, it does not necessarily follow that the arrest of the M/V UTHAI NAVEE was "wrongful" and the High Court of Calcutta has never made any finding that the arrest of the M/V UTHAI NAVEE was "wrongful." *See id.* at ¶ 39.

55. Under the substantive law of India, the bare elements of a claim for wrongful arrest of a vessel are: 1) A suit for damages for wrongful arrest of a vessel is not maintainable in the absence of proof of malice; 2) The arrest of a ship consequent on a suit in rem instituted in the High Court as colonial Court of Admiralty, for an amount, alleged to be due for maritime necessaries, is a judicial act of the Court and an ordinary step in an action in rem; 3) When possession of the subject of controversy is with the Court, the competing parties are simply preferring their claims in the ordinary course of law, and any damages which the successful party may suffer from the continuance of

litigation are due to the law's delay and not to any legal wrong perpetrated by his unsuccessful competitor. *See id.* at ¶ 40.

56.     In the proceedings in India before the High Court of Calcutta, Unithai Line Public Co. Ltd. has never made any allegations to support a claim for wrongful arrest and never made any allegations to demonstrate that the elements of a claim for wrongful arrest can be satisfied. *See id.* at ¶ 41.

***THERE HAS BEEN PRIOR LITIGATION IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK OVER THE SAME CLAIMS PRESENTED BY PLAINTIFF UNITHAI MARITIME AS OGI OCEANGATE INITIATED SUIT ALLEGING THE WRONGFUL ARREST OF M/V UTHAI NAVEE AND OGI OCEANGATE, LIKE PLAINTIFF HERE, SOUGHT ISSUANCE OF A WRIT OF MARITIME ATTACHMENT***

### THE OCEANGATE COMPLAINT

57.     OGI Oceangate instituted an action against RPL and RPI in the Southern District of New York on October 17, 2006.  *See*, Exhibit 17, Oceangate Complaint.

58.     In the Oceangate Complaint, OGI Oceangate alleged that RPL was in breach of a charter party dated June 21, 2006. *See*, Exhibit 17, Oceangate Complaint at ¶¶ 6 and 14.

59.     Further, OGI Oceangate alleged that, pursuant to the charter party, all disputes thereunder were to be submitted to arbitration in Hong Kong. *See id.* at ¶ 15.

60.     OGI Oceangate also asserted a claim for the wrongful arrest of the M/V UTHAI NAVEE against RPL. *See id. at* ¶ 12.

61.     Oceangate further alleged that "[a]s a result of [RPL's] breach of the charter party and subsequent wrongful arrest of the M/V UTHAI NAVEE, Plaintiff has sustained damages in the principal amount of $979,637.91." *See id.* at ¶ 14.

11

63.     Oceangate also made alter ego allegations against RPI. *See*, id. at ¶¶ 18 – 37.

### PROCESS OF MARITIME ATTACHMENT WAS ISSUED AGAINST RPL AND RPI

64.     Pursuant to the Oceangate Complaint, OGI Oceangate requested, and the Court granted, by Order of Judge Sweet, a Process of Maritime Attachment pursuant to Rule B of the Supplemental Admiralty Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure against all tangible or intangible property of the Defendants RPL or RPI in the hands of certain garnishees within the Southern District of New York in an amount up to and including $1,441,464.01. *See*, Exhibit 18, *Ex Parte* Order Process of Maritime Attachment dated October 17, 2006.

### OGI OCEANGATE ATTACHED THE PROPERTY OF RPL AND RPI

65.     Following service of the Process of Maritime Attachment, on October 18, 2006, the Bank of America, N.A. restrained funds in the amount of $430,898.44, representing an Electronic Fund Transfer (hereinafter "EFT") being made by Defendant RPI. *See*, Exhibit 19, email from Bank of America representative to counsel for Defendants.

### RPL AND RPI MOVED TO VACATE THE ATTACHMENT

66.     Pursuant to an Order to Show Cause, RPL and RPI moved to vacate the OGI Oceangate attachment.

67.     The matter was fully briefed, and Judge heard oral argument on the Motion to Vacate on December 7, 2006.

### JUDGE SWEET VACATED THE ATTACHMENT BY ORDER DATED JUNE 21, 2007

68. On June 21, 2007, by an Order and Opinion, Judge Sweet vacated the Attachment and the Complaint was dismissed. *See*, Exhibit 20, Order and Opinion of Judge Sweet dated June 21, 2007, 2007 U.S. Dist. LEXIS 46841 (hereinafter "Judge Sweet's Oceangate Opinion").

69. Judge Sweet specifically ruled that Plaintiff OGI Oceangate failed to allege a valid *prima facie* maritime claim against defendant RPI. *See id.* 2007 U.S. Dist. LEXIS 46841 * 10 & 11.

70. Judge Sweet specifically ruled that Plaintiff OGI Oceangate had not met its burden of demonstrating that it had a valid *prima facie* claim of wrongful arrest. *See id.* 2007 U.S. Dist. LEXIS 46841 *15.

71. Because vacatur was appropriate for other reasons, Judge Sweet did not rule on whether OGI Oceangate sufficiently alleged its alter ego claim against RPI. *See id.* 2007 U.S. Dist. LEXIS 46841 *15.

72. Most importantly, Judge Sweet found that, even if Oceangate had met its burdens above, RPL and RPI had "sufficiently shown that vacatur would still be appropriate under the limited circumstances in Aqua Stoli" for the three reasons listed below. *See id.* 2007 U.S. Dist. LEXIS 46841 *15.

73. With respect to alternate grounds on which the attachment was vacated pursuant to Aqua Stoli Second, Judge Sweet stated:

> [T]he Second Circuit articulated that an attachment would be properly vacated "if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." [Aqua Stoli] at 444-45. As pointed out by the Defendants, with respect to [Oceangate's] claim for wrongful arrest, both [Oceangate] and the Defendants were present in the same jurisdiction during the arrest proceedings, namely Kolkata. [Oceangate] did make an

13

appearance during that proceeding and even contemplated posting security to secure the release of the vessel.

(Citation omitted).

75.     Lastly, Judge Sweet found that, because under Aqua Stoli, vacatur may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff, vacatur was appropriate because proceedings were ongoing in Calcutta and Indian law most likely applied the claim for wrongful arrest. *See id.* 2007 U.S. Dist. LEXIS 46841 *17.

76.     Under the circumstances, Judge Sweet vacated the OGI Oceangate attachment and dismissed the Oceangate Complaint without prejudice on June 21, 2007. *See id.* 2007 U.S. Dist. LEXIS 46841 *18.

***PLAINTIFF UNITHAI MARITIME INITIATED THIS LITIGATION AGAINST DEFENDANTS RPL AND RPI ONLY A WEEK BEFORE JUDGE SWEET DISMISSED THE PREVIOUS ACTION OF OGI OCEANGATE, AND SIMLAR TO OGI OCEANGATE, PLAINTIFF HAS SOUGHT, AND OBTAINED, PROCESS OF MARITIME ATTACHMENT***

THE UNITHAI MARITIME COMPLAINT

77.     One week before Judge Sweet's ruling and nearly eight months after the attachment of the EFT, on June 14, 2007, Plaintiff, Unithai Maritime, filed a Complaint against the same Defendants for the same underlying facts and reasons as were alleged in the Oceangate case, again seeking an *Ex Parte* Process of Maritime Attachment pursuant to Rule B of the Supplemental Rules. *See*, Exhibit 1, Verified Complaint.

78.     Plaintiff Unithai Maritime did not state on its Civil Cover Sheet that its action was related to another action pending in the Southern District of New York. *See*, Exhibit 2, Civil Cover Sheet.

79.     Of the thirty-one (31) allegations made in the Unithai Maritime complaint, all but seven (7), are identical to the allegations made in the Oceangate Complaint. *Compare*, Exhibit 1, Verified Complaint at ¶¶ 1, 2, 3, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30 and 31 *with* Exhibit 17, Oceangate Complaint at ¶¶ 1, 2, 3, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38 and 39.

80.     Plaintiff Unithai Maritime's only cause of action is against RPL, and RPI as its alleged alter ego, for the wrongful arrest of the M/V UTHAI NAVEE. *See*, Exhibit 1, Verified Complaint at ¶ 8.

81.     Plaintiff Unithai Maritime alleges in its Complaint that the wrongful arrest of the M/V UTHAI NAVEE had caused it damages in the amount of $559,353.00. *See*, Exhibit 10, Verified Complaint at ¶ 10.

82.     Plaintiff Unithai Maritime does not allege that it has sought or received restitution for its damages from its contractual partner, OGI Oceangate. *See id.*

83.     Plaintiff Unithai Maritime in its Verified Complaint further makes the same alter ego allegations against RPI as had been made in the Oceangate Complaint. *Compare*, Exhibit 1, Verified Complaint at ¶¶ 11 – 29 *and* Exhibit 17, Oceangate Complaint at ¶¶ 18 – 23 and 24 - 37.[1]

84.     Plaintiff Unithai Maritime's alter ego allegations follow a standard formula of conclusory allegations. *See*, Exhibit 1, Verified Complaint at ¶¶ 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24, 25, 26, 27, 28 & 29.

---

[1] The one alter ego allegation that was not copied from the Oceangate Complaint was paragraph 23, which was left off the Unithai Maritime Complaint in its entirety. That paragraph had stated, "Althouth RPI was not named in the charter party, and had no formal relationship to the charter of the M/V 'IKAL' it entered into an agreement by which it paid the demurrage owing to Plaintiff from [RPL]." See, Oceangate Complaint at ¶ 23. This allegation has not been made by Plaintiff Unithai Maritime in the instant litigation.

15

85.  The sole factual allegation presented by Unithai Maritime to support its claim for alter ego liability against RPI rests with the inadequate allegation that:

> From common offices located at "REGENT HOUSE", 12 Govt. Place (East), Calcutta – 700 069, India, the R. PIYARELL Group operates a manufacturing, purchasing, sale and transportation network which includes the transport and delivery of numerous goods.

See, Exhibit 1, Verified Complaint at ¶ 22.

86.  Unithai Maritime does not and can not make any allegations that RPI makes recurrent payments on behalf of RPL, that there is an intermingling of funds between RPL and RPI, that RPI disregards the corporate formalities between it and RPL, that RPL is inadequately capitalized, nor that there is an overlap in ownership, officers, directors or personnel of the two companies. See, Exhibit 1, Verified Complaint at ¶s 22 and 27 *and see* ¶s 8-22 herein, *supra*.

### PROCESS OF MARITIME ATTACHMENT HAS BEEN ISSUED AGAINST RPL AND RPI

87.  Plaintiff Unithai Maritime filed an Affidavit in Support of Prayer for Maritime Attachment on June 14, 2007. See, Exhibit 21, Affidavit in Support of Prayer for Maritime Attachment.

88.  Plaintiff Unithai Maritime once again made no mention of the prior litigation by Oceangate or the funds attached in that action. *See id.*

89.  However, Plaintiff Unithai Maritime named the exact same garnishee banks in its Verified Complaint that had been named in the Oceangate Complaint. *Compare*, Exhibit 1, Verified Complaint at ¶ 30 and Exhibit 17, Oceangate Complaint at ¶ 38.

90. On June 15, 2007, pursuant to Plaintiff's request, the Court issued an *Ex Parte* Order for Process of Maritime Attachment. *See*, Exhibit 22, *Ex Parte* Order for Process of Maritime Attachment.

91. Despite an apparent awareness of the prior Oceangate Complaint and its pendency, Plaintiff did not inform counsel for the RPI and RPL in that action.

92. On June 18, 2007, the Clerk of the Court issued a Process of Maritime Attachment pursuant to this Court's *Ex Parte* Order of June 15, 2007, listing the same garnishees as had been named in the Oceangate Complaint. *See*, Exhibit 23, Process of Maritime Attachment.

### PLAINTIFF ATTACHED THE SAME PROPERTY OF RPL AND RPI THAT WAS ATTACHED BY THE PREVIOUS PLAINTIFF, OGI OCEANGATE

93. Zeichner Ellman & Krause LLP, as counsel for one of the garnishees in this action has been served with, *inter alia*, the Process of Maritime Attachment and *Ex Parte* Order in the instant litigation.[2]

94. As such, it is apparent that Plaintiff Unithai Maritime is attempting to attach the same EFT funds in the amount of $430,898.44 that have been ordered to be released by Judge Sweet in the Oceangate action.

95. Although the Plaintiff has advised the Defendants of the lawsuit, the Defendants have not received any formal notice that funds are actually being restrained in pursuant to the Process of Maritime Attachment and Garnishment in this action, but the Process of Maritime Attachment appears to have been served on the Bank of America.

---

[2] Zeichner, Elllman & Krause LLP are counsel for two different garnishee banks often served with Processes of Maritime Attachment in the Southern District of New York, American Express Bank Ltd. and Bank of America, N.A. No garnishee was designated in the Affidavit of Service.

### THE DEFENDANTS RPI AND RPL HAVE ENTERED A RESTRICTED APPEARANCE PURSUANT TO SUPPLEMENTAL RULE 8 AND FILED AN ANSWER

96. As soon as was practicable after Defendants became aware that Unithai Maritime was attempting to attach the EFT funds released by Judge Sweet, Defendants RPL and RPI entered a Restricted Appearance pursuant to Fed. R. Civ. P. E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims and filed their Verified Answer with Affirmative Defenses. *See*, Exhibit 24, Notice of Restricted Appearance dated July 1, 2007, *and see*, Exhibit 25, Verified Answer with Affirmative Defenses dated July 1, 2007.

97. As set forth in its Verified Answer with Affirmative Defenses RPI and RPL denied any liability to Plaintiff Unithai Maritime and further maintained that this Court does not have jurisdiction over it or any of the attached funds and that the Attachment should be vacated and the Complaint dismissed. *See*, Exhibit 25, Verified Answer with Affirmative Defenses.

98. In particular, it is noteworthy that the Plaintiff never entered into a contract with either Defendant, but instead was in contractual privity with OGI Oceangate, whose claims against the Defendants have already been dismissed by Judge Sweet in the Southern District of New York.

99. Furthermore, Plaintiff Unithai Maritime does not have a valid *prima facie* alter ego claim against Defendant RPI, the only Defendant whose property has been arguably attached in the instant litigation.

100. As was found by Judge Sweet in the OGI litigation, vacatur is appropriate under the limited circumstances articulated in <u>Aqua Stoli</u> because the parties are present before the High Court of Calcutta, and furthermore, the parties are more conveniently subject to the jurisdiction of courts in India and/or Hong Kong.

101. Finally, the comity considerations counsel against the exercise of this Court's jurisdiction of this essentially Indian matter.

Dated: Port Washington, New York
July 13, 2007

By: *[signature]*

CHALOS O'CONNOR & DUFFY, LLP
Attorneys for Defendants
RP LOGISTICS PVT LTD. and
R.PIYARELALL INTERNATIONAL PVT. LTD.

Owen F. Duffy (OD-3144)
366 Main Street
Port Washington, New York 11050
Tel:    516-767-3600
Telefax: 516-767-3605
Email: ofd@codus-law.com

Subscribed and sworn to before me this
July 13, 2007

*[signature]*
Notary Public, State of New York

CHARLES S. CUMMING
Notary Public, State of New York
No. 02CU5047018
Qualified in Suffolk County
Commission Expires July 24, 2009
CERTIFIED IN NASSAU COUNTY

19