# DECLARATION OF C.R. ADDY, ESQ.

# EXHIBIT A

A.S. No.        of 2006

IN THE HIGH COURT AT CALCUTTA

Admiralty Jurisdiction.

1. R.P. Logistics Pvt. Ltd., a company incorporated

   under the Companies Act, 1956 and carrying on

   business at 12, Government Place East, Calcutta

   - 700 069.

2. R.Piyarelal International Pvt. Ltd. a company

   incorporated under the Companies Act 1956 and

   carrying on business at 12, Government Place

   East, Calcutta - 700 069.                .... Plaintiffs

-Versus-

1. The Owners and Parties interested in the vessel

   M.V. UTHAI NAVEE,

2. The Owners and parties interested in the

   Bunkers on board the vessel M.V. Uthai Navee.

3. OGI Oceangate Transportation Co. Ltd., a

   company incorporated under the appropriate



47

laws of China, Republic of China and carrying

on business inter alia, at 906(A) Eagle Run

Plaza, 26, Xiaoyon Road, Chong District

Beijing, China.                    .... Defendants

The plaintiffs state :-

1.      The plaintiff No.2 carries on business, inter alia, in the export of various

        commodities including iron ore fines.

2.      The plaintiff no.1 is also engaged in export business and in the Shipping Trade.

3.      In or about June 2006 the plaintiff No.2 entered into an agreement with China

        National Mineral Co. Ltd., a sale of approximately 11000 MTs ± of iron ore fines.

        The said contract was entered into with the express understanding that upon

        smooth performance and completion of the contract, two further export orders for

        supply of 20,000 MT of iron ore fines each would be placed on the Plaintiff no.2

        by China National Mineral Co. Ltd.

4.      At the request of the plaintiff no.2, the plaintiff No.1 entered into a Charter Party

        agreement evidenced by a Fixture Note dated 21st June 2006 with the defendant

        no.3 for carriage on board the vessel M.V. IKAL a minimum quantity of 11000

        MTs upto vessel's full capacity at charterers' option from the port of Kolkata and

48

topping up at Diamond Harbour upto available draft and discharge 1 Good Safe

Port 1 Good Safe Berth South China or North China or Changjiankou or

Changhou at a total freight rate of US$ 19.50 Per Metric Ton Basis South Chaina.

counterpart

A copy of the said Fixture Note is annexed hereto and marked 'A'.

5.    The defendant no.3 has been described as the owner of the vessel M.V.IKAL in

the said Fixture Note. At the time of entering into the said Fixture Note the

defendant no.3 knew full well that the plaintiff no.2 were the shippers of the said

cargo being the subject matter of the Fixture Note and of the commitments of and

understanding of the plaintiff no.2 with China National Mineral Co. Ltd,

6.    The defendant no.3 further knew that the aforesaid Fixture Note have been

entered into on the basis of an agreement between the plaintiff nos. 1 and 2 on the

same date namely 21st June 2006, a copy of which is annexed hereto and marked

'B'. Under the said agreement between the plaintiff nos. 1 and 2 the beneficiary of

the freight payment has been mentioned as the defendant no.3.

7.    In terms of the aforesaid agreement and the Fixture Note referred to above the

plaintiff loaded goods on board the vessel M.V. IKAL and a Bill of Lading

therefor was issued for and on behalf of the defendant no.3. The plaintiff no.2 is

mentioned as the shipper in the said Bill of Lading. The said Bill of Lading was

issued in Kolkata on 3rd September 2006 by Purba Bharati Ship Agency Pvt. Ltd. who at the relevant time acting as the agent of the defendant no.3 and acting on behalf of the vessel M.V. IKAL.

8.   The vessel M.V. IKAL had arrived at the port of Kolkata for the purpose of loading on 24th June 2006. The vessel completed loading of 6115 MTs of iron ore fine on 27th June 2006. The vessel was then to sail immediately to Diamond Harbour Anchorage to top up balance cargo. The plaintiffs had arranged full balance cargo to be loaded at Diamond Harbour Anchorage.

9    By reason of the stability problem of the vessel M.V. IKAL the said vessel could no shift to Diamond Harbour Anchorage on the same day and could arrive at Diamond Harbour Anchorage only on 26th June 2006. The Kolkata Port / Diamond Harbour Anchorage being river ports have drafted restrictions for inward and outward movements of the vessel. Owing to delay caused by the vessel at the first berth at Kolkata, the vessel reached the second berth at Diamond Harbour Anchorage (down river) at least three days later resulting in the vessel being caught in falling draft period. Owing to draft restrictions the Chief Officer of the vessel only allowed loading of 3988 MTs at Diamond Harbour Anchorage and stopped loading and refused to load further cargo making quantity of only

10103 MT's. the plaintiffs incurred huge loss towards bringing back cargo ashore from the barges, dead freight on lighters. Port wharfage, shut out-rent, Customs duty and other incidental expenses.

10.   The vessel completed loading on 2nd July 2006 and sailed away on 4th July 2006 to the discharge port in China.

11.   On 5th July 2006 the defendant no.3 raised freight invoice which included dead freight for 897 MTs. The plaintiff states that the plaintiffs are not responsible for any dead freight as claimed by the defendant no.3.

12.   On 4th July 2006 the plaintiff no.1 and paid ocean freight strictly as per the Fixture Note for US\$ 192083.09.

13.   On 18th July 2006 the Vessel M.V. IKAL allegedly arrived at the outer anchorage of Fang Cheng Port in China. However, no notice of readiness was served to the port or the agent or to the plaintiffs nor did the master of the said vessel proceed to the port for delivery of cargo.

14.   On 19th July 2006 the defendant no.3 forwarded to the plaintiffs a revised demurrage calculation claiming US \$ 57906 towards purported demurrage incurred at the load port and for one day on account of delay in making payment of ocean freight. The defendant no.3 threatened that if the said purported amount

6

together with dead freight were not paid, the defendant no.3 would sell the cargo lying on board the vessel M.V.IKAL for recovery of its purported dues. The defendant no.3 further threatened that a sum of US $ 7000 per day would be claimed from the plaintiffs on account of delay in payment of the amount claimed and the said sum would also be recovered from the sale proceeds of the cargo.

15. The defendant no.3 at the material time was in a dominant position to dictate the will of the plaintiffs. The cargo of the plaintiffs valued over Rs.3,03,01,422/- (Three crores three lacs one thousand four hundred twenty two only) was lying on board the vessel M.V. IKAL and the value of the cargo was much in excess of the illegal demand made by the defendant no.3.

16. In view of the threat made by the defendant no.3 the plaintiff no.2 as shipper under duress as shipper agreed to pay the sum of US $ 17491.50 on account of the dead freight and also agreed to make payment of a demurrage amounting to US $ 3349.22 upon the vessel berthing at the discharge port and on the delivery of the cargo. So far as the plaintiff no.1 is concerned, the plaintiff no.3 to arbitration in accordance with the arbitration clause mentioned in the Charter Party.

17. In spite of the aforesaid assurance given by the plaintiffs, the defendant no.3 continued to demand payment before berthing of the vessel and demanded a sum

of US $ 7000 each day and revised its claim to US $ 71960. In the background of

the aforesaid facts, on 21st July 2006, the plaintiff no.2, being the shipper of the

cargo, under duress, was compelled to enter into a tripartite Agreement dated 22nd

July 2006 with the defendant no.3 as also the ultimate buyers in China. At the

time of entering into the said agreement the defendant no.3 was in a dominant

position to dictate the will of the plaintiff no.2 since cargo being the subject

matter of the bill of lading was still lying on board the vessel and the ultimate

buyers were threatening to reject the cargo and sue the plaintiff no.2 for damages.

The defendant no.3 was also threatening to sell the cargo for realization of its

purported dues. The Tripartite Agreement was entered into by the plaintiff no.2

under duress. Under the said Tripartite Agreement it was, inter alia, agreed by the

plaintiff no.2 and the defendant no.3 with the ultimate buyers as follows :-

   (i)     the final settlement of dead freight, demurrage and detention would

           be US $ 45000.

   (ii)    The vessel M.V.IKAL would be immediately berth and commence

           discharge



(iii)    The plaintiff no.2 would pay US $ 45000 to the defendant no. 3 latest by 25h July 2006 failing which the receivers of the cargo would guarantee to pay the said amount to the defendant no.3.

(iv)    Upon receipt of US $ 45000 the defendant no.3 would issue delivery orders to the receivers of the cargo.

(v)    Upon receipt of the delivery orders, the receivers of the cargo would release payment of the cargo to the plaintiff no.2.

18.    After the tripartite agreement was entered, the vessel MV. IKAL berthed at Feng Cheng Port on 24th July 2006 and unloaded the cargo at the said port. During joint survey of the goods, it was found that the vessel MV.IKAL had discharged 122 Metric Tonnes of cargo short than the cargo mentioned in the Bill of Lading.

19    Meanwhile, on 23rd July 2006, the defendant no.3 issued an invoice claiming a sum of US $ 45000 full and final settlement for dead freight, demurrage and detention at load and discharge ports. The plaintiffs, upon receipt of the said amount, had no option but were compelled under duress to remit the said sum to the defendant no.3. The payment and remittance of the said sum was made by the plaintiffs under duress inasmuch as the material time the defendant no.3 was in a

position to dominate and dictate the will of the plaintiffs for the reasons stated above

20. in spite of receipt of the US $ 45000, the defendant no.3 refused to issue delivery order.

21. On 31st July 2006 the plaintiffs received a facsimile message issued on behalf of the defendant no.3 whereby the whereunder it would appear that the defendant no.3 claimed a further sum of US $ 56000. The claim made by the defendant no.3 is in breach of the purported tripartite agreement reached between the plaintiff no.2, defendant no.3 and receivers of cargo, although the same was entered into by the plaintiff no.2 under duress in the circumstances stated above.

22. The ultimate buyers of the cargo, in view of the refusal on the part of the defendant no.3 to release the cargo, instituted proceedings in the Courts in China and obtained order directing release of the cargo, the condition was that legal expenses of about US $ 13000 would be on account of plaintiff no.2 which would be deducted form the final payment to be made by the buyer to the plaintiff no.2. The ultimate buyer of the cargo thus adjusted a sum of US $ 13000 from the total sum due to the plaintiff no.2 as a result whereof the plaintiffs have been denied the benefit of the sum of US $ 13000 from the total sale price of goods.

23.   The aforesaid less of US $ 13000 is wholly attributable to the fault of the
      defendant no.3 who, in spite of the tripartite agreement dated 21st July 2006 and
      upon receipt of the total sum of US $ 45000 mentioned in the said tripartite
      agreement, failed, neglected and refused to issue delivery order to the purchasers
      and/or ultimate buyers in China.

24.   In view of the delay in issuance of delivery order and discharge of cargo, the
      representatives of the plaintiffs had to make visits to China to resolve the issue.
      The said visits to China were made at the request of the defendant no.3 and/or in
      any event with a view to resolve the impasse created by the wrongful act and
      conduct of the defendant no.3. On account of such expenses, the plaintiffs have
      incurred a sum of US $ 2000 which are all as a result of the breach of obligation
      of the defendant no 3.

25.   Upon the smooth performance and completion of the said contract the plaintiff
      no.2 was offered two other contracts for supply and delivery of two consignments
      of 20000 Metric Tonnes each. The profit margin which the plaintiff no.1 would
      have earned by reason of shipment and delivery of iron ore is approximately US $
      5 per metric tonne. By reason of the failure on the part of the plaintiff no.2 to
      ensure smooth performance, sale and delivery of the goods under the contract

with China National Mineral Co. Ltd, the latter has refused to confirm and

cancelled all future export orders and supply by the plaintiff no.2 during the

impasse. By reason of the aforesaid, the plaintiff no.2 has lost the two further

contracts which would have otherwise been finalized by China National Mineral

co. Ltd. and as a consequence of which the plaintiff has lost a profit margin of US

$ 5 per metric tonne on the said future consignments of goods of 20000 Metric

Tonnes each.

26.    The plaintiff states that at the time of entering into the contract with the defendant

no.3, the latter was put to notice of the aforesaid arrangment with China National

Mineral Co. Ltd. and of the future contracts which would have confirmed in

favour of the plaintiff no.2 on the basis of smooth performance and delivery of the

present contract. The defendant no.3 knew full well that all further contracts

would be cancelled and the plaintiff no.2 would lose all profits from future

contracts in the event there was delay and impediment caused in delivery and sale

of cargo by the plaintiff no.2.

27.    By reason of the aforesaid breach, failure and/or neglect on the part of the

defendant no.3, the plaintiffs have suffered loss and damage.

12

## PARTICULARS

(i)   Loss on account of dead freight and demurrage        US $ 45,000

(ii)  Legal expenses recovered by the receivers/buyers
      of cargo from the plaintiff no.2
                                                           US $ 13,000

(iii) Value of 122 Metric Tonnes of goods short
      Delivered at the rate of US $ 64.50 per MT.          US $ - 7,869

(iv)  Expenses incurred by representatives of
      Plaintiff no.2 for travel to and in China to
      Ensure delivery and discharge.                       US $ 2,000

(v)   Loss of profit on account of two further
      Contracts of 20000 Metric Tonnes each
      @US $ 5 per MT.
                                                           US $200,000
                                                           ----------------

              Total                                        US $ 267869

              Equivalent to  Rs.                           1,24,55,908/-

         (1 us $ =Rs. 46/50)

28   The plaintiffs state that the aforesaid loss and damage is payable by the defendant

     no.3 to the plaintiffs. The said loss and damage have arisen in the usual course of

     things by reason of breach of the defendant no.3 and was in the contemplation of

13

the defendant no.3 and to be the probable result of the breach. Further and in any

event, the said loss and damage was reasonably foreseeable as the probable result

of the dereliction of duty of care owed to the plaintiffs by the defendant no.3.

29.  The defendant no.3 at all material times represented to be the owners of the vessel

M.V. IKAL. The said defendant no.3 is in control and possession of the defendant

vessel M.V. Uthai Navee. The crew, including the master of the vessel M.V.

Uthai Navee, are being controlled by the defendant no.3. The defendant no.3 is in

effect the owner of the vessel M.V. Uthai Navee. So far as the plaintiffs have been

able to ascertain, the defendant no.3 is the demise Charterer and/or the temporary

owner of the vessel M.V. Uthai Navee and the movement, control and

management and other business activities of the vessel M.V. Uthai Navee are

presently controlled and looked after by the defendant no. 3. The vessel M.V.

Uthai Navee is in effect the property of the defendant no.3.

30.  The defendant vessel M.V. Uthai Navee has however another registered owner.

The said owner is by name only. The real and beneficial owner of the vessel M.V.

Uthai Navee is however the defendant no.3. The registered owner of the vessel

M.V Uthai Navee is by name only and for all commercial and practical purpose

the vessel M.V. Uthai Navee is owned by the defendant no.3. The

-14-

registeredowner entered in the Ship Registry is with a view to defraud the creditors so that the real owner namely the defendant namely the defendant no.3 is not exposed to commercial liability.

31    The defendant no.3 is also the owner of the bunkers on board the vessel M.V. Uthai Navee. The said bunkers have been purchased by the defendant no.3. the defendant no.3 does not have property apart from the vessel M.V. Uthai Navee and the bunkers on board the vessel M.V. Uthai Navee is within the jurisdiction of this Hon'ble Court.

32    The vessel M.V. Uthai Navee is a foreign vessel flying a flag of Thailand No. owner of the vessel resides.and/or carries on business in India.

33    The claim of the plaintiffs against the defendants herein arise out of an agreement relating to carriage of goods on board the vessel M.V. IKAL. The plaintiffs have also entered as a Charter Party with the defendant no.3. The claim of the plaintiffs is on account of loss and/or damage and/or in connection with the goods carried on board the vessel M.V.IKAL.

34.    The vessel M.V. IKAL is a sister-ship of the vessel M.V. Uthai Navee and the defendant no.3 is the common beneficial owner. The defendant no.3 is also owner of the bunders on board the vessel M.V.Uthai Navee.

15

35. The claim of the plaintiffs in the instant suit is a maritime claim and entertainable

within the admiralty jurisdiction of this Hon'ble Court.

36. The vessel MV. Uthai Navee along with bunkers on board the vessel are lying at

the port of Haldia within the admiralty jurisdiction of this Hon'ble Court.

37. Further and in any event, the cause of action of the plaintiffs in the instant suit has

arisen within the admiralty jurisdiction of this Hon'ble Court.

38. For the purpose of Court fees the suit is valued at Rs.1,24,55,908/- and maximum

court fees have been paid.

The plaintiffs claim

(a) Decree for Rs. 1,24,55,908/-

(b) Interim    interest    and    interest    on

judgement at the rate of 18 % per

annum.

(c) Arrest of the vessel M.V. Uthai Navee

along with its tackle, apparel and

furniture;

(d) Arrest of the bunkers on board the vessel

M.V. Uthai Navee;



16

(e) Decree for sale and appraisement of the vessel M.V. Uthai Navee with its tackle, apparel and furniture and payment of proceeds thereof to the plaintiffs;

(f) Decree for sale of the bunkers on board the vessel M.V. Uthai Navee and payment of proceeds thereof to the plaintiffs;

(g) Attachment;

(h) Receiver;

(i) Injunction;

(j) Interest;

(k) Further or other relief.

ADVOCATE FOR THE PLAINTIFFS

Drawn by :

Mr. R. ADDY

## VERIFICATION

I, DEBJIT ROYCHOWDHURY, Manager of plaintiff No.1 abovenamed do hereby declare and say that the statements contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 of the foregoing plaint including the cause title thereof are based on information derived from the records of the plaintiff no.1 which I believe to be true and those contained in paragraphs 37 and 38 are my respectful submissions before this Hon'ble Court.

I sign this Verification at 12, Government Place, East Kolkata 700 069 on this day of _____, 2006

18

## VERIFICATION

I, BIJU GEORGE, Export Manager of plaintiff No.2 above-named do hereby declare and say that the statements contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 of the foregoing plaint including the cause title thereof are based on information derived from the records of the plaintiff no.2 which I believe to be true and those contained in paragraphs 37 and 38 are my respectful submissions before this Hon'ble Court.

I sign this Verification at 12, Government Place, East Kolkata 700 069 on this day of _____ 2006

19

## AFFIDAVIT VERIFYING PLAINT

I, DEBJIT ROYCHOWDHURY, working for gain at 12, Government Place (East), Kolkata- 700 069 do hereby solemnly affirm and say as follows ;

1.    I am the Manager of the plaintiff No.1 abovenamed and I am well acquainted with the facts and circumstances of the case of this case and am competent to sign and verify the instant plaint for and on behalf of plaintiff No.1.

2.    The statements contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 of the foregoing plaint including the cause title thereof are based on information derived from the records of the plaintiff no.1 which I believe to be true and those contained in paragraphs 37 and 38 are my respectful submissions before this Hon'ble Court.

SOLEMNLY AFFIRMED by the said

Debjit Roychowdhury at the

Court House at Calcutta on

this    day of _____, 2006        Before me


                                    Commissioner

20

## AFFIDAVIT VERIFYING PLAINT

I, BIJU GEORGE, working for gain at 12, Government Place (East), 1st floor, Kolkata- 700 069 do hereby solemnly affirm and say as follows :

1.      I am the Export Manager of the plaintiff No.2 abovenamed and I am well acquainted with the facts and circumstances of the case of this case and am competent to sign and verify the instant plaint for and on behalf of plaintiff No.2.

2.      The statements contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35 and 36 of the foregoing plaint including the cause title thereof are based on information derived from the records of the plaintiff no.2 which I believe to be true and those contained in paragraphs 37 and 38 are my respectful submissions before this Hon'ble Court.

SOLEMNLY AFFIRMED by the said

BIJU GEORGE at the Court House

at Calcutta on this      day

of _____, 2006          Before me

Commissioner