# DECLARATION OF C.R. ADDY, ESQ.

# EXHIBIT I

1915 MADRAS STEAM NAVIGATION CO., LTD. v. SHALIMAR WORKS LTD. Calcutta 681

## A. I. R. 1915 Calcutta 681

JENKINS, C. J. AND STEPHEN, J.

*Madras Steam Navigation Co., Ltd.*—Plaintiff—Appellants.

v.

*Shalimar Works Ltd.*—Defendant—Respondents.

Appeal No. 70 of 1913, and Suit No. 567 of 1912, Decided on 2nd May 1914.

(a) Civil P. C. (5 of 1908), O. 7, R. 1 (e)—Cause of action and its date must be stated in plaint.

Under O. 7, R. 1 (e), the plaint must contain, in addition to other particulars, "the facts constituting the cause of action and when it arose." [P 682 C 1]

(b) Tort—Trespass—Suit for arrest of ship not tenable without proof of malice—Arrest of ship is judicial act in action in rem.

An ordinary suit for trespass, in the absence of proof of malice or its equivalent, does not lie for the arrest of a ship: *The Walter v. B. Wallef* (1903) P. 202; *The Evangelismos, Xenos v. Aldersely* (1858) 12 M. P. C. 352 and *The Strathnaver*, (1875) 1. A. C 58 *Ref.* [P 682 C 2]

The arrest of a ship consequent on a suit in rem instituted in the High Court as a Colonial Court of Admiralty, for an amount alleged to be due for maritime necessaries, is a judicial act of the Court and an ordinary step in an action in rem. [P 682 C 2]

(c) Tort — Trespass — Damages — Where subject matter is in possession of Court—Unsuccessful party will not be liable for damages on account of law's delay.

When possession of the subject of controversy is with the Court, the competing parties are simply preferring their claims in the ordinary course of law, and any damages which the successful party may suffer from the continuance of litigation are due to the law's delay and not to any legal wrong perpetrated by his unsuccessful competitor: *Peruvian Guano Co. v. Dreyfus Brothers & Co.* (1892) A. C. 166 *Foll.* [P 683 C 2]

(d) Jurisdiction—Admiralty Courts jurisdiction before passing of 3 and 4 Vict C. 65 stated.

Quaere—Whether extended powers under 3 and 4 Vict. C. 65 have vested in Indian Courts by charters?

In England previous to the passing of 3 and 4 Vict. C. 65, the Court of Admiralty had no jurisdiction in the case of necessaries supplied to a ship, though perhaps it occasionally purported to exercise the jurisdiction where not prohibited: *Case law referred.*

Whether the extended powers under 3 and 4 Vict. C. 65, & 24 & 25 Vict. C. 10 have become vested in Indian High Courts by virtue of the several Letters Patent: 6 B. L. R. 333 = 10 B. H. C. R. 110 *Ref.* [P 683 C 2]

(e) Jurisdiction—If extended powers under 3 and 4 Vict, C. 65 did not vest Colonial Courts of Admiralty Act, 1890 gave powers, to Calcutta High Court to try claims for necessaries supplied to ships — Scope of S. 2 of Act of 1890 stated — Domicile in Burma must be alleged and proved to deprive Court of its jurisdiction.

Assuming that the extended powers under 3 and 4 Vict. C. 65, and 24 and 25 Vict. C. 10 did not vest in Indian High Courts by virtue of the several Letters Patent, the jurisdiction of the Calcutta High Court in relation to necessaries rests on the Colonial Courts of Admiralty Act, 1890, which vests in it (among other things) the powers described in S. 5 of 24 and 25 Vict. C. 10, providing that the High Court of Admiralty shall have jurisdiction over any claim for necessaries supplied to any ship elsewhere than in the part to which the ship Court belongs, unless it is shown to the satisfaction of the Court that at the time of the institution of the cause any owner or part-owner of the ship is domiciled in England or Wales. As it is provided by the Colonial Courts of Admiralty Act, 1890, S. 2 (3) (a), that any enactment in an Act of the Imperial Parliament referring to the Admiralty jurisdiction in England when applied to a Colonial Court of Admiralty in a British possession, shall be read as if the name of that possession were therein substituted for England and Wales and as by the Interpretation Act, 1889, S. 18 (2), it is provided that the expression "British possession" shall mean any part of Her Majesty's dominions exclusive of the United Kingdom, British India and Burma thus take the place of England and Wales for the purposes of this case. To take away jurisdiction it is not enough that the owner was domiciled in Burma, but that domicile must be alleged and proved to the satisfaction of the Court, before judgment: *Ex parte Michael* (1872) 7 Q B 658 *Foll.* [P 684 C 1]

(f) Limitation Act (9 of 1908), Art. 29—Compensation for arrest of ship without proof of malice if claimed is for wrongful seizure—Art. 29 governs it.

Assuming that a person aggrieved by the arrest of his ship is entitled to compensation even in the absence of proof of malice or its equivalent, the action would be for wrongful seizure under legal process and as such would be barred by Art. 29, Lim. Act, if not brought within one year of the date of seizure. [P 685 C 1]

*B. C. Mitter* and *H. C. Mazumdar*—for Appellants.

*S. P. Sinha* and *Cubitt*—for Respondent.

Jenkins, C. J.—On 4th June 1910, a company called the Shalimar Works Ltd, instituted a suit in rem against the vessel, Clan Macintosh, for an amount alleged to be due to them for that which is described in the plaint in this suit, and has throughout been treated, as maritime necessaries. On the same day the vessel was arrested, and she thenceforth remained under arrest until her release on 31st January 1912, the suit in rem having been dismissed two days earlier. On 4th June 1912, the present suit was instituted on the ordinary original side of this Court claiming damages for the wrongful arrest. In the

plaint it is alleged that the plaintiff company is the owner of the ship, that the defendant company instituted the suit in rem

"falsely alleging therein that a sum of Rs. 89,187-12-0 was due to the defendant company for maritimes supplied to the said vessel and maliciously and without reasonable or probable cause procured a warrant of arrest from the said Court"

and that

"therefore in pursuance of the said order the defendant company caused to be sued out of the said Court and in the said action the said warrant of arrest directed to the Marshal of Calcutta and caused the said vessel, her tackle, apparel and furniture to be wrongfully arrested and detained from the said 4th June 1910 until the time hereinafter mentioned." (para. 2),

The plaintiff company then alleges the dismissal of the suit in rem for want of jurisdiction (para. 3) and submits

"that the said warrant of arrest was issued without jurisdiction . . . . . and was absolutely void and inoperative and of no effect in law and that by reason of wrongful and malicious arrest and detention of the said vessel . . . . . the plaintiff company has been deprived of the use and of the possession of the said vessel from the said 4th June 1910 till the said 31st January 1912 and has suffered damages to the extent of Rs. 5,85,630-6-0." (para. 4).

In form the suit is essentially one for the malicious abuse of the process of the Court: see Bullen and Leake's Precedents, Edn. 3, pp. 353—356, and *Redway* v. *Mc Andrew* (1). But no attempt was made at the trial to prove malice, and before us this aspect of the case has been deliberately abandoned from the outset, for no mention or even suggestion has been made of malice, or the absence of reasonable and probable cause, or crassa negligentia or bad faith. The only case made before us was trespass pure and simple; I will therefore limit myself to that. It may be a question whether a plaint, framed as this is, fairly supports a claim based on trespass, more especially as the plaint is defective in an important particular: See the declaration in *Redway* v. *McAndrew* (1), to which there was a general demurrer. It is imperative under O. 7, R. 1 (e), that the plaint should contain, in addition to other particulars, "the facts constituting the cause of action and when it arose." There is no specific allegation in the plaint when the cause of action arose; and yet if the plaint is to be treated as permitting an alternative claim on the ground

1. (1873) 9 Q B 74=29 L T 421=22 W R 60.

of trespass there would be a different date according as it was treated as a suit for malicious prosecution or a suit for trespass. But a part from that, I am not at present prepared to hold that an ordinary suit for trespass lies for the arrest of a ship. There is no trace of any such suit in the books, and yet the occasion for it must have frequently arisen. The only reference to such a suit that I have been able to find is in *The Walter* v. *D. Walter* (2), where an action was brought for an alleged trespass on a vessel and for its wrongful arrest. Sir Francis Jeune in disposing of the case said that the claim for trespass clearly could not be maintained. The reason of this decision however does not appear, and it may be it has no application in the circumstances of this case.

The arrestment of the ship is a judicial act of the Court and an ordinary step in an action in rem, so where it constitutes a legal grievance, it is not an independent wrong, but an integral part of an action in rem in which there was malice or its equivalent entitling the aggrieved person to seek compensation either in the Admiralty proceedings or by separate action. In the case of *The Evangelismos Yenos* v. *Aldersley* (3), a ship was arrested and in *The Strathnaver* (4) the result of that case was summed up as follows:

"Their Lordships came to the conclusion, though the case was certainly a very strong one, inasmuch as the wrong vessel had been seized, that in the absence of proof of mala fides and malicious negligence they ought not to give damages against the parties arresting the ship."

The principle enunciated in *Peruvian Guano Co.* v. *Dreyfus Brothers & Co.* (5) may fairly be cited in this connexion. One of the questions there considered was whether the wrongful possession of the defendant continued after the appointment of a Receiver so as to give a claim for damages. It was held it did not, and Lord Watson in the course of his judgment said:

"The order of 17th December 1880 for the appointment of a receiver had the immediate effect of making the company bare custodiers for the Court; and the appointment of 23rd February 1881 transferred the actual possession of the cargoes or their proceeds from the company to an officer of Court. In my opinion, detention by the company, whether it had been legal or illegal,

2. (1893) P 202=62 L J Adm 89=I R 627.
3. (1858) 12 M P C 352=Swabey 378=14 E R 945.
4. (1875) 1 A C 58=34 L T 148=3 Asp M C 113.
5. (1892) A C 166=61 L J Ch 749.

ceased at the first of these dates. That circumstance would not affect the quantum of damages due by the company, if it could be shown that the law regards loss arising to the party ultimately successful from the possession of the Court as stake holders as loss directly and naturally resulting from the previous wrongful acts of his adversary. I know of no principle, and of no authority, for that proposition. It appears to me that from the time when the order of 17th December 1880 was made the company and Dreyfus Brothers stood towards each other in the same position in which they would have been placed if the eleven cargoes had never come into the possession of the company and had been thrown into Court by the captains of the carrying vessels. When possession of the subject of controversy is with the Court, competing parties are simply preferring their claims in the ordinary course of law; and any damages which the successful party may suffer from the continuance of litigation are due to the law's delay, and not to any legal wrong perpetrated by his unsuccessful competitor."

Lord Macnaghten too remarked:

"But it appears to me that the detention of these cargoes by the company came to an end when the order was made for the appointment of a Receiver. From the date of that order possession was taken out of the hands of the company.

Thenceforth the possession was the possession of the Court. I do not think that the possession of the Court can be regarded as detention by the company, nor do I think that any loss or diminution of profit which may be attributable the circumstance that the property in question in the action was placed in the custody of the Court is the direct or natural result of the detention by the company."

Here too it may fairly be said that under the arrest the custody and possession was with the Marshal as an officer of the Court, and cannot be regarded as a detention by the defendant company. The damage, if any, suffered from the continuance of the officer's custody and possession was due not to default of the defendant company, but to the law's delay. The English decisions must be our guide in dealing with maritime matters here, and, therefore, I feel justified in citing them. This Court's general Admiralty jurisdiction rests on Cl. 32 of the Letters Patent of 1865, which continues Cl. 31 of the Letters Patent of 1862; and the effect of these clauses is to vest in the High Court such civil and maritime jurisdiction as might be exercised by the Supreme Court as a Court of Admiralty, or by any Judge of that Court as Commissary of the Vice-Admiralty Court. The Admiralty jurisdiction of the Supreme Court is defined as follows in the Charter of 1774, Cl. 26:

"And it is Our further will and pleasure, and we do hereby grant, ordain, establish and appoint, that the said Supreme Court of Judicature at Fort William in Bengal shall be the Court of Admiralty, in and for the said provinces, countries or districts of Bengal, Bihar and Orissa and all other territories and islands adjacent thereunto, and which now are or ought to be dependent thereupon; and we do hereby commit and grant to the said Supreme Court of Judicature at Fort William in Bengal full power and authority to take cognizance of, hear, examine, try and determine all causes, civil and maritime, and all pleas of contracts, debts, exchanges, policies of assurance, accounts, charter-parties, agreements, loading of ships and all matters and contracts, which in any manner whatsoever relate to freight or money due for ships hired and let out, transport-money, maritime usury or bottomry, or to extortions, trespasses, injuries, complaints, demands and matters, civil and maritime, whatsoever between merchants, owners and proprietors of ships and vessels employed or used within the jurisdiction aforesaid, or between others contracted, done, had or commenced in, upon, or by the sea or public rivers, or ports, creeks, harbours and places overflown within the ebbing and flowing of the sea and high water mark, within, about and throughout the said three provinces, countries or districts of Bengal, Bihar and Orissa and all the said territories or islands adjacent thereunto and dependent thereupon, the cognizance whereof doth belong to the jurisdiction of the Admiralty, as the same is used and exercised in that part of Great Britain called England, together with all and singular their incidents, emergents and dependencies annexed and connexed causes whatsoever, and to proceed summarily therein, with all possible despatch, according to the course of our Admiralty of that part of Great Britain called England, without the strict formalities of law considering only the truth of the fact and the equity of the case."

It was ultimately settled to be the law in England that previous to the passing of 3 and 4 Vict. 65, the Court of Admiralty had no jurisdiction in the case of necessaries supplied to a ship, though perhaps it occasionally purported to exercise the jurisdiction where not prohibited. *The Two Ellens, Johnson v. Black* (6), *The Heinrich Bjorn, Northcote v. Heinrich Bjorn, Owners* (7).

The same view has obtained in India: *Murray v. Longford* (8), *Murray & Strachan v. Longford* (9), *The Asia, In re* (10); but there is a difference of opinion as to whether the extended powers under 3 and 4 Vict., c. 65, and 24 Vict., c. 10, became vested in the Indian High Court by virtue of the several Letters Patent: *The Portugal; In re matter of the Ship* (11), *The Asia In re* (10) Bar-

---

6. (1872) 4 P C 161=8 Moore P C (n. s) 398.
7. (1886) 11 A C 270=55 L J Adm. 80.
8. (1842) Fulton 95=1 Ind. Dec. (o. s.) 701.
9. (1843) Fulton 131=1 Ind. Dec. (o. s.) 723.
10. (1869) 5 B H O R (o. c. j.) 64.
11. (1869) 6 B L R 323.

dot v. *The Augusta* (12). For the purposes of this case I will assume they did not. If this be the true view, then this Court's jurisdiction in relation to necessaries rests on the Colonial Courts of Admiralty Act, 1890, which vests in it (among other things) the powers described in S. 5 of 24 Vict., c. 10. That section provides that the High Court of Admiralty shall have jurisdiction over any claim for necessaries supplied to any ship elsewhere than in the port to which the ship Court belongs, unless it is shown to the satisfaction of the Court that at the time of the institution of the case any owner or part-owner of the ship is domiciled in England or Wales. Under S. 35 the jurisdiction conferred by the Act may be exercised either by proceedings in rem or by proceedings in personam. By the Colonial Courts of Admiralty Act, 1890, S. 2 (3) (a), it is provided that any enactment in an Act of the Imperial Parliament referring to the Admiralty jurisdiction in England, when applied to a Colonial Court of Admiralty in a British possession, shall be read as if the name of that possession were therein substituted for England and Wales. By the Interpretation Act 1889, S. 18 (2), it is provided that the expression "British possession" shall mean any part of Her Majesty's dominions exclusive of the United Kingdom, and where parts of such dominions are under both a central and local Legislature, all parts under the central Legislature shall for the purposes of this definition be deemed to be one British possession.

British India and Burma thus take the place of England and Wales for the purposes of this case. It is conceded that when the suit in rem against the Clan Macintosh was instituted, the ship was elsewhere than in the port to which the ship belonged. To that extent then the suit was in order. It is, however, contended that the owner was domiciled in Burma, and that the suit was thus beyond the jurisdiction of this Court. But to take away jurisdiction it is not enough that the owner was so domiciled; this domicile had to be shown to the satisfaction of the Court. Blackburn, J., dealing with S. 5 of 24 Vict., Cap, 10, in *Ex parte Michael* (13) said:—

"That seems clearly enough to enact that the Admiralty Court shall have jurisdiction when the necessaries are supplied in England, just as if they had been supplied abroad; but then it is added, unless it be shewn to the Court that the owner be domiciled in England; but that must be alleged and proved to the satisfaction of the Court before judgment; and it is too late afterwards."

In the same case Cockburn, C. J., thus described the position:

"It is conceded that the County Court had jurisdiction over the subject-matter of the suit and the only ground on which the Court could be called upon to proceed no further is the exception in the section which gives the jurisdiction, that it be shewn to the satisfaction of the Court, that is, the Court in which the suit is pending, that the defendant is domiciled in England or Wales."

When the arrest in this case was made it had not been shown to the Court that the owner was domiciled in Burma at the time of the institution of the suit; it was, to use the language of Blackburn, J. neither alleged nor proved, and so that exception which would have made it imperative on the Court to proceed no further had not been established at that stage. No doubt the plaintiff company contends that by paragraph 1, T. W. F. Bremner's affidavit, the owner's domicile was shown to the satisfaction of the Court; but the fact is that it was not so shown, and the statement in that paragraph is taken from the agreement and is not an independent allegation of the state of affairs at the institution of the suit. And here I may point out that the rule, which prescribes what the affidavit leading to arrest a warrant of should state, does not require any statement of the owners's domicile. Had the present plaintiff company so desired, it could have made such a statement and have procured the release of the ship at any time. It, however, did nothing of the kind, and Counsel for the present plaintiff company has admitted before us, that even in its written statement in that suit it did not specifically allege that its domicile was in Burma. It is true that the suit in rem was dismissed, and the decree contains a recital of the Court's opinion that it had no jurisdiction. But on what materials this result was reached does not appear. Assuming for the purpose of the case that a person aggrieved by the arrest of his ship is entitled to compensation even in the absence of proof of malice or its equivalent, It remains to be seen what would

---

12. (1873) 10 B H C R 110.
13. (1872) 7 Q B 658=41 L J Q B 349.

be the nature of his suit: it would be for a seizure under legal process. But if the seizure was lawful, no suit would lie; if unlawful it would be governed by Art. 29, Limitation Act, and that in the circumstances of the case would be a bar to this suit. It has been argued that the seizure was not under legal process, for that as the suit was dismissed for want of jurisdiction, the order for arrest was coram non judice. But the order for arrest was an unusual step in a suit in rem, and at the time when it was made the Court had jurisdiction over the subject-matter and the exception had not been established. Therefore the order of arrest cannot (in my opinion) be treated as coram non judice or a nullity.

It has been further contended that as this was a trespass to goods, Art. 36 should be applied; but Art. 29 is specific and fits the case, and it is a rule of construction of long application that a general article does not govern where there is a particular article which covers the case. Nor do I think can Art. 49 be treated as governing this case rather than Art. 29. It was the seizure, if wrongful, that was the cause of action and the plaintiff cannot treat the suit as one for trespass apart from the seizure for the purpose of evading Art. 29. The conclusion then to which I come is, that this suit as framed is based on malice or its equivalent; that in the absence of proof of malice or its equivalent the suit, if treated as one for trespass, will not lie in the circumstances of this case; and that if such a suit did lie, it would fall under Art. 29 and would be barred. I therefore would dismiss this appeal with costs.

Stephen, J.—I agree.

V.B./R.K.            *Appeal dismissed.*

---

### A. I. R. 1915 Calcutta 685

MOOKERJEE AND BEACHCROFT, JJ.

*Durga Prosad Singh* — Defendant — Appellant,

v.

*Hari Ram Mahato* and *another* — Plaintiffs—Respondents.

Second Appeal No. 2601 of 1912, Decided on 28th August 1914, against decision of District Judge, Manbhum, D/- 23rd May 1912.

(a) Chota Nagpur Tenancy Act (6 of 1908), Ss. 139 (6)—Cl. (6) bars suit by headman for agricultural land, but no suit for possession on declaration of title.

Section 139, Cl. (6), Chota Nagpur Tenancy Act, 1908, bars only a suit which relates to agricultural land and is instituted by the headman of a village in his character as headman but does not bar a suit for recovery of possession on declaration of title.        [P 686 C 1]

(b) Chota Nagpur Tenancy Act (6 of 1908), S. 20 (3)—Person by being a rent collector does not lose his occupancy right in agricultural land.

The mere fact that a raiyat who has a right of occupancy in his agricultural lands, is at the same time the rent-collector of the village and is remunerated as such, does not deprive him of his right of occupancy.        [P 686 C 2]

*Lalit Mohan Ghose* and *Karunamoy Ghose*—for Appellant.

*Dwarka Nath Chuckerbutty* and *Gopal Chandra Chuckerbutty*—for Respondents.

**Judgment.**—This is an appeal by the defendant in a suit for recovery of possession of land on declaration of title. The case for the plaintiffs is that the eleven parcels in dispute constitute their paternal permanent holding, and that they have been unlawfully evicted therefrom by the defendant. The Court of first instance dismissed the suit. Upon appeal the District Judge has reversed that decision. He has found in favour of the plaintiffs that they have the right alleged by them in the plots in suit and that they were unlawfully dispossessed therefrom by the defendant on or about 20th January 1911. This decree of the District Judge has been assailed substantially on three grounds. It has been contended in the first place that the suit is barred under Cl. 6 of S. 139, Chota Nagpur Tenancy Act of 1908. That section is in these terms:

"All suits by or against headmen of villages or groofs of villages (whether known as mankis or pradhans, manjhis or otherwise) for a declaration of title in, or for possession of, their office or agricultural land, whether based or not on an allegation of the existence or non-existence of the relationship of landlord and tenant, shall be cognisable by the Deputy Commissioner and shall be instituted and tried or heard under the provisions of the Act and shall not be cognizable in any other Court except as otherwise provided in the Act."

The contention of the appellant is that as the plaintiffs have been found to be headmen, the suit which admittedly relates to agricultural land is not maintainable in a civil Court. In our opinion, there is no foundation for this contention, as Cl. 6 of S. 139 is intended to apply only to a suit brought by a headman of a village as such. There can be