# ATTORNEY'S AFFIDAVIT IN SUPPORT OF MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT

## EXHIBIT 20

LEXSEE 2007 US DIST LEXIS 46841

OGI OCEANGATE TRANSPORTATION CO. LTD., Plaintiff, -against- RP LOGISTICS PVT. LTD. and R. PIYARELALL INTERNATIONAL PVT. LTD., Defendants.

06 Civ. 9441 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2007 U.S. Dist. LEXIS 46841*

June 21, 2007, Decided
June 26, 2007, Filed

**CORE TERMS:** attachment, arrest, charter party, admiralty, vacatur, maritime, demurrage, cargo, prima facie, tripartite, freight, vessel, prima facie, vacate, alter ego, arbitration, vacating, chartered, port, maritime law, unlawful arrest, satisfaction, convenience, convenient, verified, personam, comity, pled, dead, iron ore

**COUNSEL:** [*1] For Plaintiff: LENNON, MURPHY & LENNON, LLC, New York, NY, By: Nancy Rebecca Peterson, Esq.

For Defendants: CHALOS, O'CONNOR & DUFFY, LLP, Port Washington, NY, By: Owen Francis Duffy, III, Esq.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

Sweet, D.J.

Defendants RP Logistics Pvt. Ltd. ("RPL") and R. Piyarelall International Pvt. Ltd. ("RPI") (collectively "the Defendants") have moved under Supplemental Rule E(4)(f), Fed. R. Civ. P., to vacate the process of maritime attachment and garnishment issued in this matter on October 17, 2006, upon motion by the plaintiff OGI Oceangate Transportation Co. Ltd. ("OGI" or the "Plaintiff") and, in the alternative, for an order pursuant to Supplemental Rule E(7)(a), Fed. R. Civ. P., for security. This dispute between foreign corporations OGI, the ship owner doing business in Bejing, the Peoples Republic of China, and RPL (the charterer) and RPI, both doing business in Kolkata (Calcutta), India, has so far engaged courts in China and India relating to a charter party which has a provision for mandatory Hong Kong arbitration. For the reasons set forth below, the motion to vacate the attachment is granted.

*Prior Proceedings and the Verified Complaint*

This action [*2] was commenced on October 17, 2006, by the filing of a verified complaint by OGI which alleged that OGI is a foreign company, that RPL and RPI are Indian companies, and that RPL chartered the M/V IKAL, owned by OGI, by charter party dated June 21, 2006. (Compl. PP 2-6.) The parties disputed certain freight and demurrage charges. The dispute was resolved by an agreement which included the consignee China Metals and required the payment of $ 45,000, which was paid by RPI. (*Id.* PP 7-9.) A subsequent dispute. allegedly arose concerning demurrage accrued at the discharge port. (*Id.* P 10.)

In September 2006, according to OGI, RPL wrongfully arrested the M/V UTHAI in India. (*Id.* PP 11-14.)

Pursuant to the charter party, all disputes are to be submitted to arbitration in Hong Kong and OGI is preparing to initiate such an arbitration. (*Id.* PP 15-16.) According to OGI, it expects to recover $ 1,441,464.21 in the arbitration, including over $ 930,000 in damages from the alleged wrongful arrest of the M/V UTHAI in India. (*Id.* P 17.)

According to OGI, RPL is a shell corporation through which RPI conducts its business without separate identity and is the alter ego of RPI, which pays RFL obligations. [*3] (*Id.* PP 18-24.) OGI further asserts that RPL is one of several companies operated as an entity known as the R. Piyarelall Group (*id.* PP 25-26), which is controlled by the Agarwal Family (*id.* P 27). The or-

Case 1:07-cv-05730-BSJ    Document 9-31    Filed 07/16/2007    Page 3 of 6

Page 2
2007 U.S. Dist. LEXIS 46841, *

ganization hierarchy, representatives, offices, and control of the R. Piyarelall Group, as described, result in the allegation that RPI is a party to the charter party between OGI and RPL (*id.* PP 28-35) or, alternatively, a partner, joint venturer, or affiliate (*id.* PP 36-37). The Complaint requests an order of attachment and garnishment on funds held in eleven enumerated banks. (*Id.* P 38.)

On October 17, 2006, an ex parte order of attachment was filed. An Electronic Fund Transfer ("EFT") in the amount of $ 430,898.44, a freight payment made by RPI as a shipper of cargo, was restrained. (Duffy Aff., Nov. 21, 2006 (the "Duffy Aff."), PP 86-87.)

The instant motion to vacate the attachment was heard on December 7, 2006.

### The Facts

Counsel for the parties have submitted affidavits and exhibits setting forth the following facts.

RPI, incorporated in India on November 10, 1988, is an exporter of agro-products, industrial and mineral products, and one of its directors is also a director of RPL. [*4] (*Id.* PP 17, 19, 21.) RPL was incorporated on September 9, 2003, and provides logistical and transportation support to shippers (*id.* PP 10, 12), files its tax returns on an independent basis, and maintains its own bank accounts (*id.* PP 14-15). According to OGI, RPL and RPI have the same address, phone number, overlapping directors, and are dominated by the R. Piyarelall Group. (Peterson Aff., Dec. 4, 2006 (the "Peterson Aff."), PP 58-69.)

In June 2006, RPI entered into an agreement with China National Mineral Co. Ltd. ("China National") to sell 11,000 metric tons of iron ore fines to China National to be shipped from India and delivered to China with the express understanding that, upon completion of the initial shipment, China National would purchase two further cargos of 20,000 metric tons each. (Duffy Aff. PP 25-26.)

RPI retained RPL on June 21, 2006, to arrange as a disponent owner, on behalf of RPI, as sub charterer/shippers, for the carriage of the iron ore cargo from India to China on board the M/V IKAL. (*Id.* P 27.) Pursuant to a "Fixture Note" and a "Charter Party" agreement dated June 21, 2006, RPL chartered the vessel, M/V IKAL, from OGI pursuant to which the M/V IKAL was to [*5] carry the cargo of iron ore from India to China in exchange for the payment of freight. (*Id.* P 28.)

According to OGI, RPL presented or forged authorization on an unauthorized bill of lading. (Peterson Aff. PP 16-21.)

The M/V IKAL loaded a portion of the cargo on June 24 and 25, 2006, but was delayed by a "stability problem" and was unable to load all 11,000 tons. (Duffy Aff. PP 35-39.) The M/V IKAL sailed on July 4, 2006, for China. (*Id.* P 42.) On arrival at the discharge port of Fang Chang, OGI disputed demurrage calculations and refused to berth the vessel. (*Id.* PP 46-48.) On July 22, 2006, RPI, OGI, and China National agreed that the payment of $ 45,000 would resolve OGI's claims. (*Id.* P 50.) Although the payment was made, the cargo was not delivered. (*Id.* PP 53-55.) China National commenced an action in China resulting in a court order to release the cargo (*id.* P 57), and China National cancelled the contracts for future deliveries (*id.* P 60).

On October 13, 2006, RPL and RPI commenced proceedings in the High Court of Kolkata to arrest the M/V UTHAI NAVEE as security for their claim against OGI and the vessel was arrested. (*Id.* PP 63-66.) The M/V UTHAI NAVEE had been chartered by [*6] OGI, and its owner succeeded in lifting the arrest early in November 2006. (Peterson Aff. PP 42, 47.)

### Discussion

#### 1. The Burden of Proof for Vacating a Maritime Attachment

To begin the process by which a party may attach another party's assets, a plaintiff must file a verified complaint seeking attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. Fed. R. Civ. P. *Supp. Rule B(1)*. Thereafter, Rule E(4)(f), Fed. R. Civ. P. *Supp. Rule E*, provides that any person claiming an interest in the attached property is "entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." *Id. Supp. Rule E(4)(f)*.

Under *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty, Ltd., 460 F.3d 434 (2d Cir.2006)*, in a Rule E(4)(f) inquiry challenging a Rule B attachment, a plaintiff has the burden to show not only that it has met the filing and service requirements of *Rules B* and *E*, but also that: (1) it has a prima facie admiralty claim; (2) the named defendants cannot be found within the district; (3) the attached [*7] defendant's property was within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli, 460 F.3d at 445*. At the Rule E(4)(f) hearing, the defendant can attack "the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. *Supp. Rule E(4)(f)*, advisory committee's note.

If the plaintiff meets its burden, the defendant may show that vacatur of the attachment would still be appropriate under certain limited circumstances, including when: "(1) the defendant is subject to suit in a convenient

Case 1:07-cv-05730-BSJ   Document 9-31   Filed 07/16/2007   Page 4 of 6

Page 3
2007 U.S. Dist. LEXIS 46841, *

adjacent jurisdiction; (2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or (3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Aqua Stoli, 460 F.3d at 445.*

### 2. The Motion to Vacate the Attachment Is Granted

The Defendants have not contested that they cannot be found within the district or that the attached property of the defendant RPI was within the district. Nor have the Defendants asserted that there is a statutory or maritime law bar to the attachment. Rather, the issues [*8] presented here are whether OGI has shown that it has a valid prima facie admiralty claim against RPI and, if so, whether the Defendants have shown that the attachment warrants vacatur on other grounds.

### A. Prima Facie Admiralty Claims

#### i. The Standard

To sustain the attachment, OGI must demonstrate that it has "an *in personam* claim against the defendant which is cognizable in admiralty. . . . In other words, the plaintiff's claim must be one which will support a finding of admiralty jurisdiction under *28 U.S.C. § 1333.*" *Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d Cir. 2002)* (quoting Robert M. Jarvis, *An Introduction to Maritime Attachment Practice Under Rule B*, 20 Journal of Maritime Law and Commerce, No 4 (October 1989) at 526 & n. 20).

Of the courts in this district that have considered the issue, the majority have interpreted *Aqua Stoli* to require the application of the prima facie standard when considering the adequacy of the claim asserted in the context of a maritime attachment. *Compare SPL Shipping, Ltd. v. Gujarat Cheminex. Ltd., No. 06-CV-15375 (KMK), 2007 U.S. Dist. LEXIS 18562, 2007 WL 31810, at *3 (S.D.N.Y. Mar. 15, 2007); Fesco Ocean Mgmt. v. High Seas Shipping, Ltd., No. 06 Civ. 1055 NRB, 2007 U.S. Dist. LEXIS 19970, 2007 WL 76615, at *2 (S.D.N.Y. Mar. 12, 2007);* [*9] *Secil Martima U.E.E. v. Malev Shipping, et al., No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006) (transcript of Rule E(4) (f) hearing denying vacatur motion); Route Holding Inc. v. Int'l Oil Overseas, Inc., No. 06 Civ. 3428 (S.D.N.Y. Sept. 29, 2006) (order denying vacatur of maritime attachment); Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) (order vacating attachment), with Wajilam Exps. (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. Oct. 23, 2006) (holding that the applicable standard for establishing the Agua Stoli factors is "reasonable grounds" for an attachment).* The relevant inquiry is therefore whether OGI has pled a prima facie admiralty claim against RPI. *See Fesco Ocean Mgmt. Ltd., 2007 U.S. Dist. LEXIS 19970, 2007 WL 766115, at *2* ("courts should simply consider whether a plaintiff seeking to maintain a maritime attachment has pled a prima facie case justifying that attachment under Rule B").

Suits in admiralty are subject to *Supplemental Rule E(2)(a)*, which provides that:

> In actions to which this rule is applicable the complaint shall state the circumstances from which the claim [*10] arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

*Fed. R. Civ. P. Supp. Rule E(2)(a).* "This heightened pleading standard is not some pettifogging dechnicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in *in rem* admiralty proceedings." *P.R. Ports Auth. v. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. 2005)* (noting that "[o]rdinary notice pleading does not satisfy the stringencies of [the supplemental] rules").

Here, the Complaint has alleged damages arising out of the RPL breach of the charter party and the unlawful arrest of the M/V UTHAI NAVEE in Kolkata. (Compl. P 14.) Although the Complaint has alleged the liability of RPI as the alter ego, partner, joint venturer, or affiliate of RPL (*id.* PP 35-37), OGI has asserted that it has also alleged "a proper direct maritime claim for wrongful arrest damages against both RPL and RPI." (Pl.'s Mem. in Opp'n 2.) Because none of these allegations establish a valid prima facie admiralty claim against RPI, OGI cannot [*11] meet its burden to sustain the attachment. Even if it could, however, there are other grounds sufficient to support vacating the attachment.

#### ii. Breach of the Charter Party

In the Complaint, OGI has asserted that a dispute arose during the course of the charter regarding RPL's failure to pay dead freight and demurrage, but that the dispute was resolved by a tripartite agreement under which OGI was paid $ 45,000 by RPI to resolve the dispute. (Compl. PP 7-9.) The Complaint further alleges that another dispute arose regarding RPL's failure to pay demurrage accrued at the discharge port. (*Id.* P 10.) The details of this second alleged dispute are not made clear in any of the Plaintiff's submissions, which instead indicate that it is the Defendants' protests regarding the valid-

Case 1:07-cv-05730-BSJ   Document 9-31   Filed 07/16/2007   Page 5 of 6

Page 4
2007 U.S. Dist. LEXIS 46841, *

ity of the tripartite agreement that form the basis of OGI's claim for RPL's breach of the charter party. (Pl.'s Mem. in Opp'n 7.) OGI, however, continues to assert that the tripartite agreement is valid. (*Id.*)

Any claim for breach of the charter party regarding dead freight, demurrage and detention at load and discharge ports appears to have been satisfied by the payment made to OGI under the tripartite agreement. OGI [*12] has accepted that payment, and does not dispute the validity of the agreement. Therefore, OGI does not have a valid prima facie claim for breach of the charter party.

Even if OGI were to have a valid prima facie claim against RPL for breach of the charter party sufficient to sustain the attachment, the receipt of the $45,000 in satisfaction of the tripartite agreement militates in favor of vacatur, as will be discussed further below.

### iii. Wrongful Arrest

Although the Defendants contend that OGI has failed to assert a direct claim against RPI for wrongful arrest (Defs.' Mem. in Supp. 10), they concede that both RPL and RPI caused the arrest in question (Defs.' Reply 1). Furthermore, it appears from the High Court of Kolkata documents that RPI was a plaintiff together with RPL in the allegedly unlawful arrest of the M/V UTHAI NAVEE. (Duffy Aff. Ex. 16.) Even assuming that OGI may rely on submissions other than the Complaint to justify maintenance of the attachment based on a direct claim of wrongful arrest against RPI, *see Tide Line*, 06 Civ. 1979, at 13-16, 32-39 (allowing plaintiff to amend complaint where additional allegations and evidence have been submitted to support a claim); *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) [*13] ("A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing."), it is not clear that OGI has sufficiently pled a prima facie claim of wrongful arrest against either of the Defendants.

In the Complaint, OGI asserts that the M/V UTHAI NAVEE was arrested by RPL in September 2006, that the arrest was wrongful, and that OGI was damaged in the amount of $930,962.01 as a result. (Compl. PP 11, 12, 14, 17.) With regard to the instant motion, OGI has further asserted that during the arrest proceedings, RPL and RPI inaccurately alleged that OGI had an interest in the M/V UTHAI NAVEE when OGI had only chartered the vessel from the vessel's head owner. (Peterson Aff. PP 41-42.)

Neither party has made a choice of law argument with respect to OGI's wrongful arrest claim. Without citing relevant case law, Defendants have asserted that to suscain a claim for wrongful arrest "in the U.S. or anywhere else, the claimant must establish that the arrest arose from malice, bad faith or reckless disregard of the other party's legal rights" (Defs.' Reply 2), and that OGI has not asserted any such allegations against either of the Defendants.

Without [*14] deciding the choice of law question, it appears fairly certain that United States law would not apply to the wrongful arrest claim here. *See Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 586 (2d Cir. 2005) (citing *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970); *Lauritzen v. Larsen*, 345 U.S. 571, 583-92, 73 S. Ct. 921, 97 L. Ed. 1254 (1953); *Carbotrade S.P.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir.1996)) (enumerating factors for choice-of-law analysis involving maritime tort as follows: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations); *Hawkspere Shipping Co., Ltd. v. Intamex, S.A.*, 330 F.3d 225, 234-35 (4th Cir. 2003) (citing *Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953)) (same); *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 498-99 (5th Cir. 1992) (citing *Lauritzen*, 345 U.S. at 582; *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield*, 658 F.2d 363 (5th Cir. Unit A 1981), cert. denied, 457 U.S. 1119, 102 S. Ct. 2932, 73 L. Ed. 2d 1332 (1982)) (same).

Without an understanding [*15] of the applicable law, the Court is unable to determine whether OGI has a valid prima facie claim of wrongful arrest. Since OGI has the burden of affirmatively showing that it has such a claim, taking the strictest approach to this analysis and without more information, Plaintiff has failed to meet its burden with respect to this claim of wrongful arrest.

### iv. Alter Ego

OGI has also contended that RPL's acts in connection with the charter party and the unlawful arrest of the M/V UTHAI NAVEE were as the alter ego of RPI. Because it has been determined that there is no claim for breach of the charter party and it appears that any claim for wrongful arrest can be asserted directly against RPI, it is not necessary for the Court to determine whether OGI has sufficiently alleged its alter ego claim.

### B. Vacatur

Based on the foregoing analysis, OGI has failed to show that it has a prima facie admiralty claim in satisfaction of its burden to withstand a vacatur motion under *Aqua Stoli*. Even if OGI could meet this burden, however, Defendants have sufficiently shown that vacatur

Case 1:07-cv-05730-BSJ    Document 9-31    Filed 07/16/2007    Page 6 of 6

Page 5
2007 U.S. Dist. LEXIS 46841, *

would still be appropriate under the limited circumstances articulated in *Aqua Stoli*.

First, the Second Circuit held in *Aqua* [*16] *Stoli* that even if the plaintiff meets its burden, vacatur would be appropriate if "the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." *Aqua Stoli, 460 F.3d at 445*. Here, with respect to OGI's claim for breach of the charter party, OGI has already received $ 45,000 from RPI in satisfaction of the tripartite agreement resolving that dispute. This is roughly the amount that OGI is claiming for demurrage, dead freight and other charges in connection with its claim of breach of the charter party.

Second, the Second Circuit articulated that an attachment would be properly vacated "if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." *Id. at 444-45*. As pointed out by the Defendants, with respect to OGI's claim for wrongful arrest, both OGI and the Defendants were present in the same jurisdiction during the arrest proceedings, namely Kolkata. OGI did make an appearance during that proceeding and even contemplated posting security to secure the release of the vessel. (Defs.' Mem. in Supp. 9; Peterson [*17] Aff. 46-47.)

Lastly, the Second Circuit also held in *Aqua Stoli* that "vacatur may be warranted when the defendant can show that it would be subject to *in personam* jurisdiction in another jurisdiction convenient to the plaintiff." *Id. at 444*. Although the *Aqua Stoli* court indicated that the concept of convenience was to be narrowly circumscribed, the court was addressing the issue in the context of the proximity of the Eastern and Southern Districts. *See id.* Here, it is questionable whether the Southern District of New York is more convenient to OGI than the other jurisdictions implicated in this matter, including Kolkata and Hong Kong. Furthermore, there is the consideration that United States law most likely does not apply to the wrongful arrest claim and that the arrest itself was authorized by the court in India, thereby implicating issues of international comity. *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006)* (citing *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896, 898-99 (7th Cir. 1999); Bigio v. Coca-Cola Co., 239 F.3d 440, 454 (2d Cir. 2000)*) (indicating proper consideration of international comity principles [*18] requires evaluation of various factors, "such as the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction").

Thus, when combined with these comity considerations, the convenience issue speaks even more strongly against the exercise of jurisdiction and therefore in favor of vacating the attachment.

### *Conclusion*

Accordingly, for the forgoing reasons, the motion to vacate the order of maritime attachment is granted and the Complaint is dismissed without prejudice.

It is so ordered.

New York, NY

June 21, 2007

ROBERT W. SWEET

U.S.D.J.