**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
```
UNITHAI MARITIME LIMITED,                  :
                                            :
                        Plaintiff,          :        07 CV 5730 (BSJ)
                                            :
v.                                          :
                                            :
RP LOGISTICS PVT. LTD. and                 :
R. PIYARELALL INTERNATIONAL                :
PVT. LTD.                                   :
                        Defendants.         :
```
-----------------------------------------------------------x
```

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO VACATE MARITIME ATTACHMENT**

**INTRODUCTION**

Plaintiff, Unithai Maritime Ltd. ("Unithai" or "Plaintiff"), by and through its undersigned

counsel, Vandeventer Black LLP, respectfully submits this Memorandum of Law in Opposition

to Defendants', RP Logistics Pvt. Ltd. ("RPL" ) and R. Piyarelall International Pvt. Ltd. (" RPI" )

(collectively referred to as " Defendants" ), Motion to Vacate the maritime attachment issued

pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the

Federal Rules of Civil Procedure ("Rule B" ).  Defendants' Motion to Vacate should be denied

because: (1) Plaintiff has sustained its burden herein to establish a prima facie maritime claim of

wrongful arrest against Defendant RPL; (2) Plaintiff's have satisfied its burden herein to plead a

prima facie alter-ego claim against both Defendants RPL and RPI; (3) Plaintiff has satisfied the

requirements of Rule B in all other respects; and (4) the doctrine enunciated by the Second

Circuit Court of Appeals in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434,

(2d Cir. 2006) (hereinafter referred to as "*Aqua Stoli*") militates in favor of denying Defendant's

Motion to Vacate Maritime Attachment.

1

Unithai has alleged a proper direct maritime tort claim for wrongful arrest damages against RPL. As the disponent owner of the M/V UTHAI NAVEE, Unithai entered into a time charter party with OGI Oceangate Transportation Co. Ltd ("Oceangate") for the use of the M/V UTHAI NAVEE on June 26, 2006. *See* Verified Compaint, Exhibit A. Both RPL and RPI commenced an action in India against Oceangate, the owners and parties interested in the M/V UTHAI NAVEE, and the owners and parties interested in the bunkers on board the vessel M/V UTHAI NAVEE. The action commenced in India by both Defendants alleges damages arising from alleged breach of a charter party between Defendants and Oceangate involving a separate and distinct vessel, the M/V IKAL. This charter party between Defendants and Oceangate contains a mandatory arbitration provision, which requires arbitration in Hong Kong. Nonetheless, Defendants filed suit against the owners of the M/V UTHAI NAVEE and sought attachment of the M/V UTHAI NAVEE, a vessel that had absolutely nothing to do with the charter party between Defendants and Oceangate. Unithai has no, nor has it ever had any, interest in the M/V IKAL. Moreover, Unithai was not a party to the charter party between Oceangate and Defendants. Therefore, Plaintiff's claim for the wrongful arrest of the M/V "UTHAI NAVEE" is properly brought against RPL.

Plaintiff has also adequately alleged a prima facie alter-ego claim against RPI such that RPI is liable for the debts of RPL based upon RPI's domination and disregard for RPL's corporate form. Defendants' arguments to the contrary ignore recent case law and are unavailing. In order for the Plaintiff to maintain a maritime attachment against an alter-ego of the principal defendant at a Rule (E)(4)(f) post-attachment hearing, Unithai need only establish that it has sufficiently alleged a prima facie alter-ego claim. Here, this burden is met because Unithai has alleged the nature of its maritime claim (the wrongful arrest of the M/V UTHAI NAVEE by

RPL) and the basis upon which it is claiming the existence of an alter-ego relationship between RPL and RPI (RPI's domination/control and disregard for RPL's corporate form). It is not necessary for a plaintiff to show "probable cause" or "reasonable grounds" to support its claim at a Rule (E)(4)(f) post-attachment hearing.

Even assuming *arguendo* that Plaintiff must make a factual showing at this stage, which is denied, Plaintiff has set forth compelling evidence showing that RPL and RPI are alter-egos of each other. RPL is a paper company which RPI and the R. Piyarelall Group use to charter ships in order to insulate themselves from liability under such contracts. RPL has no true separate existence from RPI. RPL and RPI have the exact same address, contact information and cable identifier. In addition, RPL and RPI have overlapping directors and RPI pays freight on behalf of RPL. Furthermore, communications regarding RPL charters originate from various R. Piyarelall group entities.

Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited bases that could militate in favor of vacating the attachment. *See Aqua Stoli,* at 444-445. *Aqua Stoli* provides that an otherwise facially valid Rule B attachment *may* only be vacated upon three bases. *Id* Significantly, Defendants have not challenged the facial validity of the attachment nor have they shown that any of the *Aqua Stoli* bases for vacateur exist in this case, *i.e.,* Defendants do not allege that they are subject to suit in an adjacent jurisdiction in which Plaintiff is also subject to jurisdiction, Defendants do not allege that Plaintiff could obtain *in personam* jurisdiction over the Defendants in the district where Plaintiff is located, and Defendants have not shown that Plaintiff has otherwise obtained sufficient security.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment and garnishment as against RPL and RPI are more fully set forth in the accompanying Declaration of Lawrence G. Cohen, dated July 23, 2007 (hereinafter "Cohen Decl."). The facts stated in the Declaration are incorporated by reference herein. In addition, this Memorandum of Law will make reference to, and discuss as necessary, the facts set forth in the Declaration.

## ARGUMENT

## I.    THE PROCESS OF MARITME ATTACHMENT AND GARNISHMENT

Supplemental Rule B authorizes, in admiralty and maritime cases, attachment of a defendant's assets as a means of obtaining jurisdiction over a defendant when he cannot be "found" within the federal district in which the attachment is sought. The purpose of Rule B is to enable the plaintiff both to acquire jurisdiction over the defendant and obtain security for any resulting judgment. *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). Attachment may not be utilized solely for the purpose of acquiring security. *Chilean Line Inc. v.United States,* 344 F.2d 757, 760 (2d Cir.1965); *Seawind Compania, S.A. v. Crescent Line, Inc.,* 320 F.2d 580, 582 (2d Cir.1963). Because jurisdiction over the person is gained only through the attached property, Rule B jurisdiction is *quasi in rem* in nature. *Limonium Maritime, S.A., v. Mizushima Marinera, S.A.,* 961 F.Supp. 600, 605 (S.D.N.Y.1997) (citing *Maryland Tuna Corp. v. M/S Benares,* 429 F.2d 307, 311 (2d Cir.1970) (Rule B attachment is *quasi in rem* proceeding)).

Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam.*" *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.*, 759 F.2d 262 (2d Cir. 1985). Quasi in rem process can be used to attach or

garnish a wide variety of tangible and intangible property.  Rules B(1) and B(3) permit attachment of " virtually all tangible property . . . In addition to tangible property, service of quasi in rem process can also be used to reach a variety of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant."  *See 29-0705 Moore's Federal Practice- Civil § 705.04.*  A party may attach the funds used to pay a debt that is owed or will be owed to a defendant and the court may require such person to pay the debt to the attaching party upon maturity.  *See Iran Express Lines v. Sumatrop, A.G.*, 563 F.2d 648 (4th Cir. 1977).  Under the law of the Second Circuit, "EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction."  A*qua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006) (citing *Winter Storm Shipping, Ltd. v. TPI,* 310 F.3d 263 (2d Cir. 2002)).

Under Rule B, "an order of maritime attachment must issue upon a minimal prima facie showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached.  But under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules.  It is clear from the text of Rule E(4)(f) that the party having obtained the maritime attachment bears the burden of showing that the attachment should not be vacated.

## II.     PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f).

As will be demonstrated below: (1) Plaintiff has a maritime claim against Defendant RPL; (2) the funds attached by the garnishee banks belong to RPI, the alleged alter-ego of RPL; and (3) RPL and RPI are not present within New York.  Thus, all the requirements of Rule B are satisfied.  Moreover, Plaintiff has submitted evidence supporting its alter-ego allegations and

showing that RPL and RPI are not separate entities. For these reasons, Defendants' motion to vacate the attachment should be denied.

      A.    <u>PLAINTIFF NEED ONLY ESTABLISH THAT IT HAS MET THE FOUR TECHNICAL REQUIREMENTS OF RULE B IN ORDER TO SATISFY ITS BURDEN AT THE RULE E(4)(F) POST-ATTACHMENT HEARING</u>.

     The Second Circuit Court of Appeals has ruled that it is improper for a court to engage in a fact intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 4447 (2d Cir. 2006). As recently confirmed by the Second Circuit Court of Appeals in *Aqua Stoli, supra,* the Rule (E)(4)(f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of Rule B were met. Thus, as long as the plaintiff establishes that it has alleged a prima facie maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *See Aqua Stoli,* 460 F.3d at 445; *see also* Order dated August 15, 2006 in *Tide Line, Inc. v. Eastrade Commodities Inc. and Transclear, S.A.,* 06 Civ. 1979 (KMW) annexed hereto as Exhibit "A," at 16. In addition, within the last year, Chief Judge Wood and Judge Castel both have held that it is unnecessary to examine the factual underpinnings of a plaintiff's alter-ego claims at a Rule (E)(4)(f) post-attachment hearing. *See* Order dated August 15, 2006 in *Tide Line, Inc. v. Eastrade Commodities Inc. and Transclear, S.A.,* 06 Civ. 1979 (KMW) annexed hereto as Exhibit "A"*; see also* Transcript of Rule E(4)(f) hearing dated September 29, 2006 in *Route Holding Inc. and Beam Company v. 1001 and Marina World Shipping,* 06 Civ. 3428 (PKC) annexed hereto as Exhibit "B." The facts presented in the *Tide Line and Route Holding* cases are strikingly similar to the instant matter, and their respective holdings, denying the defendants' alter-ego based challenges, decisively

establish that Plaintiff has met its burden in this case.

      B.    <u>PLAINTIFF HAS ALLEGED A DIRECT CLAIM FOR WRONGFUL ARREST AGAINST RPL, THUS SATISFYING ITS OBLIGATION TO ALLEGE A PRIMA FACIE MARITIME CLAIM</u>.

The entirety of Plaintiff's claim ($559,353.00) is for RPL's wrongful arrest of the M/V UTHAI NAVEE.  This Court must take the factual pleadings in the Complaint as true for considering whether a prima facie claim for wrongful arrest has been properly pled by Plaintiff. As Defendants' admit "on or about October 13, 2006, RP Logistics and RPI initiated proceedings in the High Court at Calcutta against: the Owners and parties interested in the M/V UTHAI NAVEE; the Owners and parties interested in the bunkers on board the M/V UTHAI NAVEE; and OGI."  *See* Declaration of Owen Duffy ¶30*; see also* Defendant's Exhibit 16 referencing RPL and RPI as plaintiff 1 and RPI as plaintiff 2.  Further, there is no dispute between Plaintiff and Defendants regarding the following facts: (1) Defendants "RPL and RPI asserted [in India] a claim for breach of a charter party in respect of another vessel known as the M/V IKAL," *see* Declaration of Owen Duffy ¶31; (2) this charter party between RPL/RPI and Oceangate contains a mandatory arbitration provision that names Hong Kong as the forum for arbitration, *see Oceangate Transp. Co. Ltd. v. RP Logistics PVT. LTD. and R. Piyarelall International PVT. LTD.*, 2007 WL 1834711, *1 (S.D.N.Y. 2007); (3) RPL and RPI sought and obtained an Order of the High Court of Calcutta for the arrest of the M/V UTHAI NAVEE, *see* Declaration of Owen Duffy ¶¶32, 33, 34, and (4)  The M/V UTHAI NAVEE was in  fact arrested  on September 26, 2006.  *See* Declaration of Owen Duffy ¶¶32, 33, 34.

For any claim of wrongful arrest, the burden is on the party pressing the claim to demonstrate that the arresting party acted with bad faith, malice, or gross negligence.  *See*, *e.g.*, *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 402 n. 5 (2d Cir.1995); *Furness*

*Withy (Chartering), Inc. v. World Energy Sys. Assoc* ., 854 F.2d 410, 411 (11th Cir.1988); *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir.1937). The gravamen of the right to recover damages for the wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party." *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 296 - 297 (5th Cir. 1937) (citations omitted); *see also Parsons, Inc. v. Wales Shipping Co.*, 1986 WL 10282, at *3 (S.D.N.Y. Sept. 9, 1986) *Ocean Ship Supply, Ltd. v. MV Leah*, 729 F.2d 971, 974 (4th Cir. 1984). "A defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary." *Id.*

Unithai has fulfilled its burden to properly allege a direct maritime claim for wrongful arrest damages against RPL.  As the disponent owner of the M/V UTHAI NAVEE, Unithai entered into a time charter party with Oceangate regarding the use of the M/V UTHAI NAVEE on June 26, 2006.  *See* Verified Compaint, Exhbit A.  The Defendants commenced a lawsuit in India that alleges damages arising from the alleged breach of a charter party between Defendants and Oceangate involving a separate and distinct vessel, the M/V IKAL.  *See* Declaration of Owen Duffy at ¶ 31.  Nonetheless, the Defendants herein sought attachment of a vessel in which Oceangate does not presently have, and has never previously had, an ownership interest, to wit: the M/V UTHAI NAVEE.  *See* Verified Complaint at ¶ 7.  Both RPL and RPI acted in bad faith and with gross negligence, in violation of the laws of the United States and India, in arresting the M/V UTHAI NAVEE in an attempt to obtain security for an alleged breach of a charter party involving the M/V IKAL  At the time of its arrest, the M/V UTHAI NAVEE was being time charted from the Plaintiff herein to Oceangate.  Therefore, Plaintiff's claim for the wrongful

arrest of the M/V "UTHAI NAVEE" has been properly pled based upon allegations of bad faith and/or gross negligence against RPL and its alter-ego RPI.

There is no indication that the High Court of Calcutta has considered the issue of whether or not the arrest of the M/V UTHAI NAVEE was wrongful.  Additionally, there is no indication at this point that the courts of India will ever consider this issue for a number of reasons.  First, (insert language from Duffy Affidavit regarding this issue).  Second, the UTHAI NAVEE was released from arrest in India due to Unithai Line Public Co. Ltd.'s limited appearance in India; in its limited appearance, Unithai Line Public Co. Ltd. did not submit itself to the personal jurisdiction of the courts of India.  Third, the counterclaim of wrongful arrest asserted by Unithai Line Public Co. Ltd in its response papers filed in the High Court of Calcutta was never addressed by the courts of India because the courts of India did not need to address this issue in order to determine that its was appropriate to order the release of the M/V UTHAI NAVEE. Finally,  the Defendants and Oceangate are proceeding with arbitration in Hong Kong as required under the charter party them that concerns a complete different vessel, the M/V IKAL *See  Oceangate Transp. Co. Ltd. v. RP Logistics PVT. LTD. and R. Piyarelall International PVT. LTD*., 2007 WL 1834711, *3 (S.D.N.Y. 2007).

In *Thypin Steel Co. v. Certain Bills of Lading Issues For A Cargo of 3017 Metric Tons, More Or Less, Of Hot Rolled Steel Plate Laden On Board The M/V GEROI PANFILOVSKY, in rem.*, WL 1019347, *5-6  (N.D.N.Y. 2001), the fact that the Southern District Court had previously concluded that "the arrest of the Bill of Lading ordered on March 26, 1996 has been supported by reasonable grounds," *Thypin Steel Co. v. Certain Bills of Lading,* 96 Civ. 2166(RPP), 1996 WL 223896, at *5 (S.D.N.Y. May 2, 1996), and the Second Circuit had previously held that there was "no error in [Thypin's] arrest of the bill of lading pursuant to Rule

D," *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 283 (2d Cir.2000), the Defendant was nonetheless permitted to pursue discovery and proceed to the summary judgment phase of the proceedings prior to the Northern District Court dismissing its counterclaim for wrongful arrest. So here too, Plaintiff respectfully submits that justice will be served by providing it "[a] full and fair opportunity for discovery" just as was provided to the defendant in *Thypin Steel*, *supra*, at *5-6.

In light of the foregoing, Defendants' argument that Plaintiff's claim for wrongful arrest is not brought properly against RPL is revealed to be disingenuous and false. Together, RPL and RPI wrongfully arrested the M/V UTHAI NAVEE and together they must face the wrongful arrest claim arising therefrom.

Contrary to Defendants' contentions, Plaintiff is not required to seek security in the venue where the Vessel was arrested. Notably, Defendants' have not cited any case law in support of this proposition. Furthermore, Plaintiff is under no obligation to bring its wrongful arrest claim within the litigation allegedly still ongoing in India[1] because it has never appeared in, nor submitted itself to the jurisdiction of, the High Court of Calcutta. Plaintiff in the instant litigation never appeared in the High Court of Calcutta nor submitted itself to the jurisdiction of the courts of India; indeed, it was a different entity, Unithai Line Public Co. Ltd., that made a special appearance as the registered owner, without submitting to jurisdiction, to contest and vacate the arrest of the M/V UTHAI NAVEE. Defendants do not state that Unithai Public Line Co. Ltd. was required to bring a counterclaim because there is no such requirement for bringing such a counter-claim in India. *See* Declaration of Amit Basu annexed to Cohen Decl. as Exhibit

---

[1] Tellingly, Defendants do not affirmatively state they will proceed with the litigation in India: instead, they state that "steps *can* still be taken" and "the suit *may* be placed in the list of the

21.

Plaintiff submits that, because there is no contractual privity between itself and Defendants, there is not a pre-established forum wherein Plaintiff must bring its claim against Defendants. Instead, as Plaintiff is a company registered in Singapore and Defendants are companies doing business out of India, Plaintiff chose a forum wherein it could locate and attach the assets of Defendants, thus securing jurisdiction over Defendants in a forum convenient to both parties and where the Plaintiff is willing to submit itself to personal jurisdiction. While Defendants are companies registered in India, and ostensibly would prefer an Indian forum for deciding Plaintiff's claims against them, Plaintiff is under no obligation to bring suit against Defendants in India, nor to join issue in the litigation allegedly still pending before the High Court of Calcutta. Indeed, Plaintiff, the disponent owner of the M/V UTHAI NAVEE, did not make any appearance, or submission to jurisdiction, in the proceeding commenced by Defendants in India that resulted in the wrongful arrest of the M/V UTHAI NAVEE. Instead, the registered owner of the M/V UTHAI NAVEE, Unithai Line Public Co. Ltd., made a special appearance in the courts of India for the sole purpose of obtaining the M/V UTHAI NAVEE's release from arrest. *See* the Declaration of Owen Duffy ¶40.

Further, even if Plaintiff was required to bring a wrongful arrest claim in India, which Plaintiff maintains it was not, the statute of limitations to bring a wrongful arrest claim in India is three years. Thus, there is ample time to bring a wrongful arrest action in India and the monies attached within the Southern District of New York pursuant to the underlying litigation should, and indeed do, provide security for a claim of wrongful arrest should it be brought in India.

It is unclear why Defendants' have cited *Aqua Stoli*, 460 F.3d 434 (2d Cir. 2006), as

Court for hearing." *See* Declaration of Owen Duffy at ¶49; Declaration of C.R. Addy at ¶ 34

support for their argument that Plaintiff has not asserted a valid maritime claim. *Aqau Stoli*

stands for the limited proposition that if a Plaintiff has already obtained adequate security in

another jurisdiction then an attachment may be vacated. Here, Defendants have not, and cannot,

allege that Plaintiff has obtained adequate security for its claims in another jurisdiction.

Plaintiff has a maritime claim for which it is unsecured, but for the attachment in this

action.[2] Defendants' arguments regarding the merits of the claim should be reserved for

adjudication on the merits of the Complaint rather than a maritime attachment proceeding. *See*

*Wajilam Exps. (Singapore) Pte. Ltd v. ATL Shipping Ltd.,* 475 F.Supp.2d 275 (S.D.N.Y. 2006);

*World Reach Shipping Ltd v. Industrial Carriers Inc.,* 2006 WL 3316828 (S.D.N.Y. 2006).

C.      UNITHAI HAS PROPERLY PLED A PRIMA FACIE CLAIM OF THE
        EXISTENCE OF AN ALTER-EGO RELATIONSHIP BETWEEN RPL AND
        RPI.

        i.      The standard for determining whether an alter-ego exists.

Under federal common law, the corporate form will be ignored and liability imposed on

another corporate entity or the principals, if it is shown that the interconnected organization was

utilized to perpetrate a fraud *or* where one entity or individual(s) so dominated another that it

was, in effect, carrying on the principal's business. *See Kirno Hill Corp. v. Holt*, 618 F.2d 982,

985 (2d Cir. 1980). In a maritime case, it is sufficient to show that the parent or controlling

principal so dominated the subsidiary or other units within the group such that they were mere

tools of instrumentalities to carry on the overall business of the principal. *See Kirno Hill*, 618

F.2d at 985; *Matter of Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda Ltd.*,

---

(emphasis added).
[2] The payment restrained in the instant matter is, on information and belief, a freight payment
being made by RPI as a shipper of cargo. On information and belief, there is a charter party
underlying this payment and it would be consistent with RPI's *motus operandi* that RPL be the
named charterer in this transaction as well.

774 F.Supp. 840, 844 (S.D.N.Y. 1991).

While there is no precise test to determine whether an entity is an alter-ego of another, in general the corporate veil may be pierced where it can be demonstrated that the parent or controlling entity was the 'true' or prime mover behind the subsidiary. *See Carte Blanche (Singapore) v. Diners Club Intern,* 758 F. Supp. 908, 918 (S.D.N.Y. 1991).  In *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F. 2d 131, 139 (2d Cir. 1991) the Second Circuit listed a number of factors that should be considered in determining whether to pierce the corporate veil:

> 1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issues of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms' length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and 10) whether the corporation in question had property that was used by the other of the corporations as if it were its own. *See generally,* Barber, *Piercing the Corporate Veil,* 17 Willamette L. Rev. 371, 98(1981); *Directors Guild of America v. Garrison Prod*., 733 F.Supp. 755, 760-61    (S.D.N.Y. 1990); *UnitedStates Barite Corp. v. M/V Haris*, 534 F. Supp. 328, 330    (S.D.N.Y. 1982).

*Id.*  Obviously, many of the documents required to establish some of these elements are solely in the control of the Defendants and discovery on these issues will be necessary.  However, the accompanying Cohen Decl. sets forth convincing evidence that clearly establishes the alter-ego relationship between RPL and RPI.  *See Maersk , Inc. v. Neewra, Inc.*, 443 F.Supp.2d 519, 527 (S.D.N.Y. 2006) ("A court may also consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing.").

At this stage in the proceeding, Plaintiff need not establish an alter-ego relationship to the

degree required at trial.  Evidence of corporate domination or fraud is seldom available to the

public and a claimant is not expected, at this early stage, to produce fully documented alter-ego

claim.  Otherwise, a corporation that held its corporate records tightly would be immune from

suits based on its alter-ego relationships. *See Maryland Tuna Corp. v. MS Benaries*, 429 F.2d

307 (2d Cir. 1970).  Plaintiff has submitted sufficient evidence to show that there is probable

cause to believe that Defendants RPL and RPI are alter-egos in order to sustain the attachment at

the (E)(4)(f) post-attachment hearing, as will be further illustrated below.

> ii.    <u>In a Rule B alter-ego case, if all other requirements are satisfied, a
> Plaintiff must only allege the nature of its alter-ego claim, particularly
> whether its claim is based on domination and control or fraud, in order to
> successfully sustain the attachment.</u>

*Aqua Stoli's* holding marks a departure from the prior "probable cause/reasonable basis

standard" that certain courts previously applied.  As confirmed by Chief Judge Wood in *Tide

Line* and Judge Castel in *Route Holding,* a plaintiff no longer needs to show that it had

"reasonable grounds" or "probable cause" to make alter-ego claims against a defendant in order

to maintain the attachment.  Rather, at the Rule E(4)(f) hearing, a plaintiff must only show that it

has *alleged* a prima facie valid alter-ego claim in order to satisfy Rule B.  Both the *Tide Line* and

*Route Holding* cases are instructive on this point and will be briefly summarized below.

In *Tide Line,* as in the instant case, the plaintiff obtained a Rule B order of maritime

attachment and garnishment against both Eastrade Commodities Inc. as the named entity in the

charter party, and Transclear S.A. as its alter-ego. Transclear moved to vacate the attachment

claiming that it was not an alter-ego of Eastrade.  Tide Line then produced evidence that

Transclear occasionally paid Eastrade's debts where it had no connection to the underlying

contract. Transclear then claimed that is had a legal basis upon which to make the payments on

Eastrade's behalf.

Judge Wood found all of these factual arguments unnecessary and irrelevant in the post-attachment hearing.  Particularly, she found that in light of the *Aqua Stoli* decision, the court should exercise a very limited inquiry into the underlying facts.  She reasoned that when applying for a Rule B attachment, a plaintiff *need not provide any supporting evidence;* its complaint should suffice.  In keeping with this principal, she held that *Aqua Stoli* implies that a plaintiff *is likewise not required to provide evidence showing that it has a claim against defendant,* to carry its burden under Supplemental Rule (E)(4)(f) at the post-attachment hearing. *See Tide Line* Order*,* annexed hereto as Exhibit "A," at 13.

Judge Wood noted that "in seeking to have an attachment vacated, a defendant may argue that a plaintiff does not have a "valid prima facie admiralty claim against the defendant." However, she further clarified that such a challenge must be based on *insufficiency of pleading. See Tide Line* Order*, supra,* at 17 (" it does not appear that the basis of defendant's argument may be that plaintiff has not provided sufficient evidence of such a claim" ).  Thus, the only way for a defendant to show that a plaintiff does not have a maritime claim against an alter-ego is to prove that the pleadings themselves are insufficient to state such a claim.

In *Route Holding,* following the *Tide Line* precedent, the district court limited its analysis to determining whether the plaintiffs, Route Holding and Beam Company, had *sufficiently pled* their alter-ego claims against Marina World Shipping ("MWS").  The plaintiffs had alleged that MWS was an alter-ego because it dominated and controlled the principal, IOOI.  The district court found that plaintiffs' pleadings were sufficient to uphold the attachment, finding that

> the plaintiff alleges that MWS is the alter-ego of IOOI, but it does not simply leave it as a conclusory allegation.  It goes on to allege that the reason it believes it is the alter-ego is because IOOI dominates and disregards MWS' corporate form to the extent that MWS is actually carrying on IOOI's business and operations as if the same were its own.  It further goes on to allege that MWS, acting as paying agent, acts a paying agent or

arranges for other nonparties to satisfy the debts and obligations of IOOI. *It seems to me a sufficient allegation.*

*See* Transcript of *Route Holding* annexed hereto as Exhibit "B," at 12, lines 14-24 (emphasis added). Thus, in light of the decisions in *Aqua Stoli, Tide Line, and Route Holding,* the current state of the law is that a plaintiff need only allege a prima facie maritime claim against the principal defendant and a prima facie alter-ego claim against the alleged alter-ego entity in order to satisfy its burden in this regard.

As indicated above, the Second Circuit Court of Appeals held in *Aqua Stoli* that it is *inappropriate* for a court to conduct a fact-intensive inquiry regarding the specifics of a plaintiff's claim at a post-attachment hearing. Rule E(4)(f) does not afford a defendant the opportunity to challenge the sufficiency of the evidence supporting plaintiff's claim. A defendant may, if it wishes, raise such issues by way of a Rule 12(b)(6) motion to dismiss or Rule 56 motion for summary judgment but it may not do so in the context of an emergency hearing pursuant to Supplemental Rule E(4)(f). *Maersk Inc. v. Neewra, Inc.,* 443 F.Supp.2d 519, 2007 A.M.C. 107 (S.D.N.Y. 2006) (refusing to apply the higher pleading standard used in a motion to dismiss in a post-attachment hearing "lest Rule 12(b)(6) be completely subsumed by Supplemental Rule E(4)(f)" ).

Defendants' reliance on *Wajilam Exps. (Singapore) Pte. Ltd v. ATL Shipping Ltd.,* 475 F.Supp.2d 275 (S.D.N.Y. 2006) is misplaced. The holding of *Wajilam* supports Plaintiffs position that "although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case." *Id.* at 279. While *Wajilam* utilizes the outdated "reasonable grounds" standard to uphold the maritime attachment against the defendents' alter-ego challenges, the *Wajilam* holding supports the general principle that a plaintiff need only make a very minimal showing in order to survive a motion to vacate pursuant

to a Rule E(4)(f).

Notably, the *Wajilam* court also applied a standard more appropriate to a motion to dismiss than a motion to vacate an attachment pursuant to Rule E(4)(f). As noted in *Maersk v. Neewra,* courts should not consider arguments and standards relating to a motion to dismiss in the context of a Rule E(4)(f) hearing " lest Rule 12(b)(6) be completely subsumed by Supplemental Rule E(4)(f)." *See Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 531 (S.D.N.Y. 2006). Here, as in *Neewra,* the Defendants have raised a motion to vacate pursuant to Rule E(4)(f) and it is inappropriate to engage in the sort of factual inquiry as to the nature of the allegations urged by Defendants.

Second, as indicated above, *Wajilam* does not reflect the current state of the law regarding challenges to Rule B attachments involving alter ego claims. As stated by Judge Buchwald in *World Reach Shipping Ltd v. Industrial Carriers Inc.,*

> We recognize that a case decided before *Aqua Stoli* applied an arguably higher standard to a request for maritime attachments based on alter ego status. *See Ullises,* 415 F. Supp. 2d at 323 (holding that the plaintiff must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil). However, *Aqua Stoli* strongly suggests that the *Ullises* standard is no longer good law on this point.

*World Reach,* 2006 WL 3316828, *3 (S.D.N.Y. 2006) (emphasis added). Further emphasizing the state of the law, on October 11, 2006, Judge Hellerstein denied a near identical alter-ego challenge raised by Defendants' counsel herein in regards to the maritime attachment action *Secil Maritima U.E.E. v. Malev Shipping Co. Ltd., Evalend Shipping Co. S.A. and Plumfield Shipping Corp.,* 06 Civ. 6345 (AKH) (denying defendants' motion to vacate an attachment under Rule B based on the relaxed *post-Aqua Stoli* standard).

           iii.   <u>Plaintiff has adequately alleged the existence of an alter-ego relationship between RPL and RPI, thus also a proper maritime claim against both Defendants.</u>.

Plaintiff has met its pleading burden under the Supplemental Admiralty Rules.  Plaintiff

has properly alleged a maritime claim against RPL.  *See* Verified Complaint, ¶¶4, 6, 7, 8 at

Defendants' Exhibit "1."   In addition, Plaintiff has repeatedly alleged in its Complaint, this

Memorandum, and the accompanying Cohen Decl. that RPL and RPI are alter-egos and that both

are liable for RPL's wrongful arrest of the M/V UTHAI NAVEE.  Particularly, Plaintiff made the

following allegations in its Verified Complaint:

> 11. Upon information and belief, Defendant RP Logistics is a shell-corporation through which Defendant RPI conducts its business.
> 12. Upon information and belief, Defendant RP Logistics has no separate, independent identity from Defendant RPI.
> 13. Furthermore, Defendant RP Logistics is the alter ego of Defendant RPI because RPI dominates and disregards RP Logistics' corporate form to the extent that RPI is actually carrying on the business and operations of RP Logistics as if the same were its own.
> 14. Upon information and belief, Defendant RPI acts as paying agent, or receiving agent, or arranges for other non-parties to satisfy the debts and obligations of Defendant RP Logistics, and/or receive payments being made to Defendant RP Logistics.
> 15. Upon information and belief, Defendant RPI uses Defendant RP Logistics as its " chartering arm"  or as a " pass through"  entity such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters.
> 16. It is not common practice in the maritime industry for an independent company to pay another company's debt, where it has no formal relationship to the underlying charter party.
> 17. RP Logistics is one of several companies which are operated, controlled and managed as a single economic enterprise known as the "R. PIYARELALL    GROUP."
> 18. Defendant RP Logistics does not maintain a separate identity, but rather is controlled by the R. PIYARELALL GROUP.
> 19. The R. PIYARELALL GROUP includes both Defendants identified in the Complaint, RP Logistics and RPI, and is ultimately controlled by the Agarwal Family.
> 20. The organizational hierarchy of the R. PIYARELALL GROUP is headed by Mr. Ramesh Kumar Agarwal, son of Late Shri Piyarelall Agarwal, who is assisted by his two younger brothers Mr.Suresh Kumar and Mr.Naresh Kumar Agarwal in carrying out the family business.
> 21. Siddharth, Varun and Karan Agarwal also act as representatives of the R. PIYARELALL GROUP.
> 22. From common offices located at " REGENT HOUSE" , 12, Govt. Place (East), Calcutta - 700 069. India, the R. PIYARELALL GROUP operates a manufacturing, purchasing, sale and transportation network which includes the transport and delivery of numerous goods.
> 23. Upon information and belief, among the entities which comprise the R. PIYARELALL GROUP, there is a commonality of control and management centered

with Mr. Ramesh Kumar Agarwal, and an overlap of officers, directors and employees.
24. Among the entities which comprise the R. PIYARELALL GROUP, which includes the Defendants named in this Complaint, there has been no attention or inadequate attention to corporate formality.
25. Among the entities which comprise the R. PIYARELALL GROUP, which includes the Defendants named in this Complaint, there is lack of arms' length dealing among the corporations and contract ostensibly entered in the name of one are undertaken, performed, or indemnified by others in the R. PIYARELALL GROUP.
26. Based on the foregoing, as well as other activities, the entities which comprise the R. PIYARELALL GROUP, including the Defendants RP Logistics and RPI, should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the others and the R. PIYARELALL GROUP, and all assets of the R. PIYARELALL GROUP susceptible to attachment and/or restraint for the debts of any and/or any number of the individual entities which make up the R. PIYARELALL GROUP, including but not limited to the debts of Defendant RP Logistics.
27. By virtue of the foregoing, the companies which comprise the R. PIYARELALL GROUP, including Defendant RPI, are properly considered parties to the subject contract as the alter egos and/or prime movers and controllers of Defendant RP Logistics.
28. In the further alternative, Defendants are partners and/or are joint venturers.
29. In the further alternative, Defendants are affiliated companies such that Defendant RPI is now, or will soon be, holding assets belonging to Defendant RP Logistics and vice versa.

*See* Verified Complaint, ¶¶11-29 at Defendants' Exhibit "1."

As shown above, Plaintiff has not only alleged the basis of its alter-ego claim, i.e. domination and control, but it has set forth facts upon which its claim is based.  In *Route Holding, supra,* Judge Castel found that allegations with less detail than those listed above satisfy the plaintiff's burden to allege a claim sufficient to withstand a challenge such as the one Defendants make here.  *See* Transcript of *Route Holding* annexed hereto as Exhibit "B," at 12, lines 15-24.

Plaintiff has more than sufficiently alleged a valid prima facie alter-ego relationship between  RPL and RPI, thus a valid maritime claim for wrongful exists against both Defendants. In addition to the pleadings, Plaintiff has provided copious extrinsic evidence in the accompanying Cohen Decl. to support its alter-ego allegations, despite the fact that it was not

required to provide such proof at this early stage of the case.

       iv.    <u>RPL is merely a shell corporation through which RPI conducts business</u>.

    Plaintiff has submitted sufficient evidence to show probable cause that RPI is the alter-ego of RPL. RPL is a paper company used by RPI to charter ships such as the motor vessel M/V IKAL. *See* Cohen Decl., *¶52.* By chartering ships through a shell or pass through corporation (RPL), RPI and the R. Piyarelall Group can effectively insulate themselves from liability. Even without the benefit of discovery, numerous facts have come to light showing that RPI's and RPL's are one in the same.

    Despite Defendants' statements to the contrary, RPL and RPI's own letterhead show that both entities have the exact same address, i.e. 1st Floor, 12 Government Place (East), Kolkata 700069, West Bengal, India. *See* letter head from RPL and RPI annexed to Cohen Decl. as Exhibits "14" and "15" respectively. In addition, RPL and RPI use the same phone number: 91 033-2220-5907/2682. *See* Exhibit "14" and Business Information Report on RPI annexed to Cohen Decl. as Exhibit "16". RPL and RPI also have an identical CABLE identifier; RAGHUPIYAR. *See* Exhibits "14" and "15." Uniformity of location and contact information are highly compelling evidence of corporate domination. RPL and RPI reside at the same office and use the same phone. The execution of contracts and sending of letters between RPL and RPI is all the more suspect given that these companies reside at the exact same location.

    Furthermore, investigative reports indicate that RPL and RPI have overlapping directors. Moreover, the overlapping directors together hold the voting majority at each respective corporation. Notably, the head of the R. Piyarelall Group, Mr. Ramesh Agarwal, is a director of RPI and RPL. *See* Business Reports of RPI and RPL annexed to Cohen Decl. as Exhibits "16" and "17" respectively. In addition, RPL and RPI share Mr. Siddharth Agarwal as a director. *See*

Exhibits "16" and "17."

The Defendants have stated that they only have one director in common; Mr. Varun Agarwal. *See* Affidavit of Owen Duffy ¶26. However, according to the documents submitted with the Cohen Decl. and *Defendants' own Exhibits,* it is clear that Siddarth Agarwal is a director at both RPL and RPI. *See* Defendants' Exhibits "10" and "15." The 2005 tax returns of RPL and *RPI were each signed and submitted by Mr. Siddarth Agarwal, who attests to the fact that he is the director of both RPL and RPI. See* Defendants' Exhibits "10" and "15." In light of this patent contradiction between Defendants' statements and their submitted documents, Plaintiff submits that Defendants' "evidence" of corporate separateness at this point in the proceeding should be given little or no weight. Further, the remaining director in RPL, Varun Agarwal, and in RPI, Mr. Suresh Agarwal, are clearly both members of the Agarwal family.

The Agarwal family dominates the directorships of RPI, RPL and numerous other companies in the "R. Piyarelall Group." The organizational hierarchy of the "R. Piyrelall Group" as a whole is headed by Mr. Ramesh Kumar Agarwal, son of late Shri Piyarelall Agarwal, who is assisted by his two younger brothers Mr. Suresh Kumar and Mr. Naresh Kumar Agarwal in carrying out the family business. Siddharth, Varun and Karan Agarwal also act as representatives of the "R. Piyrelall Group."

The alter-ego relationship between RPL and RPI is further evidenced by RPL's charter of the motor vessel "EPIC." Pursuant to a charter party dated July 14, 2005 a company entitled Epic Navigation Company Ltd. chartered the motor vessel "EPIC" to RPL. *See* Epic-RPL charter party annexed to Cohen Decl as Exhibit "18." Despite the fact that RPL was the only named charterer, communications regarding the charter often originated from the "R. Piyarelall Group." *See* e-mail communications originating from the R. Piyarellall Group annexed to Cohen

decl. as as Exhibit "19."

Communications dealing with Defendant RPL's possible shortages under the "EPIC" charter party were sent and replied to by Siddharth Agarwal in numerous different guises and labels; the "R. Piyarelall Group,"the Defendant RPL and/or an entity named R. Piyarelall Import and Export. Furthermore, in these communications Siddarth Agarwal used the e-mail address for RPL, *cal @rpiyarelall.com,* and RPI, *cal@rpiyarelallgroup.com* interchangeably. *See* E-mail communications originating from the "R. Piyarelall Group" annexed to Cohen Decl. as Exhibit "18".

In fact, in the instant matter, where RPL is purportedly sending a letter to RPI requesting it to pay amounts due under the charter, RPL's contact information has transformed into the exact information provided by RPI's letter head. *Compare* Defendants' Exhibit 17 *with* Exhibit "15" annexed to the Cohen Decl. It is ironic that a letter supposedly evidencing the arms-lengths transactions between RPL and RPI is coming from and going to *the exact same address, phone number, and facsimile number.*

RPI has made freight payments directly to OGI despite the fact that it was not named in the charter party contract. *See* wire remittance details for RPL freight payment paid by RPI annexed hereto as Exhibit "19" and wire remittance details for RPI's $45, 000.00 payment to OGI annexed hereto as Exhibit "20." RPL claims that RPI is merely its broker. However, RPL and RPI's self-serving statements in this regard are too trite and convenient to be accepted at face value. RPL does not even allege that RPI has compensated it for its services. *See* Declaration of Owen Duffy 45. Defendants' merely allege that RPL was to obtain a brokerage commission. However, RPI has put forth no evidence of compensation or payment. It is clear from the above that RPL and RPL do not enter into arms lengths transactions. These two companies are one in

the same.  With the benefit of discovery, Plaintiff will easily establish the alter ego relationship between these companies, which is obvious even on the evidence Plaintiff has collected so far.

RPL's "broker" excuse does not hold water.  It is clear that RPL serves as RPI's chartering arm.  China National Minerals, the cargo buyer and part of the tripartite settlement agreement with Oceangate and Defendants, even indicated that RPI was the true charterer of the Vessel in its application to the Chinese courts.  *See* Exhibit 10 annexed to the Cohen Decl.  The payments RPI made on RPL's behalf are not only evidence that RPL and RPI do not maintain separate identities and commingle funds, but it also can be inferred from the payments that RPI is attempting to defraud RPL's creditors, including the Plaintiff.  Up to this point, RPI was able to effectively insulate itself from liability under ship charters by utilizing an undercapitalized entity as its chartering "tool" (in this case, RPL).  No doubt, RPI and the "R. Piyarelall Group" have successfully avoided liability for charter party breaches in this way before.  Now that the connections between the two Defendants (and the "R. Piyarelall Group" as whole) have been revealed, RPI should be held liable for RPL's debts to the same degree as RPL itself.  From this evidence alone, there are reasonable grounds/probable cause to find that RPL and RPI are alter-egos.  Accordingly, the attachment should be upheld.

## II.    THE LIMITED CIRCUMSTANCES FOR VACATING AN ATTACHMENT ENUNCIATED IN *AQUA STOLI* HAVE NO APPLICATION TO THIS LITIGATION.

Originating in a court's equitable discretion, once a plaintiff satisfies its initial burden at a Rule E(4) post-attachment hearing, the "attachment *may* be vacated only in certain limited circumstances."  *Aqua Stoli*, at 444 (emphasis added).  These limited circumstances wherein an attachment may be vacated are as follows:  (1) the defendant is subject to suit in an  adjacent jurisdiction convenient to the plaintiff; (2) the plaintiff could obtain *in personam* jurisdiction

over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already

obtained sufficient security for the potential judgment, by attachment or otherwise.  *Id*. at 445.

"[V]acatur may be warranted when the defendant can show that it would be subject to *in

personam* jurisdiction in another jurisdiction convenient to the plaintiff."  *Id*. at 444 (emphasis

added) (citing *Integrated,* 476 F.Supp. at 124; *cf. Det Bergenske Dampskibsselskab v. Sabre

Shipping Corp.,* 341 F.2d 50, 52-53 (2d Cir.1965) (discussing, but not resting on, the district

court's vacatur of an attachment issued in the Eastern District because the defendant was present

in the Southern District)).  The Defendants in the instant litigation are not subject to suit in an

adjacent jurisdiction that is convenient to Plaintiff.  Plaintiff is a company registered and

operating out of Singapore.  Defendants are companies registered and operating out of India.

Plaintiff has not previously appeared in the courts of India, and the courts of India do not have

personal jurisdiction over Plaintiff.  Contrary to Defendants' assertions, Unithai Maritime Ltd.

did not appear in the litigation allegedly still pending in India; rather, Unithai Maritime Ltd.'s

parent company, Unithai Line Public Co. Ltd. (a Thai company), made a special appearance in

the High Court of Calcutta without submitting to that court's jurisdiction.  *See* Affidavit of

Owen Duffy, at ¶¶ 40-45.  Indeed, as explained by the *Aqua Stoli* Court:

> The concept of "convenience," however, is a narrowly circumscribed one: A district court
> may vacate a maritime attachment only if the defendant would be subject to an *in
> personam* lawsuit in a jurisdiction adjacent to the one in which the attachment
> proceedings were brought.  An "across the river" case where, for example, assets are
> attached in the Eastern District but the defendant is located in the Southern District is a
> paradigmatic example of a case where an attachment should be vacated.  It is less clear to
> us that a district court could vacate an attachment on convenience grounds where the
> adjacent district is more remote and therefore less obviously "convenient" to the plaintiff.

*Id*. at 444. Here, while it may be more convenient for Defendants for the underlying litigation to take place in India, where both Defendants are headquartered, that jurisdiction is certainly inconvenient, remote, and prejudicial to the Plaintiff's claims herein.

"A maritime attachment would likewise be properly vacated if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets." *Id*. at 444-445. This is not the situation in the case at bar. The instant litigation is not a situation "where an attachment is obtained unfairly in one district where a proper lawsuit could be commenced in another district without unfairness or inconvenience." *Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119, 124 (D.C.N.Y. 1979) (citing *D/S A/S Flint v. Sabre Shipping Corp.*, 228 F.Supp. 384 (E.D.N.Y.1964), aff'd on other grounds sub nom. *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965). Plaintiff is not present in India and is not subject to the jurisdiction of the courts of India. Conversely, Defendants are not present and presumably not subject to the jurisdiction of the court of Singapore. In this situation, the Plaintiff exercised its prerogative in choosing a forum where assets of the Defendants could be located, the Plaintiff is willing to submit to the Court's jurisdiction, and it would be convenient for Plaintiff to litigate. As was stated in *Integrated Container Service*:

> There can be no doubt that plaintiffs' need for security is real, that their quest for attachment is not a tactic of harassment. A finding of jurisdictional presence based solely on defendants' prior activity, when used to justify the assertion of in personam jurisdiction, is designed to prevent foreign defendants who have used the facilities of the state from escaping judicial reckoning by withdrawing beyond its borders. There is some anomaly in the use of this rule to defeat a claimant's opportunity to secure a more meaningful judgment.

476 F.Supp. at 124.

"Vacatur is also proper if the defendant's assets sufficient to satisfy a judgment have already been secured elsewhere, yet plaintiff seeks a further attachment." *Id*. at 445. The Plaintiff has not secured any of Defendants' assets elsewhere, thus the Plaintiff is not seeking a further attachment of assets. Indeed, the Plaintiff is unaware of any assets of Defendants located in Singapore.

### III. JUDGE SWEET'S DECISION IN *OGI OCEANGATE TRANSP. CO. LTD. V. RP LOGISTICS PVT. LTD.* IS INAPPOSITE TO THE CASE AT BAR.

In *Oceangate Transp. Co. Ltd. v. RP Logistics PVT. LTD. and R. Piyarelall International PVT. LTD*., the dispute "engaged courts in China and India relating to a charter party which has a provision for mandatory Hong Kong arbitration." 2007 WL 1834711, *1 (S.D.N.Y. 2007). Moreover, in *Oceangate* Judge Sweet vacated the attachment of ETF funds because Oceangate failed to meet its burden of establishing "a valid prima facie admiralty claim against RPI." *Id*. at *4. Oceangate proceeded in that suit on two alternate theories of maritime claims: (1) breach of charter party between Oceangate and RPL, *id*. at *5; and (2) wrongful arrest of the M/V UTHAI NAVEE, *id*. at 5-6.

Judge Sweet found that Oceangate did not have "a valid prima facie claim for breach of the charter party" between itself and RPL because:

> Any claim for breach of the charter party regarding dead freight, demurrage and detention at load and discharge ports appears to have been satisfied vy the payment made to [Oceangate] under the tripartite agreement. [Oceangate] has accepted that payment, and does not dispute the validity of the agreement. Therefore, [Oceangate] does not have a valid prima facie claim for breach of the charter party.

*Id*. at *5. In the matter under consideration herein, there is no contractual relationship, charter or otherwise, between Plaintiff and RPL and/or RPI, much less a contractual relationship that includes a mandatory arbitration provision.

With respect to Oceangate's claim for wrongful arrest against RPI, Judge Sweet stated the following:

> Without an understanding of the applicable law, the Court is unable to determine whether [Oceangate] has a valid prima facie claim of wrongful arrest. Since [Oceangate] has the burden of affirmatively showing that it has such a claim taking the strictest approach to this analysis and without more information, [Oceangate] has failed to meet its burden with respect to this claim for wrongful arrest.

*Id.* at 6. In the matter under consideration herein, however, Plaintiff has provided this Court with the applicable law of both the United States and India. *See* Declaration of Amit Basu annexed to Cohen Decl. as Exhibit 21; Report of the United Nations/International Maritime Organization Diplomatic Conference on Arrest of Ships annexed to Cohen Decl. as exhibit 22 at 8-17. Regardless of whether a choice of law analysis leads to the conclusion that United States or Indian law applies, both jurisdictions apply a similar bad faith and/or gross negligence analysis. *See* Section II(b), *supra*; Declaration of Amit Basu annexed to Cohen Decl. as Exhibit 21. In both jurisdictions, the actions of RPL and RPI in arresting the M/V UTHAI NAVEE rise to the level of bad faith and/or gross negligence such that a prima facie claim for wrongful arrest has been sufficiently pled to meet Plaintiff's burden.

Judge Sweet went on to state, in dicta, that "[e]ven if [Oceangate] were to have a valid prima facie claim against RPL for breach of the charter party sufficient to sustain the attachment, *the receipt of $45,000 in satisfaction of the tripartite agreement* [between Oceangate, RPL, and China Minerals] *militates in favor of vacatur*." *Id.* (emphasis added). In the matter under consideration herein, the only form of security Plaintiff has for its pending claim are the ETF funds attached in the Southern District of New York; unlike Oceangate, which had both the ETF funds and also $45,000.00 in security resulting from an agreement with the adverse parties, there is no other form of security for Plaintiff's claim for wrongful arrest against RPL and RPI other

than those funds currently under attachment by Order of this Court.

## CONCLUSION

In conclusion, Plaintiff has shown by way of its Verified Complaint, this Memorandum, and the accompanying Cohen Decl. that it has a valid prima facie maritime claim against RPL for wrongful arrest and that RPI is the alter-ego of RPL such that RPI is liable for RPL's debts to Plaintiff.   Also, RPI concedes that it is not present in the District and acknowledges that its property in the form of an EFT was attached in the District.  Defendants' Memorandum of Law, at 5; *see Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).  Additionally, Defendants have failed to cite any statutory or maritime law bar to the attachment.  As such, this Court's issuance of the maritime attachment pursuant to Rule B was proper.  Defendants' insistence that the Plaintiff must prove its entire alter-ego case at the emergency post-attachment Rule E(4)(f) hearing is based entirely on outdated case law and is in disregard of the purpose of the emergency Rule E(4)(f) hearing.  Based on all the foregoing, this case should be allowed to proceed in the normal course, with the attachment remaining in place.

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Court deny Defendants' Motion to Vacate in all respects and grant such other and further relief as the Court deems necessary and appropriate.

Dated: July 23, 2007

Respectfully Submitted,

/S/ Lawrence G. Cohen
Lawrence G. Cohen (NY Bar No. LC3226)
VANDEVENTER BLACK LLP
500 World Trade Center
Norfolk, VA  23510
Telephone:  (757) 446-8600
Facsimile:  (757) 446-8670
Ethan G. Ostroff (Of Counsel)
Attorneys for Unithai Maritime Limited

## <u>CERTIFICATE OF SERVICE BY ECF</u>

The undersigned declares under penalty of perjury that the following is true and correct:

1.    I am over the age of eighteen years and I am not a party to this action.

2.    On July 23, 2007, I served a complete copy of Unithai Maritime Ltd.'s

Memorandum of Law in Opposition to Motion to Vacate Maritime Attachment to

the following attorneys by ECF at their ECF registered addresses:

CHALOS O'CONNOR & DUFFY, LLP
366 MAIN STREET
PORT WASHINGTON, NEW YORK 11050

By: <u>/S/ Lawrence G. Cohen</u>
Lawrence G. Cohen

Dated:      July 23, 2007
            Norfolk, Virginia