# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

TIDE LINE, INC.,

                    Plaintiff,

                                          06 CV 1979 (KMW)
                                               ORDER

          -against-

EASTRADE COMMODITIES, INC., and
TRANSCLEAR, S.A.,

                    Defendants.
------------------------------------x

WOOD, U.S.D.J.:

I. Overview

     Defendant Transclear, S.A. ("Transclear") moves to vacate
this Court's March 14, 2006, Ex Parte Order for Process of
Maritime Attachment, as to Transclear only.  For the reasons
given below, the Court grants Defendant Transclear, S.A.'s motion
to vacate this Court's March 14, 2006, Ex Parte Order for Process
of Maritime Attachment, as to Transclear only, grants Tide Line's
request for leave to file an Amended Verified Complaint with a
new request for an Attachment Order so long as no objections are
filed by August 23, 2006, directs that Tide Line file the Amended
Verified Complaint with a new request for an Attachment Order by
August 25, 2006, and stays the release of the attached funds
pending the issuance of a new Attachment Order in connection with
the Amended Verified Complaint and the serving of a new writ of

                              1

attachment on the bank, so long as the writ of attachment is
served by August 30, 2006.[1]

## II. Background

On March 14, 2006, Tide Line Inc. ("Tide Line") filed a
Verified Complaint (the "Complaint"), against Eastrade
Commodities Inc. ("Eastrade Inc.") and Transclear, seeking an ex
parte order for process of maritime attachment and garnishment
pursuant to Rule B of the Supplemental Rules for Certain
Admiralty and Maritime Claims of the Federal Rules of Civil
Procedure ("Supplemental Rule B") and to the Federal Arbitration
Act (originally the United States Arbitration Act), 9 U.S.C. §§ 1
and 8.   The Complaint alleges that: 1) Tide Line, "a foreign
company duly organized and operating under the laws of Greece,"
Compl. ¶ 2, chartered a vessel it owns, the M/V "Levantes A" (the
"Vessel"), to Eastrade Inc., which is, upon information and
belief, "a foreign corporation, or other business entity,
organized under, and existing by virtue of foreign law, with
principal place of business in Panama," Compl. ¶ 5; 2) disputes
arose during the course of the charter party contract; 3)

---

[1] Transclear has also filed an Answer and Counterclaims against
Tide Line Inc. ("Tide Line"), seeking damages for the attachment;
Tide Line has moved to dismiss those counterclaims.   Transclear's
counterclaims and Tide Line's motion to dismiss those
counterclaims will be addressed in a separate order.

Eastrade Inc. breached the contract, resulting in damages to Tide
Line for a total sum of $193,198.15; and 4) Tide Line was
therefore preparing to initiate arbitration proceedings against
Eastrade Inc. (but not Transclear) in London, and expected to
recover a total sum of $292,636.28 (including the principal
claim, interest, attorneys' fees and costs, and arbitration
costs).  The Complaint also alleges, upon information and belief,
that Transclear "was, and still is, a foreign corporation, or
other business entity, organized under, and existing by virtue of
foreign law, with principal place of business in Nyon,
Switzerland," Compl. ¶ 4, and that: "Upon information and belief,
Defendant Transclear acts as paying agent, or arranges for other
non-parties to satisfy the debts and obligations of Defendant
Eastrade," Compl. ¶ 13.  This is the only allegation in the
Complaint as to Transclear's alleged involvement in the matter.
Finally, the Complaint alleges that defendants Eastrade Inc. and
Transclear cannot be found within this District within the
meaning of Supplemental Rule B but have assets within the
district.

On March 14, 2006, based on the Verified Complaint, and the
Affidavit in Support of Prayer for Maritime Attachment of Thomas
L. Tisdale, Tide Line's counsel ("Tisdale Aff."), and pursuant to
Supplemental Rule B, the Court granted Tide Line an Ex Parte

3

Order for Process of Maritime Attachment ("Ex Parte Attachment Order") against the defendants, for the amount of damages stated in the Verified Complaint.  On March 22, 2006, Tide Line, pursuant to the Ex Parte Attachment Order, attached the sum of $270,000, belonging to Transclear, at Citibank.  See Letter from Thomas L. Tisdale to Transclear S.A. (Mar. 22, 2006), attached as Ex. A to Affidavit of Service, which is attached as Ex. 1 to Tide Line's Proof of Service, dated May 11, 2006.  An exchange of correspondence between counsel for Tide Line and Transclear followed; ultimately, Tide Line did not release the attachment.

On June 22, 2006, Transclear moved to vacate the Ex Parte Attachment Order as to Transclear.  Judge William H. Pauley III, sitting in Part I, signed an Order to Show Cause, ordering Tide Line to show cause why an order should not be issued, pursuant to Rules B and E of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, vacating this Court's March 14, 2006, Ex Parte Attachment Order as to Transclear, and setting an inquest for assessment of damages against Tide Line for attaching and failing to voluntarily release funds belonging to Transclear.[2]  A hearing as to

---

[2] In addition to moving to have the Ex Parte Attachment Order vacated as to it, Transclear filed an Answer and Counterclaims (for "wrongful attachment and abuse of process related to the attachment" and "wrongful attachment and abuse of process related to Plaintiff's refusal to release the funds that are the subject

4

Transclear's motion to vacate was held on July 14, 2006.[3]

## III. Discussion

### A.   Legal Standard

Supplemental Rule B provides, in relevant part:

> If a defendant is not found within the
> district . . ., a verified complaint may
> contain a prayer for process to attach the
> defendant's tangible or intangible personal
> property -- up to the amount sued for -- in
> the hands of garnishees named in the process.
> The plaintiff or the plaintiff's attorney
> must sign and file with the complaint an

of the attachment"), seeking damages against Tide Line, and
requesting that Tide Line post counter-security in the amount of
$2 million, pursuant to Rule E(7)(a) of the Supplemental Rules
for Certain Admiralty and Maritime Claims of the Federal Rules of
Civil Procedure.  See Defendant Transclear, S.A.'s Answer and
Counterclaims ("Answer and Countercl.").  Tide Line has filed
Cross-Motion to Dismiss Counterclaims.  Transclear's
counterclaims, and Tide Line's motion to dismiss them, will be
addressed in a separate order.

[3] Under Rule E(4)(f) of the Supplemental Rules for Certain
Admiralty and Maritime Claims ("Supplemental Rule E(4)(f)"),
"[w]henever property is arrested or attached, any person claiming
an interest in it shall be entitled to a prompt hearing at which
the plaintiff shall be required to show why the arrest or
attachment should not be vacated or other relief granted
consistent with these rules."  According to this Court's Local
Rules, "[t]he adversary hearing following arrest or attachment or
garnishment that is called for in Supplemental Rule E(4)(f) shall
be conducted by a judicial officer within three court days,
unless otherwise ordered."  Local Admiralty Rule E.1.  In this
case, Judge William H. Pauley III, sitting in Part I, signed the
Order to Show Cause, setting the date of the hearing for July 11,
2006.  As explained in this Court's Order dated July 11, 2006,
the Court adjourned the hearing for further submissions to be
made.

5

> affidavit stating that, to the affiant's
> knowledge, or on information and belief, the
> defendant cannot be found within the
> district.  The court must review the
> complaint and affidavit and, if the
> conditions of this Rule B appear to exist,
> enter an order so stating and authorizing
> process of attachment and garnishment.  The
> clerk may issue supplemental process
> enforcing the court's order upon application
> without further court order.

Fed. R. Civ. P. Supp. Rule B(1).  As recently summarized by the

Court of Appeals for the Second Circuit:

> To begin the process, a plaintiff must file a
> verified complaint praying for an attachment
> and an affidavit stating that, to the best of
> the plaintiff's knowledge, the defendant
> cannot be found within the judicial district.
> [Fed.R.Civ.P. Supp. Rule B(1).]  If the
> plaintiff's filings comply with these
> conditions, the court must enter an order
> authorizing the attachment, which the
> plaintiff may then serve on any persons in
> possession of the defendant's property
> located within the district.  The order of
> attachment may be requested and granted ex
> parte, though notice of the attachment to the
> defendant via appropriate service is
> required.  Id. Supp. Rules B(2), E(3).

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., No. 05 Civ.

5385, 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *8-

*9 (2d Cir. July 31, 2006).  See also Fed. R. Civ. P. Supp. R. B

advisory committee's note to 1985 Amendment ("[Supplemental Rule

B(1)] envisions that the order will issue when the plaintiff

makes a prima facie showing that he has a maritime claim against

the defendant in the amount sued for and the defendant is not

6

present in the district."). "The power to grant attachments in
admiralty is an inherent component of the admiralty jurisdiction
given to the federal courts under Article III of the
Constitution," and its "historical purpose has been two-fold:
first, to gain jurisdiction over an absent defendant; and second,
to assure satisfaction of a judgment." Aqua Stoli Shipping Ltd.,
2006 WL 2129336, at *2, 2006 U.S. App. LEXIS 19302, at *6-*7.
Accord Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 268 (2d
Cir. 2002).

Furthermore, "[w]henever property is arrested or attached,
any person claiming an interest in it shall be entitled to a
prompt hearing at which the plaintiff shall be required to show
why the arrest or attachment should not be vacated or other
relief granted consistent with these rules." Rule E(4)(f) of the
Supplemental Rules for Certain Admiralty and Maritime Claims of
the Federal Rules of Civil Procedure ("Supplemental Rule
E(4)(f)"). The Court of Appeals for the Second Circuit has
recently, for the first time,[4] spoken "directly on the showing
necessary to vacate a maritime attachment under Rule E," Aqua
Stoli Shipping Ltd., 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS

---

[4] Because the Court of Appeals' Aqua Stoli decision was issued on
July 31, 2006, and this Court asked the parties for some further
short letter briefs on a specific point in light of Aqua Stoli,
this Court's issuance of an order in this action was accordingly
delayed.

7

19302, at *12 – holding that "once a plaintiff has carried his
burden to show that his attachment satisfies the requirements of
Supplemental Rule B, a district court may vacate an attachment
only upon [certain] circumstances," which "can occur where 1) the
defendant is present in a convenient adjacent jurisdiction; 2)
the defendant is present in the district where the plaintiff is
located; or 3) the plaintiff has already obtained sufficient
security for a judgment," id., 2006 WL 2129336, at *1, 2006 U.S.
App. LEXIS 19302, at *2-*3.[5]  The Court of Appeals stated, at
greater length:

> We therefore hold that, in addition to having
> to meet the filing and service requirements
> of Rules B and E, an attachment should issue
> if the plaintiff shows that 1) it has a valid
> prima facie admiralty claim against the
> defendant; 2) the defendant cannot be found
> within the district; 3) the defendant's
> property may be found within the district;
> and 4) there is no statutory or maritime law
> bar to the attachment.  Conversely, a
> district court must vacate an attachment if
> the plaintiff fails to sustain his burden of
> showing that he has satisfied the
> requirements of Rules B and E.  We also
> believe vacatur is appropriate in other
> limited circumstances.  While, as we have

---

[5] "Rule E(4)(f) clearly places the burden on the plaintiff to
show that an attachment was properly ordered and complied with
the requirements of Rules B and E."  Aqua Stoli Shipping Ltd.,
2006 WL 2129336, at *11 n.5, 2006 U.S. App. LEXIS 19302, at *30
n.5.  However, the Court of Appeals believes that, under these
Supplemental Rules, defendant bears the burden of "establish[ing]
any equitable grounds for vacatur."  Id.

> noted, the exact scope of a district court's
> vacatur power is not before us, we believe
> that a district court may vacate the
> attachment if the defendant shows at the Rule
> E hearing that 1) the defendant is subject to
> suit in a convenient adjacent jurisdiction;
> 2) the plaintiff could obtain in personam
> jurisdiction over the defendant in the
> district where the plaintiff is located; or
> 3) the plaintiff has already obtained
> sufficient security for the potential
> judgment, by attachment or otherwise.

Id., 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28-
*29 (footnotes omitted). The Court emphasized that "Rule B
specifies the sum total of what must be shown for a valid
maritime attachment." Id., 2006 WL 2129336, at *11, 2006 U.S.
App. LEXIS 19302, at *35.

In so holding, the Court of Appeals "reject[ed] the
reasoning of the more recent district court decisions that have
engaged in a broader Rule E(4)(f) inquiry," id., 2006 WL 2129336,
at *10, 2006 U.S. App. LEXIS 19302, at *30 -- including those
that adopted "a needs test, requiring the plaintiff to show that,
even if the defendant cannot be found within the district, the
attachment is necessary to obtain jurisdiction over a defendant
or to secure a potential judgment," id., 2006 WL 2129336, at *10
& n.8, 2006 U.S. App. LEXIS 19302, at *32 & n.8 (citing Ullises
Shipping Corp. v. FAL Shipping Co., 415 F. Supp. 2d 318 (S.D.N.Y.
2006); T & O Shipping, Ltd. v. Lydia Mar Shipping Co., 415 F.
Supp. 2d 310 (S.D.N.Y. 2006); Erne Shipping Inc. v. HBC Hamburg

9

Bulk Carriers GmbH & Co., 409 F. Supp. 2d 427 (S.D.N.Y. 2006);

Seaplus Line Co. Ltd. v. Bulkhandling Handymax, 409 F. Supp. 2d

316, 319-20 (S.D.N.Y. 2005); Allied Mar., Inc. v. Rice Corp., No.

04 Civ. 7029, 2004 WL 2284389, 2004 U.S. Dist. LEXIS 20353

(S.D.N.Y. Oct. 12, 2004)).[6]  The Court "also reject[ed] the

approach taken by the district court in Royal Swan Navigation Co.

v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y.

1994)," which "would impose a fact-intensive inquiry into the

substantiality and nature of a defendant's presence in an

adjacent district before deciding whether an attachment should be

vacated."  Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *11,

2006 U.S. App. LEXIS 19302, at *34-*35.

    The Court of Appeals' holding and rationale in Aqua Stoli

Shipping Ltd. also strongly undermine the standard, stated in a

number of cases, that the hearing pursuant to Supplemental Rule

E(4)(f) is intended to "'make a preliminary determination whether

there were reasonable grounds for issuing the warrant,'" Ullises

---

[6] In vacating the judgment of the district court below, the Court
of Appeals also rejected what it characterized as the "needs-
plus-balancing test," Aqua Stoli Shipping Ltd., 2006 WL 2129336,
at *4, 2006 U.S. App. LEXIS 19302, at *10, adopted by the
district court, under which, even if the plaintiff meets its
burden of showing a need for the attachment, a court may vacate
the attachment if the defendant shows that "the hardship the
attachment order imposes on it or others substantially outweighs
any benefit to the plaintiff," Aqua Stoli Shipping Ltd. v.
Gardner Smith Pty Ltd., 384 F. Supp. 2d 726, 729 (S.D.N.Y. 2005).

Shipping Corp., 415 F. Supp. 2d at 322 & n.37 (quoting Salazar v. Atlantic Sun, 881 F.2d 73, 79-80 (3d Cir. 1989)), or the attachment, see Ullises Shipping Corp., 415 F. Supp. 2d at 323 n.37 (noting that "[t]he standard applies to post-attachment cases as well as post-arrest cases"). "This standard has been defined as 'probable cause' or 'reasonable grounds.'" Id. at 323 n.37 (quoting Linea Navira De Cabotaje, C.A. v. Mar Caribe De Navegacion, C.A., 169 F. Supp. 2d 1341, 1359 (M.D. Fla. 2001)). Under this standard, in order to justify the maintenance of an attachment under Supplemental Rule E(4)(f), a plaintiff bears a higher burden than that imposed by Supplemental Rule B: as a decision adopting this standard states, "although a minimal prima facie showing is sufficient to justify an attachment under Rule B, under Rule E(4)(f), [plaintiff] has the burden of presenting some evidence showing reasonable grounds for the attachment." Id. at 325. Although Aqua Stoli does not explicitly address this "probable cause" or "reasonable grounds" standard, the decision's emphasis that "Rule B specifies the sum total of what must be shown for a valid maritime attachment," id., 2006 WL 2129336, at *11, 2006 U.S. App. LEXIS 19302, at *35 -- including a "valid prima facie admiralty claim against the defendant," id., 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28 -- implies that the "probable cause" or "reasonable grounds" standard is

11

improper insofar as it purports to go beyond this limited inquiry.

For a plaintiff to show that "it has a valid prima facie admiralty claim against the defendant," id., 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28, in the context of maritime attachment, it appears that a plaintiff need not provide anything beyond its Verified Complaint, pursuant to Supplemental Rules B and E. A court relies only on a plaintiff's complaint to determine if the plaintiff has shown that it has such a claim against the defendant (and on a plaintiff's affidavit to determine whether it appears that the defendant cannot be found within the district). See Fed. R. Civ. P. Supp. Rule B(1) ("The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment."); see also Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *3, 2006 U.S. App. LEXIS 19302, at *8-*9 ("a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district" and "[i]f the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment"). Thus, to show that it has a prima facie claim, a plaintiff seeking a maritime

12

attachment need not provide any supporting evidence; its

complaint should suffice.[7]   Furthermore, Aqua Stoli implies that

a plaintiff is likewise not required to provide evidence showing

that it has a claim against defendant, to carry its burden under

Supplemental Rule E(4)(f).   See Aqua Stoli Shipping Ltd., 2006 WL

2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 (holding that

"once a plaintiff has carried his burden to show that his

attachment satisfies the requirements of Supplemental Rule B, a

district court may vacate an attachment only upon [certain]

circumstances," which are very limited, as discussed above).

   But the reverse issue is less clear: when a defendant seeks

---

[7] In this sense, the use of the phrase "prima facie claim," in
the maritime attachment context, differs from the use of that
phrase in other contexts, where it implies an evidentiary
standard, see, e.g., Pittston Coal Group v. Sebben, 488 U.S. 105,
117 (1988); Zuckerbraun v. General Dynamics Corp., 935 F.2d 544,
547 (2d Cir. 1991)  - particularly, the context of employment
discrimination claims, see Swierkiewicz v. Sorema N. A., 534 U.S.
506, 510 (2002) ("The prima facie case [of employment
discrimination] under McDonnell Douglas [Corp. v. Green, 411 U.S.
792 (1973)], however, is an evidentiary standard, not a pleading
requirement.") (The phrase "prima facie case" – which "not only
may denote the establishment of a legally mandatory, rebuttable
presumption, but also may be used by courts to describe the
plaintiff's burden of producing enough evidence to permit the
trier of fact to infer the fact at issue," Texas Dept. of
Community Affairs v. Burdine,  450 U.S. 248, 254 (1981) – is
sometimes used interchangeably with "prima facie claim."  See,
e.g., Furnco Const. Corp. v. Waters, 438 U.S. 567, 575 (1978);
Guo v. U.S. Dept. of Justice, 422 F.3d 61, 64 (2d Cir. 2005);
Tsombanidis v. West Haven Fire Dept., 352 F.3d 565, 575 (2d Cir.
2003); Mitchell v. Washingtonville Cent. School Dist., 190 F.3d
1, 6 (2d Cir. 1999); Chere Amie, Inc. v. Windstar Apparel, Corp.,
191 F. Supp. 2d 343, 349 (S.D.N.Y. 2001).)

13

to have an attachment order vacated, may a plaintiff provide and
rely on other submissions, beyond the complaint, to show that
plaintiff indeed has a prima facie claim against the defendant,
if the plaintiff's complaint is not sufficient in and of itself?
One recent case suggests that a plaintiff may rely on other
submissions to justify the maintenance of an attachment.  See
Maersk, Inc. v. Neewra, Inc., No. 05 Civ. 4356, 2006 WL 2168452,
at *10, 2006 U.S. Dist. LEXIS 53395, at *30 (S.D.N.Y. Aug. 1,
2006) (noting that "[t]he current motion to vacate [plaintiffs'
maritime attachment], however, is not a motion to dismiss; it is
a specialized maritime proceeding with the singular purpose of
determining the ongoing propriety of a maritime attachment";
further stating that, "[a]ccordingly, the Court's review of
whether reasonable grounds exist for the attachment is not
limited to allegations in the Complaint"; and concluding that
"[t]he totality of Plaintiffs' allegations, including those
offered in their opposition briefs, their affidavits, and at the
hearing, provide reasonable grounds to believe that [the movant]
was intricately involved in events alleged in the Complaint,
whether as [a named defendant] or other individuals identified
therein").  That case adopts the "reasonable grounds" standard
implicitly rejected by Aqua Stoli.  But, as discussed above, Aqua
Stoli's implicit rejection of that standard is based on the

14

assumption that the standard places a higher burden on a
plaintiff, to show more than what is required by Supplemental
Rule B; it is not clear that Aqua Stoli implicitly rejects the
possibility that a plaintiff could reply on other submissions to
bolster its complaint.  At least one case, however, suggests that
an attachment must be vacated insofar as it pertains to a claim
not made in plaintiff's complaint.  See T & O Shipping, Ltd. v.
Lydia Mar Shipping Co. S.A., 415 F. Supp. 2d 310, 316-17
(S.D.N.Y. 2006) (vacating the attachment insofar as it pertained
to security for plaintiff's direct losses, because plaintiff made
no claim for direct damages in its complaint, even though
plaintiff claimed that the complaint sufficiently alleged direct
damages, and plaintiff also pointed to his opposition papers and
other submissions).  But this case also adopts an approach
explicitly rejected by Aqua Stoli, insofar as it focuses on the
need for security as a requirement to maintain the attachment;
furthermore, the claim it refers to is not the plaintiff's main
claim against the defendant but rather a specific claim for a
particular category of relief.  These cases, and what Aqua Stoli
appears to imply, suggest two possible approaches: first, if a
plaintiff's complaint does not, after all, state a prima facie
claim in and of itself, the maritime attachment must generally be
vacated, because the attachment order should not have been issued

15

under Supplemental Rule B, which focuses only on the complaint (and a plaintiff's affidavit for the separate question of whether the defendant cannot be found in the district); or, second, insofar as the main concern is whether a plaintiff has a "valid prima facie admiralty claim against the defendant," a court must not vacate the attachment on the sole basis that the complaint does not, in and of itself, sufficiently state a prima facie claim, if plaintiff can show that it has such a claim based on a combination of its complaint and any other allegations in other submissions plaintiff provides at that point. Rather than attempting to set forth a general conclusion, the Court will examine this issue further in the specific context of this case, in the next section.

Independently of whether a plaintiff may rely on allegations in submissions other than the complaint, the Court believes that, for the complaint to show a prima facie claim, the complaint must comply with the relevant federal pleading requirements. Tide Line argues that "Rule E(4)(f) does not afford a defendant the opportunity to challenge the sufficiency of the plaintiff's pleadings." Letter from Tide Line to the Court 1 (Aug. 4, 2006). Tide Line, id. at 5, points to Maersk, Inc., 2006 WL 2168452, at *10, 2006 U.S. Dist. LEXIS 53395, at *30 (noting the argument, advanced by the movant seeking to vacate the attachment, "that

16

the Complaint does not sufficiently allege any claim against him,
much less a maritime claim . . . because it does not plead fraud
with particularity as required by Rule 9(b) of the Federal Rules
of Civil Procedure," but refusing to address this argument
because the movant filed a motion to vacate a maritime attachment
order and not a motion to dismiss, and therefore "the Court will
not consider such an argument lest Rule 12(b)(6) be completely
subsumed by Supplemental Rule E(4)(f)"). The Court recognizes
that a motion to vacate a maritime attachment is different from a
motion to dismiss a complaint. But the Court of Appeals
recognized, in Aqua Stoli, that "[w]ithout doubt the Rule E(4)(f)
hearing provides defendants with an opportunity to argue that the
requirements of Rule B were not in fact met — for example, that
the defendant turned out to be 'found within the district.'"
Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *3, 2006 U.S. App.
LEXIS 19302, at *9. Thus, in seeking to have an attachment
vacated, a defendant may argue that a plaintiff does not have a
"valid prima facie admiralty claim against the defendant." For
the reasons discussed above, it does not appear that the basis of
defendant's argument may be that plaintiff has not provided
sufficient evidence of such a claim. But it seems that defendant
may, under Supplemental Rule E(4)(f), argue that plaintiff's
pleadings are themselves insufficient to state such a claim;

17

otherwise, it is not clear how a defendant could argue that the "prima facie claim" requirement of Supplemental Rule B has not actually been met.

Generally, when an action is brought in federal court, a complaint must contain, inter alia, only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). See also Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (referring to the "bare-bones notice-pleading requirements of Rule 8(a)"). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." Swierkiewicz, 534 U.S. at 514. "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. [The Supreme] Court, however, has declined to extend such exceptions to other contexts." Id. at 513.

Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rule E(2)(a)"), however,

18

requires that, in an action <u>in personam</u> with process of maritime attachment and garnishment, a complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). "This standard for the particularity of complaints is more stringent than the pleading requirements of the Federal Rules of Civil Procedure." <u>U.S. v. Premises and Real Property at 4492 South Livonia Road, Livonia, N.Y.</u>, 889 F.2d 1258, 1266 (2d Cir. 1989).

### B. Analysis

The Court now turns to consider whether Tide Line has adequately shown that: "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." <u>Aqua Stoli Shipping Ltd.</u>, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28-*29.[8] Defendant has made no showing, nor is there any indication that,

---

[8] Transclear does not claim that Tide Line has failed "to meet the filing and service requirements of Rules B and E." <u>Aqua Stoli Shipping Ltd.</u>, 2006 WL 2129336, at *9, 2006 U.S. App. LEXIS 19302, at *28.

this case presents any of the limited circumstances under which the Court of Appeals found, in <u>Aqua Stoli Shipping Ltd.</u>, that a court could equitably vacate a maritime attachment.

### 1. Requirements Other than Prima Facie Claim

The main issue presented here is whether Tide Line has a "prima facie admiralty claim" against Transclear. Tide Line has met the other requirements necessary for the maritime attachment to be maintained: the defendant cannot be found within the district; the defendant's property may be found within the district; there is no statutory or maritime law bar to the attachment.

The second factor - that Transclear cannot be found within this district - is undisputed. Letter from Transclear to the Court 3 (Aug. 3, 2006).

As for the third factor - that Transclear's property may be found within this district - it is shown by the very fact of the attachment. But Transclear argues that the Court of Appeals' <u>Aqua Stoli</u> decision raises a "serious question as to whom Electronic Funds Transfers ("EFTs") belong while in transit," Letter from Transclear to the Court 3 (Aug. 3, 2006); the funds attached here are EFTs.[9] "Under the law of this circuit, EFTs to

---

[9] EFTs function in the following way:

or from a party are attachable by a court as they pass through

banks located in that court's jurisdiction." Aqua Stoli Shipping

Ltd., 2006 WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at *4

(citing Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263 (2d Cir.

2002)).[10]   In Aqua Stoli, the Court of Appeals questioned Winter

---

> When a customer wants to commence an EFT, its
> bank sends a message to the transfer system's
> central computer, indicating the amount of
> money to be transferred, the sending bank,
> the receiving bank, and the intended
> beneficiary. The central computer then
> adjusts the account balances of the sending
> and receiving banks and generates a printout
> of a debit ticket at the sending bank and a
> credit ticket at the receiving bank. After
> the receiving bank gets the credit ticket, it
> notifies the beneficiary of the transfer. If
> the originating bank and the destination bank
> belong to the same wire transfer system, then
> they are the only sending and receiving
> banks, and the transfer can be completed in
> one transaction. However, if the originating
> bank and the destination bank are not members
> of the same wire transfer system, which is
> often the case with international transfers,
> it is necessary to transfer the funds by a
> series of transactions through one or more
> intermediary banks.

Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *11 n.1, 2006 U.S.
App. LEXIS 19302, at *4 n.1 (quoting United States v. Daccarett,
6 F.3d 37, 43-44 (2d Cir. 1993)).  "Because of the international
nature of maritime transactions, intermediary banks are
frequently used."   Id.

[10] See also Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *11
n.1, 2006 U.S. App. LEXIS 19302, at *4 n.1 ("Winter Storm, 310
F.3d at 274-78, permitted the attachment of funds while those
funds are in an intermediary bank temporarily as a credit before
being passed through to the beneficiary of the transaction or

Storm, "especially its reliance on [United States v.] Daccarett,
6 F.3d [37,] 55 [(2d Cir. 1993)], to hold that EFTs are property
of the beneficiary or sender of an EFT." Aqua Stoli Shipping
Ltd., 2006 WL 2129336, at *11 n.6, 2006 U.S. App. LEXIS 19302, at
*31 n.6.[11]  Nevertheless, the Court of Appeals has not overturned
Winter Storm; this Court therefore continues to be bound by that
decision.

    As for the fourth element – whether there is no statutory or
maritime law bar to the attachment – Transclear argues that this
"presents the most compelling argument for vacating the
attachment," Letter from Transclear to the Court 2 (Aug. 3,
2006), but Transclear does not point to an actual statutory or

---

another intermediary bank.").

[11] The Court of Appeals noted, specifically:

> Because Daccarett was a forfeiture case, its
> holding that EFTs are attachable assets does
> not answer the more salient question of whose
> assets they are while in transit. In the
> absence of a federal rule, we would normally
> look to state law, which in this case would
> be the New York codification of the Uniform
> Commercial Code, N.Y. U.C.C. Law §§ 4-A-502
> to 504. Under state law, the EFT could not be
> attached because EFTs are property of neither
> the sender nor the beneficiary while present
> in an intermediary bank. Id. §§ 4-A-502 cmt.
> 4, 4-A-504 cmt. 1.

Aqua Stoli Shipping Ltd., 2006 WL 2129336, at *11 n.6, 2006 U.S.
App. LEXIS 19302, at *31 n.6.

maritime law bar to the attachment: rather, Transclear argues

that "Tide Line failed to present evidence to support a finding

of alter ego," id.[12]  This issue is discussed below in connection

with the question of whether Tide Line has shown that it has a

"prima facie admiralty claim."


### 2. Valid Prima Facie Admiralty Claim

As noted earlier, Tide Line's sole allegation against

Transclear, in its Verified Complaint,[13] is that: "Defendant

Transclear acts as paying agent, or arranges for other non-

parties to satisfy the debts and obligations of Defendant

Eastrade."  Compl. ¶ 13.  In its submissions opposing

Transclear's motion to vacate the attachment, Tide Line argues

that it has a valid in personam maritime claim against

Transclear, on the sole basis that Transclear is, allegedly, the

alter ego of Eastrade Inc., against whom it is undisputed that

---

[12] Although the factor of a "statutory or maritime law bar" is
not discussed in Aqua Stoli Shipping Ltd., Transclear's argument
pertains to whether or not Tide Line has met its burden of
showing that it has a valid maritime claim against Transclear,
not to whether there is a proscription to the attachment even if
Tide Line has such a claim.

[13] That is, its sole allegation apart from the claim, upon
information and belief, that Transclear "was, and still is, a
foreign corporation, or other business entity, organized under,
and existing by virtue of foreign law, with principal place of
business in Nyon, Switzerland." Compl. ¶ 4.

Tide Line has a valid maritime claim. Pl. Mem. 8-9. Tide Line argues that its Complaint adequately alleges a claim against Transclear based on alter ego liability, and that its other submissions (and its oral argument) in connection with the motion to vacate the attachment further allege and support such an alter ego claim. Pl. Mem. at 10-12. Furthermore, Tide Line asks that, if the Court finds that the Verified Complaint does not adequately allege that Transclear and Eastrade Inc. are alter egos, the Court allow Tide Line to submit an amended complaint containing additional allegations as to Transclear's status as an alter ego of Eastrade Inc., based on new information discovered since the filing of the Complaint; Tide Line also requests that the release of the attached funds be stayed until the Complaint is amended and a new writ is served upon the garnishee bank, because Tide Line claims it will suffer great prejudice if the funds are released. Pl. Mem. 11-12; see also Letter from Tide Line to the Court 1-2 (July 11, 2006) (with attached Proposed Amended Verified Complaint); Letter from Tide Line to the Court 2 (July 12, 2006). Transclear argues that Tide Line did not allege, in its Complaint, that Transclear is an alter ego of Eastrade Inc., and Tide Line may therefore not present such a claim at this point, or present evidence in support of it.[14] See

_____

[14] Transclear does not argue that an admiralty claim, and a related maritime attachment, cannot be based on alter ego

24

Transclear S.A.'s Memorandum of Law in Support of its Motion to

Vacate Maritime Attachment and Garnishment ("Def. Mem.") 10, 12;

Transclear S.A.'s Reply Memorandum of Law in Further Support of

its Motion to Vacate Maritime Attachment ("Def. Reply Mem.") 5-7;

Letter from Transclear to the Court 3 (July 12, 2006) (arguing

that, "[a]t a Rule E hearing, the court should not consider any

legal theories that were not pled in the complaint on which the

attachment was based").[15]  Furthermore, Transclear argues that,

even if the Court does consider Tide Line's alter ego allegations

and evidence, Tide Line has failed to prove that Transclear is

the alter ego of Eastrade Inc.  Def. Reply Mem. 7-9; Letter from

Transclear to the Court 2 (Aug. 3, 2006).

     a. Alter Ego Liability

"The prerequisites for piercing the corporate veil are as

clear in federal maritime law as in shoreside law"[16]: the veil

---

liability.

[15] At oral argument, counsel for Transclear stated that he had
not seen Tide Line's motion to amend its complaint, due to a
"mix-up in the fax number" which was due to a mistake on the part
of Transclear, not Tide Line.  See Transcript of July 14 Oral
Argument at 43-44.  Transclear's counsel added that Transclear
"would appreciate the opportunity to respond to that."  Id. at
44.  To date, Transclear has not submitted any response to Tide
Line's request to amend its complaint, and has not made a written
request to be able to file such a response.

[16] "Federal maritime law . . . is the law we apply in an
admiralty case."  Kirno Hill, 618 F. 2d at 985.  Cf. Matter of
Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda

25

will be pierced only if a corporation was used by another entity
or individual to "perpetrate a fraud" or was "so dominated" and
its corporate form "disregarded" such that it primarily
transacted the other entity's or individual's business.  Kirno
Hill Corp., 618 F.2d 982, 985 (2d Cir. 1980).  Accord Matter of
Arbitration between Holborn Oil Trading Ltd. and Interpol Bermuda
Ltd., 774 F. Supp. 840, 844 (S.D.N.Y. 1991) ("Federal common law
in the Second Circuit involves a two pronged test for piercing
the corporate veil: the party sought to be charged must have used
its alter ego 'to perpetrate a fraud or have so dominated and
disregarded [its alter ego's] corporate form' that the alter ego
was actually carrying on the controlling party's business instead
of its own.") (quoting Kirno Hill Corp., 618 F.2d at 985);
Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F. Supp. 2d
318, 323 (S.D.N.Y. 2006) ("Federal common law allows piercing of
the corporate veil where (1) a corporation uses its alter ego to
perpetrate a fraud or (2) where it so dominates and disregards
its alter ego's corporate form that the alter ego was actually
carrying on the controlling corporation's business instead of its
own.") (internal quotation marks omitted).  "Under that standard,
'. . . [a]ctual domination, rather than the opportunity to

Ltd., 774 F.Supp. 840, 844 (S.D.N.Y. 1991) ("Federal courts
sitting in admiralty must apply federal common law when examining
corporate identity."); accord Ullises Shipping Corp. v. FAL
Shipping Co. Ltd.,  415 F.Supp.2d 318, 323 (S.D.N.Y. 2006).

26

exercise control, must be shown.'"  Ullises Shipping Corp.,  415

F. Supp. 2d at 323 (quoting De Jesus v. Sears, Roebuck & Co., 87

F.3d 65, 69 (2d Cir. 1996)).[17]

The Court of Appeals for the Second Circuit has enumerated

ten factors that would "tend to show that defendant was a

dominated corporation," Wm. Passalacqua Builders, Inc. v. Resnick

Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991):

> (1) the absence of the formalities and
> paraphernalia that are part and parcel of the
> corporate existence, i.e., issuance of stock,
> election of directors, keeping of corporate
> records and the like, (2) inadequate
> capitalization, (3) whether funds are put in
> and taken out of the corporation for personal
> rather than corporate purposes, (4) overlap
> in ownership, officers, directors, and
> personnel, (5) common office space, address
> and telephone numbers of corporate entities,
> (6) the amount of business discretion
> displayed by the allegedly dominated
> corporation, (7) whether the related
> corporations deal with the dominated
> corporation at arms length, (8) whether the
> corporations are treated as independent
> profit centers, (9) the payment or guarantee
> of debts of the dominated corporation by
> other corporations in the group, and (10)
> whether the corporation in question had
> property that was used by other of the
> corporations as if it were its own.

---

[17] Even sole ownership of a corporation is not sufficient, by
itself, to pierce the corporate veil. Kirno Hill Corp., 618 F.2d
at 985. "Because a principal purpose for organizing a
corporation is to permit its owners to limit their liability,
there is a presumption of separateness between a corporation and
its owners, which is entitled to substantial weight." American
Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988).

Id. at 137-39.[18]  "Applying these - or any other pertinent

factors - to the infinite variety of situations that might

warrant disregarding the corporate form is not an easy task

because disregarding corporate separateness is a remedy that

'differs with the circumstances of each case.'" Id. (quoting

American Protein, 844 F.2d at 60).

        b. Tide Line's Burden

    In their submissions to the Court - which were filed before

the Court of Appeals issued its decision in Aqua Stoli Shipping

Ltd. - the parties both argued that "[a]t a post-attachment

hearing, a plaintiff asserting corporate alter egos need not

definitively establish domination and control, but must present

enough evidence to convince the court that there are reasonable

grounds for piercing the corporate veil," Ullises Shipping Corp.

v. FAL Shipping Co. Ltd., 415 F. Supp. 2d 318, 323 (S.D.N.Y.

2006). See Pl. Mem. 7, 15 (adopting this standard but citing

other cases); Letter from Transclear to the Court 3 (July 12,

2006) (stating this standard but arguing that it applies only if

---

[18] This decision addressed New York law concerning piercing the
corporate veil. But "the standards for piercing the veil under
New York and federal common law . . . converge, requiring a
showing of either fraud or domination." Matter of Arbitration
between Holborn Oil Trading Ltd. and Interpol Bermuda Ltd., 774
F. Supp. at 844. In that maritime case, the Court looked to the
factors set forth in Wm. Passalacqua Builders, Inc., 933 F.2d at
137-139.

alter ego liability is pled in the complaint).  In connection
with the motion to vacate the maritime attachment order, the
parties provided affirmations and declarations to support their
positions as to whether or not there are "reasonable grounds to
pierce the corporate veil" here, as to Transclear.   See
Affirmation of Tina Elliott (Executive Officer of Transclear) in
Support of Motion to Vacate Maritime Attachment ("Elliot Aff.");
Reply Affirmation of Tina Elliott in Further Support of Motion to
Vacate Maritime Attachment ("Elliott Reply Aff."); Declaration of
Nancy R. Peterson (counsel to Tide Line) in Support of
Plaintiff's Opposition to Motion to Vacate Maritime Attachment
and in Support of Cross-Motion to Dismiss Counterclaims
("Peterson Decl.") and attached exhibits; Declaration of Kyriakos
Linas (director of Tide Line) in Support of Plaintiff Tide Line
Inc.'s Opposition to Motion to Vacate the Maritime Attachment;
and the Declaration of Vassiliki Sekrou (third-party employee) in
Support of Plaintiff's Opposition to Motion to Vacate Maritime
Attachment ("Sekrou Decl.").   The oral argument that was held
pursuant to Supplemental Rule E(4)(f) (and before the Court of
Appeals' Aqua Stoli decision) also focused primarily on the
factual record.

      However, as discussed above, the holding and overall
rationale of Aqua Stoli Shipping Ltd., 2006 WL 2129336, 2006 U.S.

29

App. LEXIS 19302, imply that the "probable cause" or "reasonable grounds" standard is generally improper when considering whether a maritime attachment must be vacated. Under this logic, the Court should not engage in a broad inquiry into evidence presented as to Transclear's relationship with Eastrade Inc. Rather, the Court must focus on the narrower question of whether Tide Line has shown that it has a valid prima facie claim against Transclear on the basis of alleged alter ego status.[19]

        c. Whether Tide Line Has Met this Burden

    Tide Line argues that its Verified Complaint sufficiently

_____

[19] Transclear argues that the Court of Appeals' decision in Aqua Stoli "has absolutely no bearing on the standard of proof regarding Tide Line's belated alter ego allegations because: (i) there were no alter ego allegations at issue in Aqua Stoli, and (ii) the Second Circuit in Aqua Stoli did not address or modify the longstanding Second Circuit authority as to what needs to be proven to show alter ego liability and pierce the corporate veil." Letter from Transclear to the Court 1-2 (Aug. 3, 2006). The Court finds this argument unconvincing: although Aqua Stoli did not involve an alter ego claim, and certainly did not address the factors that tend to show alter ego liability, Aqua Stoli does, for the reasons already discussed, have ramifications as to a plaintiff's burden to maintain an attachment -- including when plaintiff asserts that it has a maritime claim against the defendant based on alter ego liability; there is no reason why, for such a claim, plaintiff would be held to a "probable cause" or "reasonable grounds" standard rather than the "prima facie" requirement emphasized by the Court of Appeals in Aqua Stoli. Similarly, therefore, Transclear's assertion that, although Tide Line has an admiralty claim against Eastrade, Inc., it does not have a claim against Transclear "absent a finding of alter ego" or a "prior determination that Transclear is the alter ego of Eastrade, Inc.," Letter from Transclear to the Court 1 (Aug. 3, 2006), is incorrect. Such a "finding" or "prior determination" is not a prerequisite to maintaining the attachment.

alleges that Eastrade Inc. and Transclear are alter egos because "[f]ederal pleading requirements are very liberal," Pl. Mem. at 10,[20] there are "no magic words to allege alter ego," id. at 11, and "[p]aying the debts of another 'independent' company or arranging for others to pay another 'independent' company's debts is one of the main hallmarks of alter ego status," id. Tide Line further states that when it filed the Verified Complaint, it was trying to be "cautious" and to allege only those elements regarding Transclear that it could verify at that time. Id. at 11-12. In response to the Court's Order of July 11, 2006, directing the parties to provide, inter alia, a definition of "paying agent," and analysis of the legal implications to be drawn from such an allegation, Tide Line states that the term "paying agent" "is not specifically defined by statute"[21]; Tide Line offers the definition of "making payments or guaranteeing the debts of the dominated corporation," and argues that its use of the term was intended to refer to aspects of "alter ego" status (including factors 7 through 10 discussed above); Tide Line therefore claims that the "legal consequences of being a

---

[20] Tide Line refers only to Fed. R. Civ. P. 8(a)(2), and does not address Supplemental Rule E(2)(a). Transclear does not address the question of what pleading rule applies here.

[21] Transclear likewise responds that, insofar as it is aware, "paying agent" does not have a technical or specialized meaning and is not a term of art. Letter from Transclear to the Court 1 (July 12, 2006).

'paying agent' as defined [here] is [sic] that there are
reasonable grounds to find that an entity is in an alter ego
relationship." Letter from Tide Line to the Court 1-2 (July 12,
2006). Tide Line thus restates its argument that the allegation
in its Complaint was intended to refer to alter ego liability.
Transclear responds that "Tide Line could and should have said
'alter ego,' or 'control' or 'domination,' the hallmarks of
[alter ego] theory," Def. Reply Mem. 6; Transclear contends that
it understood the phrase "paying agent," in the context in which
it was used, "to mean an entity that acts as the 'treasurer' or
agent of another entity, with the agent issuing payments for the
principal out of funds provided by the principal," Letter from
Transclear to the Court 1 (July 12, 2006).

    The Court finds that Tide Line's Verified Complaint does
not, in and of itself, state a prima facie maritime claim against
Transclear on the basis of alter ego liability. First, and most
obviously, Tide Line does not use the phrase "alter ego" in its
Verified Complaint.[22] Furthermore, although a court may find

---

[22] Cf. Tramp Oil & Marine, Ltd., No. 03 Civ. 5265, 2004 WL
1040701, at *2, 2004 U.S. Dist. LEXIS 7974, at *3 (S.D.N.Y. May
7, 2004) (finding that order of attachment should not be vacated
because plaintiff had a prima facie in personam claim against
defendant, insofar as plaintiff alleged that the defendant was
jointly and severally liable as a partner of another defendant).
In that case, which Tide Line cites, see Pl. Mem. 7, it appears
that the plaintiff specifically alleged, in the complaint, that
the defendant seeking to vacate the attachment was a partner of

32

that, where "alter ego" "is not specifically pled, the factual allegations [in a complaint] may support the maintenance of a claim based on an alter ego theory of liability," Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 899 (S.D.N.Y. 1999), the sole allegation that an entity is a "paying agent, or arranges for other non-parties to satisfy the debts and obligations of" another entity, does not suffice to allege a prima facie claim of alter ego liability.  This statement does not meet the more particularized pleading standard set forth in Supplemental Rule E(2)(a) -- nor even, arguably, the more liberal standard of Rule 8(a), see EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (stating that "conclusory" allegations regarding veil-piercing "fail to satisfy even the more lenient Rule 8(a) pleading requirements").

However, Tide Line has provided further allegations (and evidence) pertaining to its claim that Transclear is the alter ego of Eastrade Inc. in its submissions in connection with the motion to vacate the attachment.  In addition, Tide Line asks that the Court allow Tide Line to submit an amended complaint containing these additional allegations as to Transclear's status as an alter ego of Eastrade Inc.[23] – including that: "Upon

the other defendant.

[23] Although Tide Line has not made this request through a formal motion to amend pursuant to Federal Rules of Civil Procedure

33

information and belief, Eastrade Commodities Inc. is merely a
shell-corporation through which Transclear conducts its
business," Proposed Amended Verified Complaint (attached to Tide
Line's letter to the Court dated July 11, 2006) ¶ 13; "Transclear
operates Eastrade Commodities Inc. as its 'chartering arm,' such
that Eastrade has no separate, independent identity from
Transclear," id. ¶ 14; "Furthermore, Transclear is the alter ego
of Eastrade Commodities Inc. because Transclear dominates and
disregards Eastrade Commodities Inc. corporate form to the extent
that Transclear is actually carrying on Eastrade Commodities Inc.
business and operations as if the same were its own," id. ¶ 15;
"Upon information and belief, Eastrade Commodities, Inc. has no
corporate existence of its own.  Eastrade Commodities Inc. has no
identifiable assets, employees or office in Panama," id. ¶ 18;
"Upon information and belief, Transclear makes payments on
Eastrade Commodities, Inc.'s behalf where Transclear has
absolutely no contractual obligation to Eastrade Commodities
Inc.'s creditors; on March 11, 2005, Transclear made a hire
payment to Tide Line on behalf of Eastrade Commodities Inc. even
though Transclear was not referenced in the charter party, and no
evidence of an indemnification agreement has been produced," id.
¶ 21; "In another, independent maritime attachment case against

_____

15(a), the Court will consider the request.

Eastrade, Transclear was caught paying Eastrade Commodities
Inc.'s debts once again," id. ¶ 23; "The only person to respond
to the Notice of Attachment was Ms. Tina Elliott, who indicated,
on the actual facsimile sent to *Eastrade Commodities Inc.*, and
[sic] that she spoke on Eastrade Commodities Inc.'s behalf," id.;
"No representative of Eastrade Commodities Inc., beside Ms.
Elliott, has come forward to challenge the attachment of Eastrade
Commodities Inc.'s funds.  Furthermore, no employee of Eastrade
Commodities Inc. can be located or identified," id. ¶ 24; "In
addition, even though Transclear had no formal relationship to
the LEVANTES A charter, and Eastrade Commodities Inc. was the
named charterer, almost all correspondence sent to Tide Line and
the charter brokers from the 'charterers' originated from
Transclear," id. ¶ 26; and "Transclear performs corporate
functions on Eastrade Commodities Inc.'s behalf which should be
performed solely by Eastrade Commodities Inc.  Transclear
appointed an arbitrator on Eastrade Commodities Inc.'s behalf in
a 2001 arbitration in which Transclear itself *was not a party*,"
id. ¶ 27.[24]  With these proposed amended allegations, Tide Line

---

[24] The Proposed Amended Complaint also advances three alternative
claims — that Transclear and Eastrade Commodities Inc. are
"partners and/or are joint venturers," id. ¶ 28, or that they are
"affiliated companies" such that one is or soon will be holding
assets belonging to the other, id. ¶ 29, or that "Transclear is
an undisclosed or partially disclosed principal in the charter
parties entered into by Eastrade Commodities Inc., such that

has shown that it has a prima facie claim against Transclear on the basis of alleged alter ego status.[25]

"A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Rule 15(a) has a "lenient standard." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "The Second Circuit has held that a Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005) (quoting Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)). Although it is true that Tide Line could have brought a motion to amend earlier, the Court does not

---

Transclear is liable for Eastrade Commodities Inc.'s debts related to those transactions," id. ¶ 30.

[25] To re-emphasize, the Court must not decide, at this point, whether Tide Line has advanced sufficient evidence to support this claim, or whether Transclear has rebutted such evidence through its own submissions. Nor must it decide, for reasons discussed at length above, whether Tide Line has shown "probable cause" to believe that Transclear is the alter ego of Eastrade Commodities Inc.

find that Tide Line's timing rises to "undue delay" in this case. Furthermore, the Court does not find that any of the other factors that would counsel against allowing the amendment are present here.  The Court will therefore grant Tide Line's request to amend its Complaint, so long as no objections are filed by Transclear by August 23, 2006.

The question at this point is whether the Ex Parte Attachment Order should be vacated because the original Verified Complaint does not sufficiently state a prima facie alter ego claim against Transclear, or whether it should not be vacated because Tide Line's proposed amended allegations sufficiently state a prima facie alter ego claim against Transclear; furthermore, if the Attachment Order is vacated, the Court must consider whether the release of the attached funds should be stayed, as requested by Tide Line, until the Complaint is amended, a new Ex Parte Attachment Order is issued, and a new writ is served upon the garnishee bank.  If the Court were to vacate the attachment now, after granting Tide Line's request to amend its Complaint, the entire proceedings would almost certainly be quickly repeated.[26]  It seems that the interests of judicial efficiency would counsel in favor of keeping the

---

[26] Indeed, Tide Line's counsel confirmed as much during the hearing.  Transcript of Oral Argument Heard on July 14, 2006 ("Tr.") 42, 47.

37

attachment in place, in light of the amendments to the Verified

Complaint. The parties have not provided any case law

specifically addressing whether or not such a procedure may be

adopted, and the Court has not found cases on point.[27] But,

insofar as Tide Line has shown that it has a prima facie claim

against Transclear on the basis of its Proposed Amended Verified

Complaint, the Court does not believe that the purposes of

Supplemental Rules B and E would be served by vacating the

Attachment Order as to Transclear. However, the most appropriate

procedure to follow appears to be the following: The Court will

vacate the Ex Parte Attachment Order, allow Tide Line to file its

Amended Verified Complaint with a new request for an Attachment

---

[27] Transclear points to T & O Shipping, Ltd. v. Lydia Mar
Shipping Co. S.A., 415 F. Supp. 2d 310, 317 (S.D.N.Y. 2006), in
which, as discussed earlier, the Court vacated the attachment
insofar as it pertained to security for plaintiff's direct
losses, because plaintiff made no claim for direct damages in its
complaint. In that case, however, the plaintiff had apparently
not made a request to amend its complaint in that case. The
Court, after vacating the attachment order, stated that if
plaintiff intended to filed an amended complaint, it could do so
within twenty days. Id. at 317. Here, Tide Line has already
requested that it be allowed to filed an amended complaint, and
the Court has granted leave to amend.
Tide Line cites Shamis v. Ambassador Factors Corp., 34 F. Supp.
2d 879, 899, which states that even if an allegation of alter ego
"is not specifically pled, the factual allegations contained in
the Second Amended Complaint may support the maintenance of a
claim based on an alter ego theory of liability." But this is
not a maritime case, and does not involve a maritime attachment;
therefore, it does not provide any guidance as to whether an
attachment may be maintained on the basis of a subsequent amended
complaint.

Order by August 25, 2006 (so long as no objections are filed by August 23, 2006), and stay the release of the funds pending the issuance of the new Attachment Order and the serving of a new writ of attachment on the bank, so long as such service is accomplished by August 30, 2006.

d. Note on Transclear and Arbitration

The Court notes, however, that there appears to be a larger issue concerning Tide Line's claim against Transclear -- which, although it does not in and of itself require that the attachment be vacated, poses a problem for the unfolding of this action.

The Federal Arbitration Act ("FAA") applies to arbitration provisions in "maritime transactions." 9 U.S.C. §§ 1, 2. Section 8 of the FAA, 9 U.S.C. § 8 - invoked by Tide Line in its Verified Complaint in seeking the maritime attachment order (along with Section 1 of the FAA and Supplemental Rule B) - provides:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

"Under § 8, the plaintiff may seize the ship in rem, obtain a

39

bond, and proceed with arbitration," Thyssen, Inc. v. Calypso
Shipping Corp., S.A., 310 F.3d 102, 107 (2d Cir. 2002) – or,
similarly, may attach other property belonging to the defendant,
and proceed to arbitration.

Here, however, Tide Line is not seeking to proceed to
arbitration as against Transclear.  Despite the claim in Tide
Line's Complaint that it sought a maritime order "for the purpose
of obtaining personal jurisdiction over the Defendants,
compelling them to arbitrate the claims asserted by Tide Line,"
Compl. ¶ 15 (emphasis added), Tide Line has not sought, and
apparently does not intend to seek, to join Transclear to the
arbitration proceedings that Tide Line has initiated against
Eastrade Inc.  Tide Line's Verified Complaint refers to
initiating arbitration only as against Eastrade Inc.  Compl. ¶ 9.
Furthermore, Tide Line's submissions to the Court in connection
with Transclear's motion to vacate the attachment nowhere state
that Tide Line has attempted, or will seek, to involve Transclear
in the arbitration proceedings.

It is not clear why Tide Line has not named Transclear in
the arbitration proceedings.  At the post-attachment hearing,
when questioned by the Court regarding why Transclear is not
involved in the arbitration proceeding, if Tide Line claims that
Transclear is the alleged alter ego of Eastrade Inc., counsel for

40

Tide Line stated that, although "that would be better answered by
the London solicitor," he presumed that Transclear was not named
in the arbitration proceeding because "arbitration is by
contract" and "the only two parties named in the contract [at
issue here] were Tide Line Inc. and Eastrade Commodities, Inc."
Tr. 25.  In response to the Court's suggestion that an alter ego
could nonetheless be brought in, Tide Line's counsel replied: "In
London arbitration, I don't expect that anybody would have
allowed Transclear to come in when they claimed they're not a
party to the contract.  That's why we have Transclear here in New
York."  Id.

Tide Line has not sought to have this Court compel
Transclear to participate in the arbitration proceedings;
therefore, the Court need not decide whether Transclear could be
so compelled.[28]  But the Court notes that the Court of Appeals
for the Second Circuit "has recognized a number of theories under
which nonsignatories may be bound to the arbitration agreements
of others," including that of "veil-piercing/alter ego."

---

[28] "Under the [Federal Arbitration Act], as interpreted by the
Supreme Court, the general presumption is that the issue of
arbitrability should be resolved by the courts."  Alliance
Bernstein Inv. Research & Mgmt., 445 F.3d 121, 125 (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995);
AT&T Technologies, Inc. v. Communications Workers of America, 475
U.S. 643, 649 (1986)); accord Contec Corp. v. Remote Solution
Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005).

41

Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776
(2d Cir. 1995); accord Sarhank Group v. Oracle Corp., 404 F.3d
657, 662 (2d Cir. 2005). It is possible that, in this case,
English law applies under the arbitration agreement, and would
bar compelling Transclear to appear in the arbitration. But,
again, this need not be resolved here.

Even if Transclear cannot be compelled to join in the
arbitration proceedings against Eastrade Inc., Tide Line has
provided no support for its position that it may, instead,
litigate against Transclear in this Court, see Letter from Tide
Line to the Court at 4 (July 11, 2006), on the basis of an alter
ego theory, as the arbitration proceeds against Eastrade Inc.
Indeed, nothing in the framework set out by Sections 1 and 8 of
the FAA, and Supplemental Rule B, suggests that a plaintiff may
attach a defendant's property, and litigate the liability of the
defendant in federal court, rather than proceeding to
arbitration. Although this does not suggest that Tide Line does
not have a prima facie claim against Transclear, it does indicate
that, at this point, it is unclear how Tide Line may proceed with
that claim in this Court. This will need to be addressed
further.

IV. Conclusion

42

For the reasons given above, the Court grants Defendant Transclear, S.A.'s motion to vacate this Court's March 14, 2006, Ex Parte Order for Process of Maritime Attachment, as to Transclear only, grants Tide Line's request for leave to file an Amended Verified Complaint with a new request for an Attachment Order so long as no objections are filed by August 23, 2006, directs that Tide Line file the Amended Verified Complaint with a new request for an Attachment Order by August 25, 2006, and stays the release of the attached funds pending the issuance of a new Attachment Order in connection with the Amended Verified Complaint and the serving of a new writ of attachment on the bank, so long as the writ of attachment is served by August 30, 2006.

SO ORDERED.

Dated:    New York, New York
          August 15, 2006

                                        _Kimba M. Wood_
                                        Kimba M. Wood
                              United States District Judge

43