# EXHIBIT B

```
                              69TVROUA                                    1
       69TVROUA              Argument
 1     UNITED STATES DISTRICT COURT
 1     SOUTHERN DISTRICT OF NEW YORK
 2     ------------------------------x
 2
 3     ROUTE HOLDING INC., BEAM
 3     COMPANY INC.,
 4
 4                 Plaintiffs,
 5
 5            v.                              06 CV 03428 (PKC)
 6
 6     INTERNATIONAL OIL OVERSEAS
 7     INC. a/k/a IOOI, MARINA WORLD
 7     SHIPPING CORP.,
 8
 8                 Defendants.
 9
 9     ------------------------------x
10                                            New York, N.Y.
10                                            September 29, 2006
11                                            11:30 a.m.
11
12     Before:
12
13                      HON. P. KEVIN CASTEL,
13
14                                            District Judge
14
15                          APPEARANCES
15
16     TISDALE & LENNON LLC
16          Attorneys for Plaintiffs
17     NANCY R. PETERSON
17     PATRICK F. LENNON
18
18     FREEHILL HOGAN & MAHAR LLP
19          Attorneys for Defendants
19     MICHAEL E. UNGER
20     LAWRENCE J. KAHN
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

```
                                                                          2
       69TVROUA              Argument
 1            (In open court)
 2            (Case called)
 3            THE COURT:  This is Route Holding, Inc. v.
 4     International Oil Overseas, Inc.
 5            Is the plaintiff ready?
 6            MS. PETERSON:  Yes, your Honor.
 7            THE COURT:  State your appearance please.
 8            MS. PETERSON:  My name is Nancy Peterson from the firm
 9     Tisdale & Lennon, representing the plaintiffs Route Holding and
10     Beam Company.
11            THE COURT:  All right.  And for the defendant?
12            MR. UNGER:  Good morning, your Honor.  Michael Unger
                              Page 1
```

69TVROUA

13  from Freehill, Hogan & Mahar on behalf of the defendant Marina
14  World Shipping. With me is my associate Larry Kahn.
15          THE COURT: Good to see you. Good to see you again,
16  Mr. Kahn.
17          MR. KAHN: Good morning, your Honor.
18          THE COURT: Good morning. All right. We are here on
19  the defendant's motion to vacate the maritime attachment.
20  Since the issuance of the maritime attachment in this case, we
21  now all have the benefit of the Second Circuit's decision in
22  Aqua Stoli, 460 F.3d 434, and also Judge Wood's very clear and
23  helpful decision in Tide Line, Inc. against the Eastrade
24  Commodities, Inc., and Transclear, S.A. That was an opinion
25  issued by Judge Wood on August 15 -- I'm sorry, August 5th,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

69TVROUA                       Argument
1   2006; docket number is 06 CV 1979. And as of seven minutes
2   ago, it had not yet appeared on Westlaw.
3           It does seem clear to me that we know what we're doing
4   here this morning in that the attachment was issued pursuant to
5   Supplemental Rule B.
6           We're now at the hearing under Rule E(4)(f), and it is
7   the party who obtained the ex parte attachment's burden to show
8   why the arrest or attachment should not be vacated or other
9   relief granted consistent with these rules. So the party
10  obtaining the attachment may proceed.
11          MS. PETERSON: Your Honor, Aqua Stoli set forth the
12  burden that plaintiff needs to satisfy in order to maintain the
13  attachment.
14          In order for Rule B attachment to issue, a plaintiff
15  must show that it has met the following four technical
16  requirements:
17          That it has alleged a maritime claim; that the
18  defendant is not found in the district; that the plaintiff has
19  attached defendant's funds within the district; and that no
20  other statutory bar to maritime attachment exists.
21          In addition, Aqua Stoli stands for the proposition
22  that the plaintiff's burden does not change at the Rule E
23  hearing. The burden to obtain an attachment is the same as the
24  burden to maintain an attachment. Judge Wood further clarifies
25  that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

69TVROUA                       Argument
1           THE COURT: Well, let's back up for a second. I'm not
2   sure that I agree with your statement of what Aqua Stoli held.
3   If you look at -- well, I'm not going to be able to give you an
4   exact page number; I don't have an F.3d version of it. But the
5   text preceding Footnote 5, it recites that the plaintiff has to
6   show that it "has," not alleges, has a valid prima facie
7   admiralty claim against the defendant. That's slightly
8   different than -- and maybe more than slightly different than
9   alleges a claim.
10          MS. PETERSON: Right. But Judge Wood clarifies in her
11  opinion that what having a prima facie claim amounts to is
12  properly alleging the elements of a maritime claim, and then an
13  alter ego claim.
14          She expressly stated that it is inappropriate to
15  engage in a fact-intensive inquiry as to the facts underlying
16  either the maritime claim or the alter ego allegations.
17          THE COURT: But she points out that there is a

Page 2

69TVROUA

18 heightened pleading standard in a case brought, I guess
19 invoking maritime or admiralty jurisdiction, is that correct?
20          MS. PETERSON: The heightened standard is to make the
21 defendant aware what he is pleading.
22          In the case of Tide Line, there was no alter ego
23 allegation made. The only allegation that was made was that
24 the defendant was a paying agent of the interconnected entity.
25          In the case here, the plaintiff has alleged all the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

69TVROUA                Argument

1 elements of federal common-law alter ego claim; namely, that
2 IOOI is an alter ego of Marina World Shipping; and that IOOI
3 dominates and controls Marina World Shipping to the extent that
4 it actually conducts business through Marina World Shipping.
5 It's completely separate factual -- it's distinguishable from
6 that case.
7          After we had satisfied our burden, the defendant has
8 three basis upon which it can vacate the attachment according
9 to Aqua Stoli; namely, that the defendant can be found in a
10 convenient adjacent jurisdiction that the defendant can obtain
11 personal jurisdiction in a district where the plaintiff is
12 located or that the plaintiff has obtained sufficient security.
13         Aqua Stoli explicitly listed the three bases upon
14 which the defendant may vacate an attachment. It left the door
15 open for some equitable concerns; however, those equitable
16 concerns are not here today. Defendant is a debtor who's not
17 paying its debts. And if our case is borne out, as we suggest
18 it will be, it will turn out that IOOI and Marina World
19 Shipping are the same company who are avoiding paying their
20 debts to the plaintiffs.
21         Defendant is relying on outdated case law when it
22 suggests that we must prove a probable cause or a reasonable
23 basis, reasonable grounds standard for making our alter ego
24 allegations. Once we have satisfied the basic elements of a
25 maritime claim and an alter ego claim, we have satisfied our

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

69TVROUA                Argument

1 burden in that regard.
2          Plaintiff has alleged a maritime claim against IOOI
3 that it has breached the maritime contract, and it has alleged
4 the alter ego claim against Marina World Shipping.
5 Furthermore, in subsequent submissions, we have submitted a
6 raft of evidence showing a relationship between IOOI and Marina
7 World Shipping, which, according to both Judge Casey, in the
8 recent case of Maersk v. Neewra, is you can review in order to
9 determine if we had made adequate allegations. In addition,
10 Judge Kaplan, in a recent case of Metalinvest v. Burwil
11 Resources also held that you review the entire record to
12 determine if we have met our basic pleading allegations.
13         As the plaintiff has satisfied its burden to show that
14 it has a prima facie claim, and defendant has not met its
15 burden to show the three reasons for vacatur, the attachment
16 should be upheld and the motion to vacate denied.
17         THE COURT: Thank you, Ms. Peterson. Let me hear from
18 Mr. Unger.
19         MR. UNGER: Good morning, your Honor. Let me begin by
20 referring the Court to the advisory committee notes of Rule B.
21 Under those notes, it says contrary to whatever interpretation
22 plaintiffs want to put on Aqua Stoli, the defendant can attack

Page 3

```
                              69TVROUA
23    the pleadings for insufficiency or any other defect in terms of
24    the process.
25              Here, the defect is that the complaint is plainly
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

7

```
      69TVROUA                    Argument
 1    insufficient to meet the standards required under Rule 8(a),
 2    let alone the higher standard required under Rule 9(b).
 3              The case law is such, and, in particular, I refer the
 4    Court to In Re:  Currency Conversion Fee Anti --
 5              THE COURT:  If I may just have you pause for a second.
 6    Why do you invoke Rule 9(b)?
 7              MR. UNGER:  Rule 9(b) is the specificity of pleading
 8    rule, your Honor.
 9              THE COURT:  I'm familiar with that.
10              MR. UNGER:  And here, the courts have said that
11    veil-piercing claims are generally subject to the pleading
12    requirements imposed by Rule 8(a), which requires only a short
13    and plain statement of the claim, showing that the pleader is
14    entitled to relief.
15              However, when a veil-piercing claim is based on
16    allegations of fraud, the heightened pleading standard Rule B
17    is the lens through which those allegations have to be
18    examined.  Okay.
19              Here, they haven't alleged fraud.
20              THE COURT:  So that goes back to my question.  Why are
21    you talking to me about Rule 9(b)?
22              MR. UNGER:  I just refer to Rule 9(b), but what I'm
23    saying is it doesn't even reach the lower standard of Rule 8.
24              THE COURT:  But we're in agreement Rule 9(b) does not
25    control in this case?
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

8

```
      69TVROUA                    Argument
 1              MR. UNGER:  That's correct, your Honor.
 2              THE COURT:  Okay.  Thank you.
 3              MR. UNGER:  I apologize if it was confusing.  But the
 4    case I was referring to, In Re:  Currency Conversion Fee
 5    Antitrust Litigation, which is 265 F. Supp. 2d 385 Second
 6    Circuit -- I'm sorry, Southern District 2003.
 7              The Court stated in that case that purely conclusory
 8    allegations cannot suffice to state a claim based on veil
 9    piercing or alter ego liability, even under the liberal notice
10    pleading standard under Rule 8(a).
11              The plaintiff has to come in, and the plaintiff has to
12    demonstrate with proof, credible proof, that there is an alter
13    ego relationship between the two defendants that they've named.
14    Plaintiff only has a real cause of action and a real gripe with
15    IOOI with whom it had its contract, because IOOI didn't pay up
16    or hasn't agreed to post security, and I don't know exactly
17    where plaintiff and IOOI are in terms of their arbitration.
18              Plaintiff in this action decided that they were going
19    to come into court and add MWS, Marina World, as a defendant,
20    and that's a tactic that they are using in order to try to
21    strongarm either a settlement or the posting of security by
22    IOOI in connection with the London arbitration and the merits
23    of that dispute.
24              Turning back to the Aqua Stoli case.  It's incorrect
25    to say that there were only three bases on which to challenge
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                    Page 4
```

69TVROUA

9

69TVROUA                Argument

1  an attachment. The Second Circuit specifically said in Aqua
2  Stoli that among the bases to challenge are, and it proceeds to
3  list the three examples that counsel for the plaintiff cited.
4           THE COURT:  And then they go on to further define the
5  universe by saying, "We also believe vacatur is appropriate in
6  other limited circumstances," which are well-described in the
7  opinion. And they also describe what circumstances do not
8  qualify for vacating the attachment. Go ahead.
9           MR. UNGER:  Here, your Honor, what we're challenging,
10 effectively, is that there is no maritime claim. And,
11 therefore, the Court lacks subject-matter jurisdiction in
12 respect to the claims against Marina World. And the reason the
13 Court lacks subject-matter jurisdiction is because there is no
14 alter-ego relationship between the two named defendants.
15          THE COURT:  Where do I find your subject-matter
16 jurisdiction argument laid out?
17          MR. UNGER:  It's not specifically set forth as such in
18 our papers, your Honor; but what we do argue is that there is a
19 defect in the pleadings. And that's the defect. The defect is
20 that there is a lack of jurisdiction here. And there's a lack
21 of jurisdiction because there is no, in fact, alter-ego
22 relationship between the companies; and there is no -- the way
23 that it's pled in the complaint, that doesn't suffice under
24 Rule 8(a) to state a maritime claim.
25          The Aqua Stoli case says, in effect, that plaintiff

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

69TVROUA                Argument

1  has to show that it has a valid maritime claim, okay. And if
2  that's the case, you're allowed to test the validity of whether
3  that claim that they are alleging is valid.
4           Here, this Court has the right to look at the
5  evidence. And plaintiff having the burden of proof, they
6  haven't shown a maritime claim against Marina World. And the
7  reason they haven't is that the evidence that they have put
8  forth, and let's look at what they put forth, before they ever
9  filed the claim, all they knew was there were a couple of
10 payments that had been made over eight years by Marina World on
11 behalf of IOOI. And Mr. Bakri from Marina World explains in
12 his several declarations why that was done. That's been
13 unchallenged. And I don't believe that that gave a good-faith
14 basis to file this complaint in the first place.
15          But even if you get past that and you look at the rest
16 of the evidence, what do we have? A couple more payments we
17 learn have been made. But that's it. Then you get into all
18 the plaintiff's smoke-and-mirrors in terms of trying to tie
19 Marina World and IOOI together. And, quite frankly, your
20 Honor, they don't even come close.
21          The evidence that they show at best is based on
22 speculation, rumor, innuendo, hearsay from unnamed "market
23 sources" and investigations that were commenced. They give you
24 a four-year old report in connection with IOOI and its supposed
25 relationship with the Bakri group, which Mr. Bakri explains is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

69TVROUA                Argument

1  basically a loose association of companies that try to
2  capitalize on the goodwill of one another.
3           You have, in addition to that, plaintiff coming in

Page 5

```
                   69TVROUA
 4     with all kinds of suggestions in terms of the fact that there
 5     are shared addresses, IT information that's shared. None of
 6     this adds up to putting Marina World being so dominated or
 7     controlled by IOOI or the converse, that they can meet the
 8     ten-point tests that are set out in terms of what you have to
 9     show in order to have an alter-ego claim.
10              At best, all plaintiff has done is shown, if you want
11     to accept it, that IOOI may have some kind of relationship with
12     the Bakri group, Bakri navigation, and any of the 12 or 13
13     other companies that are named throughout the course of the
14     papers. But what's not in any of that is Marina World in this
15     web that they've painted. Marina World is out here. And
16     there's no evidence which ties Marina World directly to IOOI,
17     or to IOOI through the Bakri group, or any of the Bakri group
18     companies.
19              Effectively, if you follow plaintiff's argument, up on
20     the west side of Manhattan you have the Potamkin Auto Group.
21     And he's got ten different dealerships. And if I buy a
22     Chrysler from Potamkin Chrysler, and I don't like it, under
23     plaintiff's theory, I could allege that their alter egos and go
24     after Potamkin Chevy. Why? Because Mr. Potamkin has his hand
25     in a whole bunch of these dealerships. Mr. Potamkin may own
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

12

```
                   69TVROUA              Argument
 1     the various buildings or have a company that owns the various
 2     buildings the dealerships are in. That doesn't get you over
 3     the hump.
 4              There's no good-faith basis to have brought this
 5     claim. And they haven't shown it even when they've had the
 6     burden of showing it, that there is an alter ego relationship.
 7              Thank you, your Honor.
 8              THE COURT: Thank you, Mr. Unger. Let me hear from
 9     the plaintiff. And I guess a question I would like answered is
10     does supplemental Rule E(2)(a) apply as to the pleading. And
11     let me hear as to how does the plaintiff view that rule as
12     affecting its pleading obligation here.
13              MS. PETERSON: What do you explicitly mean by Rule
14     E(2)(a)? Do you mean the pleading requirement?
15              THE COURT: All right. There is a requirement that,
16     "The complaint state the circumstances from which the claim
17     arises with such particularity that the defendant or claimant
18     will be able, without moving for a more definite statement, to
19     commence an investigation of the facts and to frame a
20     responsive pleading."
21              And Second Circuit has held that this standard is more
22     stringent than the pleading requirements of the Federal Rules
23     of Civil Procedure. That's what I'm referring to.
24              MS. PETERSON: Your Honor, first, I believe that we
25     have satisfied that burden; and that we have stated the facts
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

13

```
                   69TVROUA              Argument
 1     and circumstances for having the breach of the contract and the
 2     reasons behind us attaching the funds of Marina World Shipping;
 3     namely, that they are in an alter ego relationship such that we
 4     do not have to move for a more definite statement.
 5              And, subsequently, we have submitted considerable
 6     evidence in our various submissions and declarations clarifying
 7     our pleadings and putting forth more evidence.
 8              In addition, I don't believe that the standard -- that
```

```
                            69TVROUA
 9    we should apply a motion-to-dismiss standard at the Rule E
10    hearing. We're not judging the sufficiency of the pleadings in
11    terms of a motion to dismiss any set of facts upon which relief
12    can be granted. We're looking at a Rule E special hearing at
13    which we're seeing if the elements of the claim have been
14    alleged, and if the circumstances has also been alleged,
15    according to Rule B(a)(2).
16              Judge Casey explicitly addressed this in the case of
17    Maersk v. Neewra, where he said you can look at the entire
18    record to determine a pleading burden, unlike a motion to
19    dismiss; and that if we were to apply any set of facts or look
20    at the facts, Rule E would completely subsume Rule 12(b)(6).
21    There would be no difference, included there should be a
22    difference in the standard.
23              If the defendants would like to challenge the facts
24    underlying our pleadings, they should raise a motion to dismiss
25    or a motion for summary judgment. However, that is the
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

14

```
     69TVROUA                    Argument
 1    appropriate form in which to challenge them. Right now we're
 2    looking at the bare bones of the complaint and our supplemental
 3    submissions.
 4              May I add a few -- address their argument?
 5              First of all, as to the subject-matter jurisdiction
 6    argument that they have made, the defendant does not dispute
 7    that we have alleged a maritime claim against IOOI. We have
 8    alleged an alter-ego claim against Marina World Shipping.
 9    Therefore, it's an alter-ego maritime claim. In the
10    subject-matter jurisdiction, it's not relevant and wasn't
11    briefed by the defendants.
12              THE COURT: In other words, what you're saying is even
13    if for some reason I accepted everything that the defendants
14    said and tomorrow granted a motion to dismiss Marina World from
15    this case, this Court's subject-matter jurisdiction would not
16    evaporate?
17              MS. PETERSON: Exactly.
18              THE COURT: Thank you. Go ahead.
19              MS. PETERSON: As to the evidence, where they are
20    attacking the evidence as hearsay and in the declarations, they
21    are holding us to a trial standard. This is the Rule E
22    hearing. You can submit any sort of evidence at this stage to
23    support your allegations. And we can submit case law to
24    support that, if your Honor would like.
25              In addition, there is no case law to suggest that we
                       SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

15

```
     69TVROUA                    Argument
 1    have to submit proof at this stage of the hearing to support
 2    our allegations. Aqua Stoli and Judge Wood found that proof at
 3    this stage is inappropriate; and that would be going directly
 4    against her decision, I feel, to require to submit all facts at
 5    this stage prior to discovery or being able to use discovery
 6    tools to obtain evidence.
 7              And even assuming arguendo that the defendants are
 8    correct that we have to make some sort of evidentiary showing,
 9    which we vigorously deny, we have shown significant evidence
10    that IOOI and Marina World Shipping are, in fact, alter egos.
11              Even without the benefit of discovery, we have
12    uncovered 15 payments being made by Marina World Shipping on
13    behalf of IOOI. There's been no evidence submitted to show
```

Page 7

```
                           69TVROUA
    14    that there was -- Mr. Bakri claims that there's an assignment
    15    of payment. However, there's absolutely no paper, there's no
    16    evidence of a debt being assumed from Marina World Shipping to
    17    IOOI, there's no evidence of an assignment actually being made,
    18    and the people that received the payments can confirm that they
    19    were never informed of an assignment. The only evidence is a
    20    self-serving statement that a payment assignment can be made.
    21         And it suspends disbelief to believe that in these 15
    22    separate incidences that we know about, they executed
    23    assignments of payment. In addition, IOOI refers to Marina
    24    World Shipping's account as its own. In the two instances
    25    where IOOI owed money to a creditor, and it informed them that
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                    16
```
          69TVROUA                Argument
    1     it would be sending money from its bank, when the confirmation
    2     came through, it was from Marina World Shipping. It is
    3     referring to Marina Shipping as its own account and using it as
    4     its piggy bank. Its role is to sign the maritime documents;
    5     Marina World Shipping's job is to pay the debts. And in this
    6     way, it completely insulates IOOI and the Bakri family-at-large
    7     from liability.
    8          IOOI and Marina World Shipping reside at the same
    9     location in Saudi Arabia at the Al Dulas Bakri Building owned
   10     by a Bakri corporation. Mr. Bakri has submitted a lease
   11     allegedly showing that this is an arm's length transaction that
   12     Marina World Shipping leases from the owner. However, this
   13     lease does not specify an office, a floor. This is a lease
   14     that specifies that they have leased somewhere in the Bakri
   15     building. This has no evidence to show that, in fact, they
   16     maintain a separate office or in any way separate from IOOI.
   17          In addition, the directors of IOOI are all apparently
   18     employed by the Bakri family. Marina World Shipping directors
   19     are made up of all Bakri family members. IOOI's directors are
   20     all apparently employees of the Bakri corporations. One is in
   21     the legal department of a Bakri-owned corporation; one is a
   22     member of and works for a self-described company in the Bakri
   23     organization; and the other one works in another separate
   24     subsidiary of a Bakri corporation. There's clear ties between
   25     these directors.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                    17
```
          69TVROUA                Argument
    1          Marina World Shipping and IOOI are one entity; the two
    2     pockets in the same pair of pants.
    3          The maritime report, which defendants claim is four
    4     years old -- which is four years old, but which is equally
    5     relevant today, shows that the Bakri family uses IOOI as their
    6     chartering arm. They use it to enter into transactions. And,
    7     as I said, Marina World Shipping is the piggy bank. They are
    8     almost like two departments; they are the same company.
    9          And, finally, the audit that Mr. Bakri submitted
   10     allegedly to show that it has above-the-board records, reveals
   11     that it enters into related party transactions regarding ship
   12     charters. What these transactions are, I am unsure. However,
   13     upon a minimal amount of discovery, I believe we can find out.
   14     However, this in no way establishes that they are separate from
   15     IOOI.
   16          And, in addition, again, upon a minimal amount of
   17     discovery, we believe we can uncover many more payments made on
   18     behalf of Marina World Shipping -- made on behalf of IOOI by
```

```
                        69TVROUA
19   Marina World Shipping.
20            The owners in this case have approached people in
21   order to find out about more payments; however, they came to
22   them and said we have a confidentiality clause in our charter
23   party.  So they couldn't help even if they wanted to.  Upon
24   being awarded discovery, we can certainly clarify how often
25   Marina World Shipping is certainly paying on behalf of IOOI.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

18

```
     69TVROUA               Argument
1             And, as such, I believe plaintiff has met its burden,
2    either under the defendant's alleged pleading requirements or
3    under whatever Judge Wood's pleading requirements in Tide Line.
4    And for that reason, the attachment should be upheld.
5             THE COURT:  Thank you.  It is the plaintiff's burden,
6    and so the plaintiff gets to go first and last; but, Mr. Unger,
7    I'll give you an opportunity briefly if there's something
8    additional you wanted to say.
9             MR. UNGER:  A couple real quick points, your Honor.
10   We're back to the has versus alleges argument in looking at
11   what they talked about.  The evidence, it doesn't have to be
12   admissible at this stage, but it has to be credible.  And it
13   has to support the allegations.  And, quite frankly, the
14   evidence that they have does neither.
15            The allegation that Marina World hasn't supplied any
16   paper to document the assignments, it's not Marina World who
17   has the burden of proof, it's the plaintiff.  And it was never
18   challenged by the plaintiffs, okay.  The fact that IOOI says we
19   have instructed our bankers, I don't know why, but it certainly
20   is not compelling evidence that there is an alter-ego
21   relationship.  And, in fact, the argument that Marina World is
22   used as IOOI's bank is undermined by the fact that IOOI paid
23   the settlement in the prior case, the Garda Shipping case,
24   which is referred to in the papers, out of its own funds.
25   They're holding the lease to U.S. standards rather than Saudi
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```

19

```
     69TVROUA               Argument
1    standards; yet they don't have any evidence to show you what
2    the practice is in terms of Saudi leasing of offices.
3    Mr. Bakri is the only evidence that is before the Court, and
4    Mr. Bakri explains what happens.  Okay.
5             They never closed the circle between IOOI, the Bakri
6    group, and Marina World.  The four-year old report is not
7    relevant.
8             In terms of any suggestion as to discovery, discovery
9    has never been asked for prior to today, and it shouldn't be.
10   In terms of the suggestion that the motion should be held only
11   in terms of a summary judgment standard, basically that allows
12   the plaintiff then in any instance, with even the barest
13   whisper of a connection between two companies, to say, A is the
14   alter ego of B; and that alleged alter ego can't challenge it
15   until it's gone through miles and miles of legal hoops and
16   legal proceedings, effectively all the way to trial.
17            If Marina World had not challenged the money being
18   attached in this instance, look at what would have happened.
19   Plaintiff would have had to get a judgment -- I'm sorry, an
20   award in London against IOOI, and then seek to confirm that
21   award.  And then plaintiff would still have the burden of
22   proving down the road that IOOI and MWS are alter egos in order
23   to go ahead and collect a judgment here against MWS.
                              Page 9
```

```
                         69TVROUA
24          So it goes beyond the realm of common sense to say
25     that they shouldn't have to have that ability to go ahead at
                  SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
```
                                                                          20
```
          69TVROUA              Argument
 1     this early stage and have some credible evidence that the two
 2     are linked in order to have taken the step that they have done.
 3              MR. KAHN: Your Honor, if I could be heard on just one
 4     brief point brought up by plaintiffs regarding the Maersk v.
 5     Neewra case, which was recently decided by Judge Casey, and the
 6     dismissal standard that we're also seeking here.
 7              As Mr. Unger said, the Court would still have
 8     jurisdiction over the case generally, but only against IOOI if
 9     the case is dismissed against Marina World.
10              And what occurred in the Maersk v. Neewra case, if you
11     look at it carefully, you'll see that the plaintiffs are
12     expanding what was actually said in that case. In the Maersk
13     v. Neewra case, what happened was the defendant moved to vacate
14     the attachment on maritime attachment grounds, and then also
15     sought to dismiss a RICO cause of action on the grounds that it
16     was not sufficiently pled. And the Court held that it was
17     improper at that time to attack the RICO cause of action in an
18     E(4)(f) hearing. The Court found that there was no basis to do
19     that, particularly where the defendant had not yet appeared.
20              One slightly complicating wrinkle in that case was
21     that the defendant, who appeared only in the guise of garnishee
22     and not as the defendant, it was proven at the E(4)(f) hearing
23     that the garnishee actually was the defendant. He was playing
24     a name game; he had essentially multiple IDs with slightly
25     different spellings of his name. And Judge Casey saw through
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                          21
```
          69TVROUA              Argument
 1     that and saw this is all the same person.
 2              But with respect to the standard for dismissal, Judge
 3     Casey held that what was going on in that case was that it was
 4     improper in the context of an E(4)(f) maritime hearing
 5     concerning whether or not an attachment should be vacated to
 6     challenge whether a RICO cause of action was sufficiently pled
 7     under 9(b).
 8              And so the reading urged by the plaintiffs here I
 9     think is over-expansive, goes well beyond what Judge Casey
10     actually decided in the Maersk v. Neewra matter.
11              Thank you.
12              THE COURT: Thank you. On May 4th, 2006, I signed an
13     order directing the clerk to issue maritime attachment against
14     property of IOOI and Marina World. Thereafter, I scheduled an
15     initial pretrial conference in this case, and had a conference
16     held on July 14th. The defendant indicated a desire to move to
17     vacate the attachment, and I set a schedule for the motion to
18     be made four days later, set a date for replies, responses and
19     replies, and set a date for a hearing of August 1, 2006.
20              And there is certainly nothing unusual or
21     inappropriate about it, but I do want to make it plain for the
22     record, subsequently I received requests to adjourn the
23     hearing, including a letter request by Mr. Unger dated July
24     31st, which caused me to move it till August 28th. And then a
25     further request from Ms. Peterson that it be adjourned to a
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```
                                                                          22

```
                         69TVROUA
         69TVROUA        Argument
1    later date, and it was moved to today. So that's what brings
2    us here today.
3             This is the hearing required under Rule E(4)(f) of the
4    supplemental rules for certain admiralty and maritime claims.
5    And the rule provides that whenever property is arrested or
6    attached, any person claiming an interest in it shall be
7    entitled to a prompt hearing at which the plaintiff shall be
8    required to show why the arrest or attachment should not be
9    vacated, or other relief granted consistent with these rules.
10            In the very recent decision of the Second Circuit in
11   Aqua Stoli, which is 2006 Westlaw, 2129336, and that is now
12   recorded at 460 F.3d 434 Second Circuit, July 31, 2006, the
13   Court had occasion to examine the historical underpinnings of
14   maritime attachment and the process by which maritime
15   attachment may be vacated.
16            I have spent some time with that opinion in examining
17   it, studying it, and I'm not going to endeavor to summarize it
18   here today. But I do note that the holding of the Court is
19   that in addition to having to meet the filing and service
20   requirements of Rule B and E, an attachment should issue if the
21   plaintiff shows that, one, it has a valid prima facie admiralty
22   claim against the defendant; two, the defendant cannot be found
23   within the district; three, the defendant's property may be
24   found within the district; and, four, there is no statutory or
25   maritime law bar to the attachment.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

23

```
         69TVROUA        Argument
1             And conversely says, Aqua Stoli, a district court must
2    vacate an attachment if the plaintiff fails to sustain his
3    burden of showing that he has satisfied the requirements of
4    Rule B and E.
5             The Court also outlined certain other limited
6    circumstances which do not appear to be relevant here.
7    Specifically, it outlined a circumstance where the defendant is
8    subject to suit in a "convenient adjacent jurisdiction, and
9    where the plaintiff could obtain in personam jurisdiction over
10   the defendant in the district where the plaintiff is located,
11   or the plaintiff has already obtained sufficient security for
12   the potential judgment by attachment or otherwise."
13            Those circumstances, i.e., the limited circumstances,
14   have no application in this case.
15            I conclude that the plaintiff has met the requirement
16   that the defendant cannot be found within the district; that
17   the defendant's property may be found within the district; and
18   that there is no statutory or maritime law bar to the
19   attachment. I consider, however, whether a valid prima facie
20   admiralty claim against the defendant has been asserted.
21            Now, there is much discussion, and I suppose it will
22   be a continuing discussion, as to how a district court is to
23   determine whether there is a valid prima facie admiralty claim.
24   I think it is fair to say that after Aqua Stoli, it cannot
25   credibly be argued that there is a probability of success on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

24

```
         69TVROUA        Argument
1    the merits type standard. But I really don't, in this case,
2    have to spend too much time with whether it is something to be
3    determined solely from the face of the pleadings or whether
4    this Court can and should consider matters outside the four
```

```
                        69TVROUA
 5    corners of the pleading, because under either standard, I find
 6    that the plaintiff has alleged a valid prima facie admiralty
 7    claim.
 8              I'm mindful of the dictates of supplemental Rule
 9    E(2)(a), that there must be at least enough particularity so
10    that the plaintiff -- or, rather, the defendant can commence an
11    investigation of the facts and frame a responsive pleading; and
12    that this is a higher pleading requirement than the Rule 8(a)
13    requirement.
14              Here, the plaintiff alleges that MWS is the alter ego
15    of IOOI, but it does not simply leave it as a conclusory
16    allegation. It goes on to allege that the reason it believes
17    it is the alter ego is because IOOI dominates and disregards
18    MWS's corporate form to the extent that MWS is actually
19    carrying on IOOI's business and operations as if the same were
20    its own. It further goes on to allege that MWS, acting as
21    paying agent, acts as paying agent or arranges for other
22    nonparties to satisfy the debts and obligations of IOOI.
23              It seems to me that is a sufficient allegation. If
24    and to the extent it is not a sufficient allegation, I look to
25    the declaration of Hara Anastasatou.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

25

```
       69TVROUA                  Argument
 1              Now, the declaration referenced goes into the issue of
 2    common ownership and control, alleging that the two are a
 3    single economic entity. Some of the facts that are set forth
 4    there are consistent with alter ego, but they could also be
 5    consistent with one shareholder owning two separate
 6    corporations. There's nothing in law that prohibits a single
 7    shareholder from doing business through separate corporations,
 8    provided the separate corporate form is maintained.
 9              But what I find impressive about the declaration is it
10    gives considerable particularity and description to instances
11    where MWS made a payment on behalf of IOOI, it gives chapter
12    and verse, it gives the details, it gives the time, the place,
13    and the circumstances, and it gives a number of examples. And
14    so I find paragraphs 20 through 43 of the declaration to be of
15    particular help and utility.
16              The prerequisites for piercing the corporate veil are
17    as clear in federal maritime law as in shoreside law. That's a
18    point that has been made in the Kirno Hill case; and it's clear
19    that the veil will be pierced only if a corporation is used by
20    another entity or individual to perpetrate a fraud or, the
21    operative word being "or," was so dominated that its corporate
22    form was disregarded and the notion that a way to prove veil
23    piercing is by showing that the alleged alter ego so dominated
24    and disregarded its alter ego's corporate form, that the alter
25    ego is actually carrying on the controlling party's business
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```

26

```
       69TVROUA                  Argument
 1    instead of its own, is an extremely well-recognized,
 2    well-established means of demonstrating corporate veil
 3    piercing.
 4              I look specifically to pages 25 to 27 of Judge Wood's
 5    well-reasoned and thoughtful opinion in Tide Line, including
 6    the citation up to the factors outlined in William Passalacqua
 7    Builders v. Resnick.
 8              Unlike Tide Line, of course, this is a case where the
 9    alter ego allegation is on the face of the complaint. Whether
```

69TVROUA

10  I look at it in terms of the complaint or I look at it in terms
11  of the complaint taking into account the plaintiff's
12  submissions, as well as the defendant's submissions, and the
13  argument presented here today, I conclude that there is a valid
14  prima facie admiralty claim; that all other requirements of
15  Rule B and E have been met; that there is not a limited
16  circumstance, as outlined in Aqua Stoli, for vacating the
17  attachment under the limited circumstances doctrine.
18       So I conclude that the plaintiff has, at this hearing,
19  met each and every element of the plaintiff's burden; and,
20  therefore, the motion to vacate the attachment is denied.
21       Is there anything further?
22       MS. PETERSON:  No, your Honor.
23       MR. UNGER:  No, your Honor.
24       THE COURT:  Thank you all very much.
25            *    *    *

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300