CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendants,
RP Logistics Pvt Ltd. and R. Piyarelall
International Pvt. Ltd.
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:        516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITHAI MARITIME, LTD.                            :
                                                 :
                    Plaintiff,                   :          07 CV 5730 (BSJ)
                                                 :
                                                 :          ECF Case
            - against -                          :
                                                 :
                                                 :
RP LOGISTICS PVT LTD. and                        :
R.PIYARELALL INTERNATIONAL                       :
PVT. LTD.                                        :
                                                 :
                    Defendants.                  :
                                                 :
-------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE MARITIME ATTACHMENT

## **TABLE OF CONTENTS**

TABLE OF CONTENTS …………………………………………...………......…ii

PRELIMINARY STATEMENT..………………………………………...…..…………1

THE FACTS.……………………………………………......................................2

LEGAL ARGUMENT.…………………………………………........................................2

    I.    PLAINTIFF UNDERSTATES THE BURDEN REQUIRED TO MAINTAIN A MARITIME ATTACHMENT..………………………………2

    II.    THE ATTACHMENT MUST BE VACATED AS THE PLAINTIFF FAILS TO PLEAD A SUFFICIENT VALID *PRIMA FACIE* MARITIME CLAIM AGAINST EITHER RPL OR RPI FOR WRONGFUL ARREST………………………………………………..7

    III.    THE ATTACHMENT OF RPI'S FUNDS SHOULD BE VACATED BECAUSE PLAINTIFF DOES NOT HAVE A VALID *PRIMA FACIE* ALTER EGO CLAIM AGAINST THE DEFENDANT, RPI.…………..15

    IV.    VACATUR IS APPROPRIATED UNDER THE LIMITED CIRCUMSTANCES ARTICULATED IN AQUA STOLI.………….…18

    V.    IF THE COURT DOES NOT VACATE THE ATTACHMENT, THERE ARE AMPLE GROUNDS FOR REDUCTION OF THE ATTACHMENT SO THAT THERE IS NO ATTACHMENT ……………………...23

CONCLUSION ………………………….........................................................26

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted on behalf of the Defendants, RP LOGISTICS PVT LTD. (hereinafter "RPL") and R. PIYARELALL INTERNATIONAL PVT. LTD. (hereinafter "RPI") in further support of Defendants' application, under F.R.C.P. Supplemental Rule E (4)(f), to Vacate the Process of Maritime Attachment and Garnishment issued in this matter on June 18, 2007 and as response to the Opposition to Defendant's application, which was filed by Plaintiff, Unithai Maritime Limited (hereinafter "Unithai Maritime") on July 23, 2007.

The Plaintiff's attempts to distinguish its claim from the claim presented by the Plaintiff in OGI Oceangate Transportation Co., Ltd. v. RP Logistics Pvt. Ltd. and R. Piyarelall International Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 21, 2007), are unavailing. This is the same exact case, and the small points raised by Unithai Maritime are distinctions without meaningful difference. As was the case in OGI Oceangate, the attachment should be vacated by reason of the fact the Plaintiff has not asserted a valid prima facie admiralty claim or there are equitable reasons, endorsed by the Second Circuit, for vacatur in the circumstances of this case.

Alternatively, if this Court is willing to consider that the Plaintiff Unithai Navee has asserted a valid prima facie maritime claim for the alleged wrongful arrest of the M/V UTHAI NAVEE, then this Court must still vacate the attachment on the ground that there are grounds to reduce the attachment.

In sum, the Plaitniff Unithai Maritime's case for a pre-judgment attachment is lacking in merit and is nothing more than an abuse of the extraordinary remedy provided by the United States Supplemental Rules for Admiralty and Maritime Claims.

## THE FACTS

The facts pertaining to the instant Motion to Vacate the Process of Maritime Attachment and Garnishment and Dismiss the Complaint as against RPL and RPI are more fully set forth in the previously submitted Attorney's Affidavit of Owen F. Duffy, dated July 13, 2007, and the exhibits thereto, and in the Declaration of Lawrence G. Cohen, dated July 23, 2007, and the exhibits thereto. Rather than restate the facts fully herein, this Memorandum of Law will make reference to, and will discuss as appropriate, the facts set forth the accompanying Attorney's Affidavit and Declaration.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF UNDERSTATES THE BURDEN REQUIRED TO MAINTAIN A MARITIME ATTACHMENT

With due regard for the fact that Plaintiff has the burden of proof to show why the attachment should not be vacated and the determinations that have to be made at the Rule E(4)(f) hearing, it needs to be pointed out that the Plaintiff advances a general theme with its Opposition to the Motion to Vacate. The theme is driven by the rubric for a "*prima facie*" standard of review. Whereas the Plaintiff argues that it need only demonstrate that the attachment was properly issued, Unithai Maritime actually advocates for no review and insists the Court must simply gloss over, or even ignore the facts relevant to: the Plaintiff's allegations of a valid *prima facie* maritime claim; the Plaintiff's claim for alter ego liability against RPI; the Plaintiff's off-hand dismissal of the point that there is a valid basis for vacatur pursuant to the rules established by the Court of Appeals in <u>Aqua</u>

<u>Stoli</u> and, the quantum of the security that has been obtained in the not insignificant amount of $559,353.00. Simply put, Unithai Maritime does not want the Court to look at the underpinnings of its claim and, thereby, seeks to shield its claim from any judicial scrutiny.

Indeed, if the Court is willing to accept the Plaintiff's theme as guidance, then the validity of the underlying facts do not matter because the Court's role would be limited to performing a perfunctory review of the Complaint to ensure that the magic words "maritime claim" and "alter ego" are in Complaint somewhere. As a matter of plain common sense that cannot be right, and there is a growing number of Judges in the Southern District of New York who will not accept that. Most importantly, that cannot be the case when one of the most prominent and senior Judges in this district has already vacated an attachment premised on the same underlying facts and the exact same Complaint that Unithai Maritime presents in this case. *See*, <u>OGI Oceangate Transportation Co., Ltd. v. RP Logistics Pvt. Ltd. and R. Piyarelall International Pvt. Ltd.</u>, 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 21, 2007).

With the Court of Appeal's decision in <u>Aqua Stoli</u>, it has been generally accepted that the Court of Appeals attempted to articulate some clear rules for the District Courts when they were required to consider the validity of a Maritime Attachment. In that regard, the Court of Appeals specifically held:

> "We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. We

3

also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise."

460 F.3d at 445.

As things came to pass post-*Aqua Stoli*, questions arose as to the actual burden of proof a claimant carried in order to justify an attachment and what could be considered to weigh the burden when considering such issues as whether the plaintiff really had a maritime claim or whether an alter-ego claim was properly presented. *Compare*, Maersk, Inc. v. Neewra, Inc., 443 F. Supp.2d 519, 527 (S.D.N.Y. 2006)(Judge Casey noted that a *prima facie* standard created a real risk of abuse, and the Court held "The plaintiff must demonstrate that 'reasonable grounds' exist for the attachment, and that all technical requirements for effective attachment have been met."), *with a decision rendered two weeks later*, Tide Line, Inc. v. Eastrade Commodities, Inc., 2006 U.S. Dist. LEXIS 958970 * 15-16 (S.D.N.Y. Aug. 15, 2006)(Judge Wood noted that the rationale of Aqua Stoli cautioned against a fact intensive inquiry, and Judge Wood held that "a proper verified complaint is all that is required to satisfy Rule B and prevail against a Rule (E)(4)(f) motion to vacate.).

In the case at hand, the Plaintiff goes to great lengths to advocate that this Court must blindly adhere to Tide Line and those cases that have followed such as Route Holding, Inc. v. IOOI, 06 Civ. 03428 (PKC), in limiting judicial review to the four corners of the complaint when presented with a motion to vacate Process of Maritime Attachment. *See*, PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S

MOTION TO VACATE MARITIME ATTACHMENT, dated July 23, 2007 at page 6. The Plaintiff, however, understates the burden and purposefully fails to recognize that there is contrary authority.

As just one example of contrary authority not addressed by Unithai Maritime, in Dolco Investments, Ltd., Cypress v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101 * 10 (S.D.N.Y. April 26, 2007), Judge Sweet accepted that the majority of courts in this district to have considered the issue have interpreted Aqua Stoli to require the application of the *prima facie* standard when considering the adequacy of the claim in a maritime vacatur motion and he agreed with concept. Nevertheless, on a motion to vacate a maritime attachment of Moonriver's property, Judge Sweet still went on to examine the facts underlying the plaintiff's claims for breach of an agreement to supply operational items to the plaintiff, Owner of the M/V MOONRIVER, for lost profits and indemnification. *Id.* at * 11-12. He found that Dolco had established an admiralty claim with respect to the first claim, but not the others. Id. at *13-14. He, likewise, carefully examined Dolco's alter ego allegations against co-defendant GML, Ltd. and concluded that Dolco failed to meet its burden because it had not included any *factual* allegations that GML exercised complete domination over Moonriver. *Id.* at *28. Accordingly, while the standard was *prima facie*, Judge Sweet did limit his review to the four corners of the complaint, he did not blindly ignore the facts presented by the defendant and he rejected the notion that that a proper verified complaint is all that is required to satisfy Rule B and prevail against a Rule (E)(4)(f) motion to vacate.

Likewise, in a subsequent ruling, Judge Sweet once again applied the *prima facie* standard, but went on to consider the underlying facts of the plaintiff's claims for breach

5

of charter party and wrongful arrest. OGI Oceangate Transportation Co., Ltd. v. RP

Logistics Pvt. Ltd. and R. Piyarelall International Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841

(S.D.N.Y. June 21, 2007). In that case, and with specific reference to the fact that the

plaintiff has the burden of affirmatively showing it has a maritime claim, he found that

the plaintiff had failed to meet this burden for either of the claims pled in the complaint

and, consequently, the attachment was vacated even though the plaintiff made claims for

breach of charter party and wrongful arrest of a vessel. Id. at *12 & 15.

Most importantly, however, this Court has addressed the burden of proof to be

carried at Rule E(4)(f) hearing and the Court stated, in no uncertain terms, that the proper

standard to evaluate a plaintiff's maritime claim on a motion to vacate an attachment was

not a prima facie standard, but reasonable grounds. In Meridian Bulk Carriers, Ltd. v.

Lamed Investment & Trade Co. Ltd. and I.C.S. (121) Ltd., 07 Civ. 987 (S.D.N.Y. July 6,

2007), this Court vacated the maritime attachment of Lamed's property, holding:

> In assessing whether a plaintiff has a valid admiralty claim, courts apply
> the 'reasonable grounds' test." Compania Sudamricana de Vapores S.A. v.
> Sinochem Tianjin Co., No. 06 Civ. 13765 (S.D.N.Y. Apr. 4, 2007).
> Contrary to Plaintiff's assertion such an inquiry is not limited to the four
> corners of the complaint (Hr'g Tr. at 5.) Rather, the Court "may consider
> any allegations or evidence offered in the parties' papers or at the post-
> attachment hearing." Wajilam Exports (Singapore) Pte. Ltd. v. ATL
> Shipping Limited, 475 F. Supp.2d 275, 279 (S.D.N.Y. 2006) (quoting
> Maersk, Inc. v. Neewra Inc., 443 F. Supp.2d 519, 527 (S.D.N.Y. 2006)).
> "Courts have compared the showing required in a 'reasonable grounds'
> analysis to the more familiar probable cause." Id. at 279. The probable
> cause standard requires "less than a preponderance of the evidence," id.,
> but "nevertheless calls for a 'fair probability' that the asserted facts are
> true, "Compania Sudamericana, 2007 WL 1002265 at *2 (citing Wajilam
> Exports, 475 F. Supp. 2d at 279).

S.D.N.Y. 07 Civ. 987 at D.E. # 23.

To conclude on this point, Unithai Maritime understates, or does not understand, the burden that it carries in order to survive the challenge to its attachment of $559,353.00 belonging to Defendants. This Court should recognize the injustice that would result from the limited, or nonexistent, inquiry advocated by Plaintiff Unithai Maritime. Whether the standard is a *"prima facie"* standard or a "reasonable grounds" standard, the Court is obligated to consider the evidence and facts presented by RPL and RPI in the motion to vacate. When that evidence and those facts are fairly considered, the Court will conclude that the Motion to Vacate the Attachment presented by RPL and RPI must be granted.

### POINT II

### THE ATTACHMENT MUST BE VACATED AS THE PLAINTIFF FAILS TO PLEAD A SUFFICIENT VALID *PRIMA FACIE* MARITIME CLAIM AGAINST EITHER RPL OR RPI FOR WRONGFUL ARREST

As a practical matter, the Plaintiff's claim for "wrongful arrest" has already been determined to be woefully insufficient to support a pre-judgment maritime attachment by Judge Sweet. OGI Oceangate Transportation Co., Ltd. v. RP Logistics Pvt. Ltd. and R. Piyarelall International Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 (S.D.N.Y. June 21, 2007); *but cf.*, Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transportation N.V., 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007)("TNT submitted a Verified Complaint in which it alleged a proper admiralty claim against FHT [for wrongful arrest of the M/V CABELLO AZTECA[1]]... ." ).

---

[1] Transportes Navieros' Verified Complaint was much more specific than Unithai Maritime's. It alleged, *inter alia*, as follows: "7. On or about November 10, 2005 Defendant wrongfully arrested the vessel, erroneously believing that the vessel belonged to another company against whom Defendant was asserting a claim. 8. At the time of the wrongful arrest, Defendant had no claim based in law, equity or admiralty

While this Court is not necessarily bound by Judge Sweet's decision and the Plaintiff has attempted to distinguish its claim for "wrongful arrest" of the M/V UNITHAI NAVEE from OGI Oceangate's claim for "wrongful arrest of the M/V UNITHAI NAVEE, the fact of the matter is that Plaintiff pled the very same claim that was pled by OGI Oceangate, to wit, "RP Logistics has wrongfully arrested the M/V UTHAI NAVEE" and that is all that was alleged. *See*, Duffy Affidavit, dated July 13, 2007 at ¶ 80, Ex. 10 at ¶ 8. Consequently, since Judge Sweet found the very same OGI Oceangate pleading to be insufficient to support a prejudgment restraint of property only a few weeks ago, this Court should, likewise, find the identical Unithai Maritime pleading to be insufficient.

It is, of course, recognized that Judge Sweet's decision is not controlling authority which this Court must follow as binding precedent. Nevertheless, and until (if it ever does) the Second Circuit reverses the decision of Judge Sweet, this Court should follow his decision. *See e.g.*, <u>Sierra Rutile Limited v. Katz</u>, 1996 U.S. Dist. LEXIS 14366 * 15 (S.D.N.Y. 1996)(Judge Keenan reviewed Judge McKenna's rationale for declining to imply a private right of action under NY's commercial bribery statutes based on previous decisions of the Southern District of New York, and concluded that Judge McKenna's rationale of following other decisions from the same district to be sound.). In the absence of any controlling authority to the contrary, this Court should follow Judge Sweet's decision so that there is consistency and, especially so, in a case where the pleadings are identical, the claim is identical and the defendants are identical.

---

upon which to justify an arrest of Plaintiff's vessel. 9. Defendant failed to reasonably investigate the ownership of the CABELLO AZTECA before initiating the arrest. A reasonable investigation would have revealed that ownership of the vessel was not as Fairmount apparently suspected. Fairmount acted in bad faith and maliciously and with reckless disregard of TNT's rights in arresting the vessel." *See*, 07-3076, D.E. # 1.

8

Turning to Unithai Maritime's argument that <u>OGI Oceangate</u> "is inapposite to the case at the bar", it is submitted that such argument completely stretches the bounds of all credibility. In <u>OGI Oceangate</u>, Judge Sweet examined the claim for the alleged wrongful arrest of the M/V UNITHAI NAVEE and he concluded:

> Without deciding the choice of law question, it appears fairly certain that United States law would not apply to the wrongful arrest claim here. *See Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd., 426 F.3d 580, 586 (2d Cir. 2005)* (citing *Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970)*; *Lauritzen v. Larsen, 345 U.S. 571, 583-92 (1953)*; *Carbotrade S.P.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir.1996))* (enumerating factors for choice-of-law analysis involving maritime tort as follows: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations); *Hawkspere Shipping Co., Ltd. v. Intamex, S.A., 330 F.3d 225, 234-35 (4th Cir. 2003)* (citing *Lauritzen v. Larsen, 345 U.S. 571 (1953))* (same); *Arochem Corp. v. Wilomi, Inc., 962 F.2d 496, 498-99 (5th Cir. 1992)* (citing *Lauritzen, 345 U.S. at 582*; *Gulf Trading & Transp. Co. v. Vessel Hoegh Shield, 658 F.2d 363 (5th Cir. Unit A 1981), cert. denied, 457 U.S. 1119 (1982))* (same).

> Without an understanding of the applicable law, the Court is unable to determine whether OGI has a valid prima facie claim of wrongful arrest. Since OGI has the burden of affirmatively showing that it has such a claim, taking the strictest approach to this analysis and without more information, Plaintiff has failed to meet its burden with respect to this claim of wrongful arrest.

2007 U.S. Dist. LEXIS 46841 * 14 &15.

In the case at hand, Plaintiff Unithai Maritime presents the same exact (i.e. copied) allegation for "wrongful arrest" that OGI Oceangate presented to Judge Sweet. *See*, Duffy Affidavit dated July 13, 2007 at ¶ 79. In its Opposition to the Motion to Vacate, the Plaintiff now implicitly concedes that its pleadings are insufficient under Judge Sweet's analysis, but seeks to argue that the cases are inapposite and cure the deficiencies in its pleadings by presenting arguments in its Memorandum of Law that

expand on the pleading to the effect that "Both RPL and RPI acted in bad faith and with gross negligence, *in violation of the laws of the United States and India*, in arresting the M/V UNITHAI NAVEE in an attempt to obtain security for an alleged breach of a charter party involving the M/V IKAL." *See*, Plaintiff's Memorandum of Law, dated July 23, 2007, at page 8, (emphasis added).

As a matter of law, a plaintiff should not be permitted to maintain a pre-judgment attachment based on a defective pleading by seeking to correct the deficiencies during the course of a motion to vacate. In T&O Shipping, Ltd. v. Source Link, Ltd., 2006 U.S. Dist. LEXIS 88153 * 22 (S.D.N.Y. Dec. 5, 2006), Judge Karas noted that such procedure would raise serious due process concerns and held: "Because it is prudent to avoid constitutional concerns, the Court will not construe the Order of Attachment it signed nor Rule B to permit Plaintiff to retroactively amend its Attachment.". Thus, the Plaintiff should be left to defend the Complaint as filed.

Assuming for the sake of argument that Court is willing to look past the Plaintiff's Complaint to determine if a valid prima facie admiralty claim for an alleged wrongful arrest is being asserted, there are at least two points that the Court must consider.

Initially, any argument that the arrest of the M/V UTHAI NAVEE was *in violation of the laws of the United States* is completely off the wall. Judge Sweet has already considered the issue, cited to relevant case law and concluded: "it appears fairly certain that United States law would not apply to the wrongful arrest claim here." *See*, 2007 U.S. Dist. LEXIS 46841 * 14. Moreover, the Plaintiff, Unithai Maritime has not presented any legal authority to rebut the certainty of the point or, otherwise, to support the proposition that a U.S. court should apply U.S. law to a claim for wrongful arrest of a

10

vessel flying the flag of Thailand that was authorized by a court of competent jurisdiction in India. Under any analysis, U.S. law is not applicable to the Plaintiff's claim and the Plaintiff has failed to establish that it is.

Secondarily, if the Court is willing to consider that the Plaintiff Unithai Maritime is alleging a valid *prima facie* claim for a violation of the law of India, then the Court must consider that an alleged claim for wrongful arrest of a vessel, under Indian law, is not properly presented in the United States. Even a cursory review of the claim and Indian law supports this conclusion.

As set forth in its Memorandum of Law and in the declaration of its Indian counsel, Amit Basu, the Plaintiff Unithai Maritime expressly argues that an Indian court would examine the claim for wrongful arrest under The International Convention for the Arrest of Ships, 1999. *See*, Memorandum of Law in Opposition to Motion to Vacate at page 27; *and see*, Affirmation of Amit Basu at ¶ 9 (iv) and ¶ 18 ("To my understanding the ex-parte arrest of the vessel M.V. UNITHAI NAVEE is wrongful in view of the provisions of International Convention for Arrest of Ships, Geneva, 1999").

The Defendants do not necessarily dispute the point that an Indian Court would examine any claim of Unithai Navee under the International Convention for Arrest of Ships, Geneva, 1999 (hereinafter the "Convention"), but respectfully submit that some clarification is required. First of all, while a majority delegates signed the Final Act indicating general agreement with the Convention, the Convention never entered into force because, by the terms of the agreement a minimum of 10 signatures was needed before August of 2000, and only six nations have signed the Convention. *See generally*, 55 Univ. Miami Law Review 453. The United States and India did not sign the

convention prior to August of 2000, and they still have not. Accordingly, the Convention is not binding law in either the United States or India.

With that point clarified, it is respectfully submitted that the Indian Courts would still examine the Plaintiff's claim under the Convention. As support for this proposition, the Court's attention is directed to a decision from the Supreme Court of India, which has been referred to by the Plaintiff entitled M/V ELISABETH, AIR1993SC1014, and a copy of which is attached herewith as Ex. A. In the M/V ELISABETH the Indian Supreme Court specifically noted that "India has ... not adopted the International Convention relating to the Arrest of Sea-going Ships, Brussles, 1952." *See*, ¶ 76. However, it stated with regard to the various sea-going conventions that "Although these conventions have not been adopted by legislation, the principles incorporated in the conventions themselves derived from the common law of nations as embodying the felt necessities of international trade and are, as such, part of the common law of India and applicable for the enforcement of maritime claims against foreign ships." *See*, ¶ 76. As such, the Supreme Court of India held that it had the power to enforce claims against foreign ships while they are within the jurisdiction of India by arresting and detaining them pursuant to the International Convention relating to the Arrest of Sea-going Ships. *See*, ¶ 88. Based on that authority, the fact that India has indicated an intent to follow the 1999 Convention and the statements of Plaintiff's Indian counsel, it is clear that an Indian Court would examine any claim of Unithai Navee under the 1999 Convention.

It is important to further note that in the M/V ELISABETH, the case before the Supreme Court of India involved the arrest of a foreign ship in Indian waters for breach of duty because it left port without a bill of lading and delivered goods contrary to

instructions of the assignor. *See*, ¶ 4.The ship's interests contended that the Indian High

Court lacked jurisdiction over the claim because the ship was traveling from India to a

foreign port and was owned by foreign interests. *See*, ¶ 5. However, the High Court found

that once a foreign ship was arrested in Indian waters by Order of the High Court of

India, *the proceedings must continue in India without regard to where the cause of action*

*had arisen. See*, ¶ 92. The Ship's interests appealed to the Supreme Court of India,

which dismissed the appeal and upheld the arrest.

Now, if the Plaintiff's claim would be examined under the Convention in

accordance with Indian law, it follows that it must be read consistently with the M/V

ELISABETH and, also, the Convention cannot be read selectively. This is a dispositive

point that warrants dismissal of the claim from the U.S. courts and, also, vacatur of the

maritime attachment.

By way of explanation, the Plaintiff attempts to support the fact that it has a *prima*

*facie* maritime claim for wrongful arrest based, most specifically, on the Affirmation of

Amit Basu where he concludes, "To my understanding the ex-parte arrest of the vessel

M.V. UTHAI NAVEEE is wrongful in view of the provisions of the International

Convention for Arrest of Ships, Geneva, 1999," and he goes on to offer, "The Hon'ble

Division Bench of the Calcutta has expressed a view that the said convention supports the

contention of Unithai Line Public Company Limited." *See*, Affirmation of Amit Basu at ¶

18. As a general point, that is fine. However, what the Indian court has not needed to

address thus far, and what Plaintiff Unithai Maritime conveniently fails to mention, is

that: whereas the Convention does set forth the standards for the *Powers and Exercise of*

*Arrest*; the Convention also goes on to provide procedures for *Release from Arrest* and

the *Protection of Owners and Demise Charterers Arrested Ships*. *See*, Cohen Affidavit at

Exhibit 22, the International Convention on Arrest of Ships, 1999 at Articles 2, 4 & 6.

As set forth in the International Convention on Arrest of Ships, 1999, Article 6 at

¶ 2, specifically provides as follows:

> The Courts of the State in which an arrest has been effected shall have
> jurisdiction to determine the extent of the liability, if any, of the claimant
> for loss or damage caused by the arrest of a ship, including but not
> restricted to such loss or damage as may be caused in consequence of:
>
> > (a) the arrest having been wrongful or unjustified; or
> >
> > (b) excessive security having been demanded and provided.

*See*, Cohen Affidavit at Exhibit 22, the International Convention on Arrest of Ships, 1999
at Articles 6, ¶ 2, and, *see*, <u>M/V ELISABETH</u>, Ex. A at ¶ 92, *the proceedings must
continue in India without regard to where the cause of action had arisen.*

With emphasis on the work *shall*[2], the Courts of the State in which the arrest has

been effected have exclusive jurisdiction over any claim for wrongful arrest. The only

exception being where the parties validly agree or have validly agreed to submit the

dispute to a Court of another state which accepts jurisdiction, or arbitration. *See*, Cohen

Affidavit at Exhibit 22, the International Convention on Arrest of Ships, 1999 at Articles

7, ¶ 1. The exception is not applicable here because the Defendants do not agree to

submit the dispute to the Courts of the United States.

To conclude on this point, the Court should follow Judge Sweet's decision in <u>OGI

Oceangate</u>, and it should find that the Plaintiff Unithai Maritime has not presented a valid

*prima facie* maritime claim for the alleged wrongful arrest. Even if however, the Court is

---

[2] *Cf.*, <u>American Home Insurance v. M/V HANJIN MARSEILLE</u>, 2004 U.S. Dist. LEXIS 9705 * 12
(S.D.N.Y. June 1, 2004, which held that forum selection clauses containing the word *shall* are held to be
mandatory clauses that must be enforced.

willing to take issue with Judge Sweet's ruling, the outcome should be the same. First, the plaintiff has not set forth a valid *prima facie* maritime claim for the alleged wrongful arrest under U.S. law because U.S. law does not apply. Second, the plaintiff has not set forth a valid *prima facie* maritime claim for the alleged wrongful arrest under Indian law because Indian law requires that any such claim be presented in the Courts of the State in which an arrest has been effected, which in this case is India, and not in another Court. Consequently, no matter from which perspective the Plaintiff's claim is looked at, the Plaintiff has not met its burden to support a Rule B maritime attachment of the Defendants' property in the United States because it has not sufficiently stated a valid *prima facie* claim for wrongful arrest in this Court.

## POINT III

### THE ATTACHEMENT OF RPI's FUNDS SHOULD BE VACATED BECAUSE PLAINTIFF DOES NOT HAVE A VALID *PRIMA FACIE* ALTER EGO CLAIM AGAINST THE DEFENDANT, RPI

The Defendant RPI stands on the argument that the attachment of its funds should be vacated because the Plaintiff does not have a valid prima facie alter ego claim agains the Defendant RPI as set forth in the Motion to Vacate the Attachment. See, Motion to Vacate the Attachment, dated June 17, 2007. In addition, RPI supports its argument with reference to the discussion of the burden of proof that must be carried by the Plaintiff as set forth herein at Point I.

Apart from that, and in response to the Plaintiff's Opposition, Defendant RPI Takes note of the fact that the Plaintiff states that it has provided "copious extrinsic evidence" to support its alter ego allegations. *See*, Memo of Law in Opposition, page 19.

However, the volume of its "copious" evidence says little about its quality, which is completely lacking for the purposes of an alter ego claim.

First, Plaintiff states that "Despite Defendants' statements to the contrary, RPL and RPI's own letterhead show that both entities have the exact same address, i.e. 1st Floor, 12 Government Place (East), Kolkata 700069, West Bengal, India." *See id.* at page 20 Citing to Cohen Decl. Exhibits 14 and 15. However, the letter then submitted for RPI as Exhibit "15", while having the same address at the top as that of RPL, at the bottom clearly states that the registered office of RPI is at "3 B & C Everest House, 46-C Jawaharlal Nehru Road, Kolkata – 700-071 Phone: 91-33-22886140/7597/8886." Therefore, Plaintiff is also incorrect that RPI and RPL "use the same phone number 91 033-2220-5907/2682." *See,* Memo of Law in Opposition at 20. This entirely undercuts Plaintiff's contention that the "execution of contracts and sending of letters between RPL and RPI is all the more suspect given that these companies reside at the exact same location." Simply put, Plaintiff's own evidence demonstrates that RPI has its own address and telephone number that is entirely separate from that of RPL.

Next Plaintiff contends that it has submitted evidence of overlapping directors. However, this evidence is inconsequential. Defendants have accurately represented who the directors of RPI and RPL were at the time of the filing of the Complaint. *See,* Duffy Affidavit at ¶ 26. Plaintiff's evidence is either undated, *see,* Cohen Decl. Exhibit 17, or out of date from 2006, *see,* Cohen Decl. Exhibit 16. Further, Plaintiff then goes even further back in time to 2005 to the tax returns submitted separately by Siddarth Agarawal on behalf of RPI and RPL. What this Court should really take note of is that RPL and RPI

16

clearly submit separate tax statements, even when the same person is capable of signing each tax return.

Additionally, the Plaintiff makes much of the R. Piyrelall Group of companies containing related people. It is clear that both RPL and RPI are members of the R. Piyrelall Group of companies. That the companies are part of the same group, however, does not justify piercing the corporate veil between these companies.[ADD CITE] For instance, Plaintiff's accusations of undercapitalization contain no evidentiary support whatsoever and are mere unsupported assertions. *See*, Memo of Law in Opposition at page 23. For instance, the fact that RPL submitted a bill to RPI is labeled by Plaintiff as "ironic" while it is, in fact, evidence of corporate separateness in that the defendants were dealing with each other at arms lenght. *See*, Memo of Law in Opposition, at page 22, incorrectly citing "Defendants' Exhibit 17" which was actually a defense exhibit in the OGI Oceangate case and which has not been submitted to this Court in this matter.

Finally, Plaintiff makes the outlandish statement that "No doubt, RPI and the 'R. Piyarelall Group' have successfully avoided liability for charter party beaches in this way before." *See*, Memo of Law in Opposition at page 23. However, Plaintiff cannot cite to even a single case where this has been the case. Instead, Plaintiff submits papers from a charter party between RPL and third-party Epic Navigation Ltd. for the vessel the M/V EPIC. However, there is no evidence that RPL or RPI used their corporate forms to avoid any obligation under the charter for the M/V EPIC. *See*, Memo of Law in Opp. At 21-22. The only thing they show is that at the time of the charter party with the M/V EPIC, in the fall of 2005, Siddharth Agarawal wore several different hats for both RPI and RPL. *See*, Memo of Law in Opposition at page 22.

17

These inconsequential allegations simply do not amount to enough to overcome the presumption of corporate separateness. *See*, Williams v. McAllister Bros., Inc., 534 F.2d 19, 21 (2d Cir. 1976). Certainly, the allegations of alter ego are nothing more than conclusory allegations without any factual support to suggest that RPI *dominates* RPL, which is the relevant inquiry. *See*, Dolco Investments, Ltd., Cypress v. Moonriver Development, Ltd., 2007 U.S. Dist. LEXIS 31101 * 10 (S.D.N.Y. April 26, 2007). Thus, the allegations, even with the "copious" evidence, are not sufficient to maintain a pre-judgment attachment with against an alter-ego.

## POINT IV

### VACATUR IS APPROPRIATE UNDER THE LIMITED CIRCUMSTANCES ARTICULATED IN AQUA STOLI

Even if this Court rejects the considered analysis of Judge Sweet, and is willing to consider that Plaintiff Unithai Maritime has met its burden to set forth a valid *prima facie* admiralty claim, the Defendants maintain that vacatur is particularly appropriate for this case under the limited circumstances articulated in Aqua Stoli.

In its Opposition to the Motion to Vacate on this point, Plaintiff Unithai Maritime summarily dismisses Judge Sweet's recent decision in the OGI Oceangate v. R. P. Logistics case and goes on to make much of the difference between being present in a convenient district in the United States and being present in a convenient judicial district in a foreign nation with reference to cases such as Integrated Container Service, Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119 (S.D.N.Y. 1979). However, the Plaintiff Unithai Maritime is unable to point to any *post*-Aqua Stoli decisions that are contrary to Judge Sweet's holding and its points regarding the difference between present

18

in a U.S. district, as opposed to a convenient judicial district in a foreign nation, are tortured and illogical.

While there is a difference between a district in the United States and a district in a foreign nation, it is not relevant to the case at hand. This is made clear by Judge Walker's wording in Aqua Stoli wherein he refers to a defendant being "present in a convenient adjacent **jurisdiction**" at one point, but later discusses an "adjacent **district**." Compare, 460 F.3d at 436 (emphasis added) and 460 F.3d at 444 (emphasis added). The salient point is that jurisdiction exists elsewhere but that the plaintiff is attempting an end-run around the system to attach funds in the Southern District of New York rather than using the judicial resources where the action should most reasonably be heard. This leads to the absurd result that a Plaintiff from Thailand, who has had its vessel arrested in Calcutta, India and who has appeared in the Indian proceedings, seeks to come to the United States to obtain quasi in rem jurisdiction and/or security pursuant to the U.S. Rule B attachment procedure to secure its claim for wrongful arrest in the Southern District of New York when there is no other connection with the United States other than that the alter ego defendant makes and receives payments in U.S. dollars that are processed electronically in New York by intermediary banks. As Judge Sweet recognized, EFT payments may be fair game for a Rule B attachment, but not in circumstances like this when the Court of Appeals has articulated that an attachment would be properly vacated "if the plaintiff and defendant are both present in the same jurisdiction and would be subject to jurisdiction there, but the plaintiff goes to attach the defendant's assets." OGI Oceangate v. RP Logistics Pvt. Ltd., 2007 U.S. Dist. LEXIS 46841 * 16 (S.D.N.Y. June 21, 2007).

As was pointed out by Judge Sweet, this type of absurd litigation also raises the issue of international comity, which, was recently ruled upon by the Second Circuit. *See*, <u>Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.</u>, 466 F.3d 88 (2d Cir. 2006) (indicating proper consideration of international comity principles requires evaluation of various factors, "such as the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction"), *applied to a Rule B case by Judge Sweet in* <u>OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.</u>, 2007 U.S. Dist. LEXIS 46841, *17 (S.D.N.Y. June 21, 2007). The issues of comity are particularly compelling because, by asserting a claim for wrongful arrest in New York that arises from process issued by the High Court of Calcutta, the Plaintiff Unithai Maritime is essentially requesting this Court to act as an appellate court over the High Court of Calcutta.

To review, in the <u>Aqua Stoli</u> case the Second Circuit was reviewing a district court's vacatur of a maritime attachment pursuant to a "needs-plus-balancing." 460 F.3d at 439. While the <u>Aqua Stoli</u> court held that the "needs-plus-balancing" test was inappropriate, Judge Walker, writing for the court, specifically stated that "[i]t does not follow, however, that district courts are without any equitable discretion to vacate maritime attachments that comply with Rule B." While the exact scope of a court's equitable vacatur power was not before the <u>Aqua Stoli</u> court, its review of the prior case law indicated that a district court may vacate an attachment if the defendant shows at the Rule E hearing that:

1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Id.* at 460 F.3d at 445.

The three equitable factors discussed by Judge Walker in <u>Aqua Stoli</u> did not arise from a vacuum. Instead they were based upon the prior case law regarding Supplemental Rule B attachment cases. However, before the rise of the cottage industry of Rule B attachments following the holding of <u>Winter Storm</u>,[3] it would be a rare[4] case indeed where a foreign plaintiff would file an attachment action against a foreign defendant in the Southern District of New York or anywhere else in the United States of America. Only since <u>Winter Storm</u> have courts been forced into the absurdity of hearing cases where jurisdictions outside of the United States were the *situs* of the action and the only relation to either party was the passing of an Electronic Funds Transfer through the Southern District of New York. <u>Winter Storm Shipping, Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. N.Y. 2002) *cert. denied* 539 U.S. 927 (2003). As such, the prior case law did not necessarily involve jurisdictions outside of the districts of the United States court system and, therefore, provides little guidance whereas <u>OGI Oceangate</u> does.

In his opinion in <u>OGI Oceangate</u>, Judge Sweet stated that while vacatur was appropriate because Plaintiff had failed to show that it had a *prima facie* admiralty claim against the Defendants, vacatur was also appropriate under the limited circumstances articulated in <u>Aqua Stoli</u>. *See*, <u>OGI Oceangate Transp. Co. v. RP Logistics Pvt. Ltd.</u>,

---

[3] *See*, COMMENT: No Calm After the Storm: The Rise of the Rule B Attachment Cottage Industry, 31 Tul. Mar. L. J. 95 (2006).

[4] Indeed, our research has not revealed any such case and the Plaintiff has not been able to point to any such case.

21

2007 U.S. Dist. LEXIS 46841, *15 (S.D.N.Y. June 21, 2007). The Court in OGI Oceangate ruled that vacatur of the attachment was appropriate in that case because the Second Circuit in Aqua Stoli had articulated that an "attachment would be properly vacated 'if the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to another district to attach the defendant's assets.'" See, OGI Oceangate, *16, citing Aqua Stoli, 460 F.3d at 444-445. Therefore, because both Plaintiff and the Defendants were present in the same jurisdiction during the vessel arrest proceedings in that case, namely Kolkata, India, vacatur was justified. This was exactly the type of situation that was contemplated by the Second Circuit in Aqua Stoli, albeit with reference to judicial districts instead of nations. Additionally, it is identical to the situation in this case, where there is no dispute that the Plaintiff Unithai Maritime (in the form of its parent company, Unithai Line Public Co., Ltd.[5]) via is agent or subsidiary Unithai Maritime, which claimed to be the Owner of the M/V UTHAI NAVEE) and the defendants, RPL and RPI, were all present in Calcutta and they were all properly before the High Court of Calcutta. See, Duffy Affidavit at ¶s 30 to 56.

In the case at hand, Plaintiff attempts to convince this Court that it should not exercise its discretion in following Aqua Stoli based on the specious statements that it did not appear in the litigation in India and that its parent, Unithai Line Public Co., Ltd. only made a special appearance without submitting to the Court's jurisdiction. See, Memorandum of Law in Opposition to Motion to Vacate, dated July 23, 2007, at page 24. Plaintiff overstates its case on both points. First, it concedes that Unithai Line Public Co.,

---

[5] Plaintiff concedes that Unithai Maritime Ltd.'s parent company is Unithai Line Public Co. Ltd. See, Memorandum of Law in Opposition, dated July 23, 2007, at page 24.

Ltd. is its parent and, furthermore, Unithai Maritime Line Public Co. had represented to the High Court of Calcutta that it had chartered the vessel to OGI Oceangate with reference to the fact that its manager, Unithai Maritime, entered into the charter party on its behalf. *See*, Duffy Affidavit at ¶s 11 to 14. Thus, the Plaintiff was before the High Court of Calcutta. Secondly, even a cursory examination of the pleadings filed in India, demonstrates that Unithai Maritime Line Public Co. did not enter a restricted appearance to obtain the release of its vessel. *See*, Duffy Affidavit at ¶ 41.Indeed, it is evident that when Plaintiff's advocate appeared before the Honorable Mr. Justice Tappan Kumar Dutt on 30th October 2006, he did not record that the appearance of Unithai was a restricted appearance. *See*, Duffy Affidavit at ¶ 40. As such, Plaintiff's arguments are bogus and, especially so, where the litigation began in India and the Plaintiff is asserting a claim arising out of legal process validly issued by an Indian Court.

Under the circumstances of this case, Defendants RPL and RPI, therefore, respectfully request that this Court should exercise it equitable powers as enumerated under Aqua Stoli, and as applied by Judge Sweet in OGI Oceangate, to vacate the Process of Maritime Attachment issued by the Clerk of the Court on June 18, 2007.


## POINT V

### IF THE COURT DOES NOT VACATE THE ATTACHMENT, THERE ARE AMPLE GROUNDS FOR REDUCTION OF THE ATTACHMENT SO THAT THERE IS NO ATTACHMENT

Should this Court conclude that the Plaintiff's attachment satisfies all the requirements of Rule B and that the equitable grounds for vacatur are not applicable to this case, then the Court must consider that the unsupported claim for damages in the

amount of $559,353.00 is grossly overstated and that there are more than ample grounds to vacate the attachment for that reason alone.

A similar objection to the amount of an attachment has already been considered by Judge Preska, and Judge Preska's analysis is instructive on this issue. In <u>Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transportation N.V.</u>, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007), Judge Preska was presented with a motion to vacate an attachment in the amount of $1,256,352.84 that was based on a claim for the wrongful arrest of the plaintiff's vessel in Rotterdam. In that case, with reference to Supplemental Admiralty Rule E (6) and the court's inherent power to exercise its discretion, Judge Preska reduced the attachment from $1,256,352.84 to the sum of $15,000.00. 2007 U.S. Dist. LEXIS 50260 *20.

In <u>Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transportation N.V.</u>, Judge Preska discarded all of the plaintiff's damages for wrongful arrest, save for a small amount of legal fees, based on the following rules of law:

> A plaintiff's failure to mitigate its damages can be considered good cause to reduce the amount of an attachment. Even if an aggrieved party is otherwise blameless, it has a duty to mitigate its damages. *See Dongbu Express Co., 944 F. Supp. at 238*. In *Dongbu Express,* Judge Schiendlin found that the plaintiff had a duty to mitigate its damages and that its claim must be offset by the savings that it could have obtained by chartering another vessel for the term of the subcharter. *See also Glidden Co. v. Hellenic Lines, Ltd., 315 F.2d 162 (2d Cir. 1963)*(holding that a "party injured by breach [of a charter party] cannot recover damages which arise by reason of his own inactivity or imprudence, and are not the necessary and natural consequences of the default of the other party") (internal quotations omitted); *Bay Casino LLC v. M/V Royal Empress, 20 F. Supp. 2d 440, 454 (E.D.N.Y. 1998)*(finding the maritime attachment of a vessel to be reasonable to survive a motion to vacate but reminding the plaintiff of its continuing duty to mitigate damages).

2007 U.S. Dist. LEXIS 50260 16.

In the case at hand, the duty to mitigate applies with equal, if not more, force. Furthermore, the Court need not engage in a fact-intensive inquiry to recognize undisputed facts, *viz.,* that the Owner of the M/V UNITHAI NAVEE, i.e. Unithai Public Line or Unithai Maritime, was aware of the arrest as soon as it happened and there was a procedure pursuant to the which the vessel could have been released with the posting of some security. *See*, Duffy Affidavit at ¶s 38 & 39; *see also*, Cohen Declaration at Exhibit 22, the International Convention on Arrest of Ships, 1999 at Article 4. As evidenced by these undisputed facts, the Plaintiff Unithai Maritime could have avoided virtually all of the damage it now claims had it acted promptly, but it did not appear in the Indian proceedings to obtain the release of its vessel until a little more than a month after the vessel was arrested. *See*, Duffy Affidavit at ¶ 34 and ¶ 40.

Unithai Maritime failed to act reasonably by not taking any immediate action to lift the arrest, which it believed to be wrongful. Furthermore, if Unithai Maritime really had the vessel committed to other work, it was unreasonable to let damage accrue when the vessel could have been released with the posting of a bond or security. Indeed, Plaintiff Unithai Maritime has not presented any support for the allegation that it did, in fact, suffer damages in the amount of $559,353.00. Indeed, even without reference to the ability to have mitigated damages, the credibility of any such claim is dubious with reference to the facts that Unithai has not particularized its alleged damages.

## CONCLUSION

For all of the reasons stated above, individually and collectively, the Process of Maritime Attachment must be vacated, the Complaint must be dismissed and the Court should enter an Order directing any garnishees in this district to release any funds belonging to either RPL or RPI that have been restrained pursuant to the Order of Attachment.

Dated: Port Washington, New York
       July 25, 2007

                           CHALOS O'CONNOR & DUFFY, LLP
                           Attorneys for Defendants
                           RP LOGISTICS PVT LTD. and
                           R.PIYARELALL INTERNATIONAL PVT. LTD.

              By:          _____
                           Owen F. Duffy (OD-3144)
                           George E. Murray (GM-4172)
                           366 Main Street
                           Port Washington, New York
                           11050
                           Tel:    516-767-3600
                           Telefax: 516-767-3605
                           Email: ofd@codus-law.com

To:    Vandeventer Black LLP
       Attorneys for the Plaintiff
       UNITHAI MARITIME LTD.
       500 World Trade Center
       Norfolk, Virginia
       23510

       Attn:  Lawrence G. Cohen, Esq
              Ethan A. Ostroff, Esq.

26

## AFFIRMATION OF SERVICE

I hereby certify that on July 25, 2007, a copy of the foregoing REPLY

MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MEMORANDUM

OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO VACATE MARITIME

ATTACHMENT was filed electronically and served by mail on anyone unable to accept

electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of

the Court;s electronic filing system or by mail to anyone unable to accept electronic

filing.  Parties may access this filing through the Court;s CM/ECF system.


By: _____
Owen F. Duffy